## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CATHERINE  SILVER | ) | |
| 6001 Lucente Avenue | ) | |
| Suitland, MD 20746 | ) | |
| | ) | |
|      Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No.:  1:05cv0968** |
| | ) | |
| MICHAEL O. LEAVITT, | ) | **JURY TRIAL DEMANDED** |
| SECRETARY OF THE UNITED STATES | ) | |
| DEPARTMENT OF HEALTH AND HUMAN | ) | |
| SERVICES | ) | |
| 330 Independence Avenue | ) | |
| Washington, DC 20201 | ) | |
| | ) | |
|      Defendant. | ) | |
| _____ | ) | |

### PLAINTIFF'S RESPONSE
### TO DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR
### SUMMARY JUDGMENT AND MEMORANDA THEREON

Defendant's claim that Plaintiff's contact with the office of EEO at DHHS was untimely

is not properly brought under Rule 12(b)(6).  Defendant's argument is based upon his

misinterpretation of a statement by Plaintiff found in the investigative file.  The argument goes

beyond the pleadings and is not  properly made in this Rule 12(b)(6) Motion to Dismiss.   The

issue of the date of Plaintiff's knowledge of non-selection is nonetheless addressed below, in the

manner of a motion for summary judgment.

1

## I    DEFENDANT'S CLAIM THAT
## PLAINTIFF'S CONTACT WITH THE AGENCY WAS UNTIMELY,
## AND THAT HER ADMINISTRATIVE REMEDIES ARE NOT EXHAUSTED.

Defendant relies upon a contorted interpretation of the following statement by Plaintiff to support his claim:  "*Around the time that the vacancy announcement expired, Ms. Walker told me that it had been decided to fill the vacancies at the GS-9 level.*"  Plaintiff can argue, and does argue below, that what Plaintiff meant in the statement cited by Defendant, and upon which Defendant relies, is a material fact in dispute.  The existence of such a  material fact requires that the Court deny Defendant's Motion regarding timely exhaustion of remedies by Plaintiff.  However, it is clear from the record that Plaintiff never said the words upon which Defendant relies, and Defendant's rendition of Silver's actual language is so plainly wrong, that there is in fact no dispute at all.  Defendant's interpretation is simply false, and his Motion must be denied.

### PROCEDURAL FACTS

Plaintiff, Catherine Silver, long time government employee, presently 64 years of age, learned she had not been selected for a vacancy at the Department of Health and Human Services on July 25, 2003.  Twenty-five days later, on August 19, 2003,  Plaintiff Silver contacted the agency EEO office regarding her claim of age discrimination, filing her formal complaint on November 19, 2003, as advised by the Office of Equal Opportunity and Civil Rights.  The claim was accepted and investigated.  When, after 16 months, no final action had been taken by the agency, Plaintiff properly served her Intent to Sue on the EEOC on March 29, 2005,   filing her Complaint in this Court more than 30 days later, on May 16, 2005.

## BACKGROUND FACTS

### Silver's Career at the Administration of Children and Families

Plaintiff Catherine Silver joined the Administration of Children and Families ("ACF"), a division of the Department of Health and Human Services, in 1998, coming to the Division of Discretionary Grants ("the Division") within ACF in February, 2001. Silver has been ranked a fully successful GS-9 for seven years, but all of her efforts to advance have been consistently blocked by management at the Division. (See Exhibit A, Affidavit of Plaintiff Catherine Silver)

Between February, 2003 and March 28, 2003 a Grants Management Specialist postings appeared, closing on March 28, 2003, and Silver applied. Although the posting was a GS-9/11/12, after the posting had closed management states they decided to restricted the opening, unbeknownst to the applicants. ( See *Report of Investigation, Exhibit 8*)

During the period after the posting, Plaintiff had numerous absences from work as her husband became terminally ill in spring of 2003. On a day when she was back at work, July 25, 2003, Plaintiff learned in a conversation with another employee that selections for the position had been made and that she had been rejected. Where management had consistently blocked Silver from selection and from advancement, and where Silver has been aware that management was impermissibly favoring younger and more inexperienced workers, Silver contacted the office of EEO on August, 19, 2003, 25 days after learning of her non-selection. (See Exhibit A)

The *Report of Investigation* (hereinafter "ROI") contains documentation of events which occurred between the March 28, 2003 closing and the July 25, 2003 notice of non-selection. The events which are part of the selection process, occurring after the March 28, 2003 closing, show that no decision had been made on or close to March 28, 2003.

3

For example, on May 20, 2003 Director Carol Carter Walker emailed Plaintiff that a long standing error in her file was finally being corrected to show that she was eligible for the position.  (See ROI, Exhibit 10.9, 10.10)  The file shows that interviews for the position occurred in May, 2003. (See Exhibit B)  It is not known when offers were made and when the positions were finally filled, but the file also shows contacts still occurring between Defendant and candidates in late July, 2003.  (ROI, Exhibit 13)

Following Plaintiff's August 19, 2003 contact with the office of EEO, dispute resolution was attempted unsuccessfully.  The Agency's Office of Equal Opportunity and Civil Rights notified Silver that she had the right to file her formal complaint of discrimination, and she did so on November 19, 2003. (ROI, Exhibits 1 and 2)   The complaint was accepted, and the issue identified was: "*On July 25, 2003, you learned that you were not selected for either of three vacancies for the position of Grants Management Specialist...*" (ROI, Exhibit 3) After the investigation the ROI was issued, including the investigator's Summary of the Investigation. (Exhibit C)

Defendant argues in his Motion  that Silver knew of her non-selection on the day the posting closed, March 28, 2003, relying upon his own interpretation of a statement in the ROI in an effort to contradict the July 25, 2003 notice date.

## ARGUMENT

Under Section 633a of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.,* a federal employee invoking administrative remedies to complain of age discrimination must observe the 29 CFR 1614.105(a) requirement to initiate administrative contact within 45 days of learning of the discriminatory conduct.

The agency accepted, and the ROI summary states, that Silver learned of the discriminatory selection on July 25, 2003.   There is no credible evidence to the contrary.  The Counselor's Report of Silver's contact was never produced by the agency to the investigator. [1] (Exhibit C, page 6, footnote 4) However Silver describes the  July 25, 2003 notification: "*On July 25, 2003, I learned in a conversation with another employee that selections for the position had been made and that I had been rejected.*" (Exhibit A)

Defendant's argument is based upon his false quotation from Silver's Affidavit in the ROI, and upon a contorted re-write of a sentence by Silver. Under District of Columbia circuit caselaw, the 45 day time limit operates in the manner of a statute of limitations defense. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393 (1982).  Defendant, putting forth this affirmative defense, bears the burden not only to plead untimeliness, but also to prove it.  *Bowden v. United States,* 106 F. 3d 433, 437-438 (D.C. Cir. 1997).   This Defendant has failed to accomplish.

At page 2 of his Motion to Dismiss or in the Alternative for Summary Judgment, Defendant makes the bald statement, *"Plaintiff maintains that around the time of the 2003 announcement's closing on March 28, 2003, Ms. Carol Walker, Deputy Director, OA, informed her that the two (2) vacancies had been filled at the GS-9 level and that Plaintiff had not been selected. ROI. Ex. 5.4."*   Nowhere in the Catherine Silver's Affidavit is such a statement found. Silver never said any such thing.

Defendant disingenuously re-writes Catherine Silver's language, revising it to say that

---

[1] The investigator assigned to the case notes in his summary (Exhibit C) at page 6, footnote 5,  that he was never able to obtain the Counselor's Report.  Discovery not yet undertaken may produce further details and witnesses to Plaintiff's July 25, 2003 conversation and notice.

Silver learned of her non-selection on March 28, 2003.  That is impossible, because no selection had been made on or near March 28, 2003.

Silver stated, at ROI, Exhibit 5.4, that she heard - not that she hadn't been selected, but that the position **would** be filled at the GS-9 level.   And Silver gave no date, speaking of some time "**around** " the time the posting closed. Silver spoke generally, and she could have meant weeks later.  Plaintiff, whose husband was terminally ill during this period, was in and out of the office with numerous unavoidable absences.

 Silver's exact words at Exhibit 5.4 of the ROI are: "*Around the time that the vacancy announcement expired, Ms. Walker told me that it had been decided to fill the vacancies at the GS-9 level.*"  Plaintiff's sentence refers to information from Carter Walker about the proposed process, and it cannot be construed to be notice of non-selection.  Silver was a GS-9.  Silver does not say in her Affidavit that she was told she would not be considered, nor did Carter Walker **say** Silver would not be considered.  Management knew that Plaintiff had been ardently seeking promotion, which would have been facilitated by selection for this position at any level, and Plaintiff would have been glad to have the position at any level.

The record is clear that around March 28, 2003 Silver **had** **not** been eliminated, because **no** **one** had been eliminated.  To the contrary, Affidavits in the ROI by the selecting officials describe that the selection process was only just getting underway. [2]

---

[2] Silver also says,  in the paragraph at page 4 of the Affidavit, in a new sentence, going on to a new subject, and speaking of a different point in time, that she learned  "*after the fact*" that the vacancies were  filled at the GS-9 level. Silver does not specify here when the "*after the fact*" that she refers to in that sentence,  actually was.  Silver, having broached  a new subject, is complaining generally there that she was not told that it would be to a candidate's advantage to apply specifically for the GS-9.

6

Acting Director of the Office of the Administration of Children and families, Carol Carter Walker, described the beginning of the selection process, stating in her Affidavit (ROI, Exhibit 8, page 1) that upon the closing of the posting, about March 28, 2003, "selection certificates were generated by the Program Support Center's Human Resource Service." She continues that at that point the certificates "were sent to the OA Executive Officer, and subsequently to me."

Carter Walker continues that she "in turn, turned them over to the then Acting Director, Division of Discretionary Grants [Daphne J. Weeden], to form a panel of OA managers." The managers were to "interview, evaluate and make recommendations." Ms. Weeden, in her Affidavit (ROI, Exhibit 7, page 1) also relates that upon receiving the certificates from Carter Walker, she "convened a panel of four grants management officers in the district...and started interviews...." Silver could not have known that she had not been selected at the close of the March 28, 2003 posting period, as the panel had not yet even convened to begin its work.

In fact, as she describes in emails, much later, on May 20, 2003, Carter Walker was still in the process of clarifying Catherine Silver's status as an applicant, to ensure that she was properly classified for the selection process. Carter Walker states, in a May 20, 2003 emailed to Silver, at Exhibit 10.10 of the ROI, that on May 14, 2003, she had notified Personnel to ensure that Silver was properly classified, sending "*written attestation*" that Silver had completed her training, so that her status as an applicant would be commensurate.

Exhibit B indicates that interviews took place during the month of May, 2003. After the process described above, and following their decision, the agency had to make offers to candidates, and receive acceptances, before making any announcements. Notations by the

selecting panel reflect contacts with candidates in July, 2003. (ROI, Exhibit 13)  It is clear from the record and the agency's own chronology, that no decisions could have been made and conveyed to Silver on March 28, 2003. Catherine Silver could not have known the results "*around the time the vacancy posting expired*" because there were no result to know. Defendant has not met his burden to prove notice on March 28, 2003, and untimeliness.

**<u>Timeliness and the Agency's Perspective</u>**

The Office of EEO at DHHS accepted, and based its processing of this complaint upon the premise that Catherine Silver received notice on July 25, 2003.  At the time the complaint was received and investigated, the agency either knew when the date the selections were announced, or could have easily obtained the information. The agency made no argument that Silver's complaint was untimely.   Following her August 19, 2003 contact with EEO, the agency advised Silver of her right to file a formal complaint of age discrimination.

A federal agency has the right and the responsibility to assess timeliness.  Under 29 CFR 1614.107(a), an agency **<u>shall</u>** dismiss an entire complaint (2) that fails to comply with the applicable time limits.  The office of EEO at DHHS did not do so, officially accepting the July 25, 2003 notice date.

The D.C. Circuit has noted that their review of EEOC or agency proceedings is "de novo," *Doe v. United States,* 821 F. 2d 694, 697-98 (D.C. Cir 1987).  But the Court also permits reliance upon agency fact finding, stating that administrative decisions on timeliness are not "rendered irrelevant" by the fact that deference by the Court is not required.  *Contreras v. Ridge,* 305 F. Supp. 2d 126 (D.C.D.C. 2004) *(*citing *Timmons v. White*, 314 F. 3d 1229, 1233 (10th Cir. 2003).

Defendant, presenting no credible proof that Silver's complaint to EEO was not timely, has not met his burden. He relies only upon a specious quote, and a dubious interpretation of Silver's language to support a theory which is not plausible, and which is contradicted by the process described in the record. The agency itself, in a better position than are we who at this juncture have almost no evidence whatever, seemingly saw no reason to question the timeliness of Silver's contact.

Defendant has not proved his affirmative defense, and the Motion to Dismiss based upon claims that the complaint was untimely must be denied.

II.    **DEFENDANT ERRONEOUSLY ALLEGES THAT PLAINTIFF'S COMPLAINT IN THIS ACTION IS UNTIMELY**

In his Motion to Dismiss, Defendant cites 29 USC 633a(d) which sets out the requirements for an individual who has not complained administratively. Those provisions do not apply to Plaintiff Catherine Silver.

Section 633a of 29 U.S.C. sets out the law for a federal employee who alleges age discrimination, but who does not wish to proceed to file administratively. Such a Plaintiff has no obligation to exhaust administrative remedies, and within strict time limits, may go directly to federal court to seek redress. Within 180 days of the discriminatory event, she must notify the EEOC of her intent to sue, and then file her complaint. 29 USC 633a (c) (d). A notice of Intent to Sue, served more than 180 days after the event, where the Plaintiff had chosen not to proceed administratively, would be untimely. The provision does not apply to Catherine Silver who elected to invoke administrative procedures instead.

In compliance with 29 CFR 1614.105(a), Plaintiff Catherine Silver contacted the agency

9

office of EEO twenty-five days after she learned of her non-selection, filing the formal

complaint on November 19, 2003. The complaint was accepted and investigated by the agency.

By spring of 2005, 16 months later, no final agency action had been taken, and it was Silver's

right to serve an Intent to Sue on the EEOC. She did so on March 29, 2005, filing this civil

action more than 30 days thereafter, on May 16, 2005.

The requirement for a Plaintiff as Catherine Silver, who has first filed administratively,

is that she _wait_ 180 days, not that she file _within_ 180 days. Defendant confounds the separate

avenues of relief. Clearly a plaintiff pursuing administrative remedies cannot be required to both

file **within** 180 days of the discriminatory, and also wait until **after** 180 days have passed.

Plaintiff's Complaint is timely.

**III      DEFENDANT'S ARGUMENT AS TO
          PLAINTIFF'S REQUEST FOR ADMINISTRATIVE HEARING**

In his Motion to Dismiss, Defendant also discusses Silver's June 30, 2004 request for a

hearing, later withdrawn.   The timing of Silver's request for hearing is relevant neither to the

disposition of Defendant's Motion, nor to any issues which have been raised, or could be raised

in this case. The EEOC saw fit to schedule Silver's hearing for reasons unknown to us at this

juncture, as we have only fragments of the record available.  Where a request for hearing is not

timely filed, hearing can be denied.  The result is then only that the agency must proceed to take

final action and make a decision regarding the complain, without hearing.   Defendant is

unaffected the decision regarding hearing, and Defendant's argument on this issue requires no

further response by Plaintiff.

The Motion to Dismiss must be denied on all grounds argued by Defendant.

## CONCLUSION

Defendant has failed to prove the affirmative defense, that Plaintiff knew of the non-selection before July 25, 2003. Plaintiff's Complaint is timely under procedures by which a federal sector employee complains of age discrimination administratively. Defendant's Motion to Dismiss should be denied on all grounds described above.

## PLAINTIFF'S RESPONSE TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Under District of Columbia Circuit caselaw, where, as here, Defendant has served only a Motion to Dismiss and Motion for Summary Judgment, Plaintiff may serve her Amended Complaint as of right. Defendant's Motions are not considered responsive pleadings for purposes of F.R.C.P. Rule 15. *Bowden v. U.S.* 176 F. 3d 552, 555 (C.A.D.C. 1999)(citing *Confederate Mem. Assoc. Inc. v. Hines,* 995 F. 2d 295, 299 (C.A.D.C. 1993)

Plaintiff responds to Defendant's arguments below. However, Plaintiff also argues that Defendant's Motion is premature where Plaintiff is filing an Amended Complaint as follows.

## I.    PLAINTIFF'S AMENDED COMPLAINT PROPERLY EXPANDS
## THIS CAUSE OF ACTION

In the period since the 2003 non-selection (regarding which Plaintiff exhausted all administrative remedies), Defendant has engaged in systematic discriminatory non-selection [3] and obstruction of advancement for Plaintiff, through refusal to promote. (See Exhibit A) The pattern of recurring discrimination was not described or included in Plaintiff's original

---

[3] Plaintiff also included, in her Complaint, her non-selection for GMS vacancies in 2004, where Carter Walker specifically advised her to apply. Defendant has not addressed that issue. Although Plaintiff believes that non-selection to also be discriminatory, details must be developed through discovery.

Complaint.  Non-selections and refusals to promote have occurred subsequent to the previously investigated (and administratively exhausted) non-selection,  and the subsequent  non-selections and refusals to promote are related and similar to Plaintiff's original complaint.

The investigator assigned to this case requested information on the ages of other GMS's at the Division,[4] so that treatment of Plaintiff and treatment of younger GMS's could be compared.  Defendant declined to respond to the request.  (See Exhibit C, page 6, footnote 4) However, it can be observed that younger GMS selectees are consistently hired by the Division, and promptly promoted from GS-9 to GS-11, where Plaintiff, a fully satisfactory GS-9 for over seven years, who also performs GS-11 work,  is unreasonably denied, as set out in Plaintiff's Amended Complaint.  (See Exhibit A and Amended Complaint)

Although the description of the GMS openings for which Waltzman and Richards were selected (ROI, Exhibit 15), and the description the GMS position Plaintiff obtained through the Career Opportunities Training Program (ROI, Exhibit 17) do not indicate any difference, Silver was informed by management that she could not be promoted non-competitively, and could only obtain promotion by applying for new postings and newly announced vacancies (ROI, Exhibit 8).[5]  Witness testimony will establish that Plaintiff performs, and has been performing GS-11 work,  and  Plaintiff's Amended Complaint complains of the ongoing disparate treatment.

Silver continued to ask for promotion, and applied unsuccessfully for openings 2002, 2003, and 2004, but is always rejected. (See Exhibit C)   The non-selections, including the 2003

_____

[4] See Exhibit C, page 6, footnote 4.

[5] Carter Walker cites an "ambiguity in Plaintiff's Career Opportunities Training Agreement that prevents Silver from being promoted, but does not explain. (ROI, Exhibit 8)

non-selection which is the subject of the original complaint, were a permanent block making it difficult for Plaintiff to ever be promoted. Where Silver was instructed by her supervisors to seek promotion only through vacancy announcements, Silver, previously without benefit of legal counsel, complained of failure to promote only through her complaint of non-selection. (See Exhibit A)

**Plaintiff's November, 2004 Request for Promotion Denied**

Most recently, at her performance appraisal conference with Director Weeden in November, 2004, Silver asked again for her promotion, but was refused. The denial was within 180 days of Plaintiff's filing of the required notice to the EEOC of Intent to Sue, which included non-promotion. (See Exhibit A)  Plaintiff can properly add this additional claim, so that her cause of action will encompass both the 2003 non-selection and discriminatory refusal to promote which has continues to the present day.

Factual development will show that because management allowed Silver to seek promotion only through new applications, Silver's non-selection in 2003, and the identical 2004 non-selection, are related to, and identical to, the recurring discriminatory failure to promote. The non-selection which was investigated gives rise to the additional claim of non-promotion, which will be set out in the Amended Complaint.

**Under Recent D.C. Circuit Caselaw Interpreting *National R.R.Passenger Corp. V. Morgan*, Plaintiff's Additional Claim, A Continuing Violation, Is Also Administratively Exhausted.**

Under the District of Columbia ruling in *Bowie v. Ashcroft*, 283 F. Supp. 2d 25, 34 (D.D.C. 2003), recently explained again by this Court in *Velikonja v. Mueller*, 315 F. Supp. 2d 66 (D.D.C. 2004), discrete and similar acts, related to acts reported in a timely complaint, but

occurring subsequently, are unaffected by *Nat'l R.R.Passenger Corp. V. Morgan*, 536 U.S. 101 (2002), and this Circuit will consider such subsequent related acts to be fully exhausted. The related and similar acts of discrimination, refusal to grant promotion either competitively or non-competitively, set out in the Amended Complaint, which continue through the present time, and are administratively exhausted.

In these circumstances, as in *Loe v. Heckler*, 768 F. 2d 409, 417-418 (D.D. Cir. 1985), explained recently by the *Velikonja* Court, the employer had a "fair opportunity to provide full redress or to attempt resolution. The Court, explained the fairness of such an approach at 74:

> The approach comports with the 'purpose of the exhaustion doctrine' to give the 'agency notice of a claim and [the] opportunity to handle it internally.' (citation omitted)....[T]he exhaustion doctrine was not intended to 'become a massive procedural roadblock to access to the courts.' (citation omitted)...Therefore, where the ends of administrative exhaustion have been served by the pursuit of administrative remedies with regard to the subsequent acts, separate initiation of administrative exhaustion for related post-complaint conduct is not required. ejected are unknown.

Various facts about ongoing disparate treatment and obstruction of Plaintiff's advancement, which make out the larger claim, were known by the agency through the investigation of the 2003 charge, and should have alerted them.[6] Consistent refusal to allow Plaintiff to advance, where she is fully successful in performing the same job functions

---

[6]The ROI Summary contains the following facts which should alert Defendant to the general refusal to allow Plaintiff advancement: for a 2002 GMS position, although Plaintiff was initially judged as highly qualified, management reversed and and found her not even qualified at all without a second 52 weeks of COTA service (Summary, page 2); at the same time younger women, Brooks and Weatherspoon, who could not even qualify as GS-9's, were given full performance GMS positions and readily promoted (Summary, page 3); Plaintiff could not obtain a signature on her COTA paperwork to show that she was no longer a trainee for a period of 1 1/2 years after training was completed (Summary, page 4); younger GMS's could be promoted non-competitively while she could not (Summary, page 4); other GMS's had "career ladder standing" and Plaintiff alone did not (ROI, Exhibit 7.1).

performed by numerous young GMS's readily promoted, is a history and continuing pattern of recurring discrimination. All past denials of Plaintiff's efforts to obtain promotion will be admissible under *Nat'l R.R.Passenger Corp. V. Morgan*, 536 U.S. 101 (2002). As explained in *Morgan*, Plaintiff is entitled to explore all past incidents of discrimination, and present all such evidence to the jury. The charge filing requirements of the civil rights statutes do not prevent use of prior acts of discrimination, for which no charge was timely filed, as background evidence in support of a timely claim of discrimination. *Morgan, at 113.*

**Even If this Court Did Not Accept That Defendant's Most Recent Failure to Promote Is Administratively Exhausted, Plaintiff, under the Adea for Federal Sector Employees, Has the Right to Proceed Directly to this Court to Add Her New Claim, Within 180 Days of the Incident of Age Discrimination.**

As set out above, under Section 633 (a) of the Age Discrimination in Employment Act, federal employees complaining of age discrimination by their employer may, but are not required to, exhaust administrative procedures before seeking redress through the filing of a civil action. 29 U.S.C 621 *et seq*. Plaintiff Catherine Silver has the right to proceed directly to this Court with her claim of discriminatory failure to promote in November, 2004. 29 U.S.C. 633a (c) and (d). Silver filed the required Intent to Sue on March 29, 2003, including notice that she had also wrongfully been subjected to failure to promote, and filed her Complaint and Amended Complaint more than 30 days thereafter. (Exhibit D)

Whether or not Silver's claim of discriminatory failure to promote is a continuing violation in an administratively exhausted claim, Silver has the right to add her claim of discriminatory failure to promote to her Complaint, and Defendant's Motion for Summary Judgment is premature. Further, and in the alternative, Plaintiff shows below that a reasonable

jury could find that Plaintiff proves that she was discriminated against under the facts set out in the original Complaint, upon which Defendant based his Motion.

**II      DEFENDANT'S ARGUMENT REGARDING THE MERITS
         OF PLAINTIFF'S ORIGINAL CLAIM OF NON-SELECTION IN 2003**

_____Although it is Plaintiff's position that any Motion for Summary Judgment is premature, Plaintiff will address Defendant's substantive arguments.

**The Investigative File Contains Direct Evidence, Admissions by the Decision Makers, that
They Did Not Want to Select an Older Worker**

Defendant errs in his statement, at page 9 of his brief, that Plaintiff has no direct evidence of age discrimination. Plaintiff can argue, and does argue, that the actual intent of the decisions makers is a material fact in dispute. However, direct evidence of age discrimination by the decision makers abounds in this case. Sworn statements by management officials responsible for the selections made for Vacancy Announcement ACF-03-008 show age bias and an effort to hire younger workers. In a sense there is no material fact in dispute at all and Plaintiff has already proved her case where the decision makers have underlined admitted bias on the basis of age.

 Carol Carter Walker, Acting Director of the Office of Grants Management and Deputy Director of the Office Administration, was the highest ranked official involved in approving the selection. In Response to Plaintiff's Charge, Carter Walker submitted an Affidavit explaining the failure to select. Carter Walker's first explanation refers to Silver's age. She states: "The demographics of ACF indicate that **more than half of its employees are eligible for retirement within five years**." (ROI, Exhibit 8) The statement by decision maker, Carter Walker, shows that she prefers not to have so many employees at the worksite who may "retire within five years," and she doesn't want any more of them. Workers who "may retire within five years" are

16

older workers, and the effort to avoid hiring them is age discrimination.

In her Affidavit Carter Walker also states that management wanted to **"attract new members to the workforce**." (ROI, Exhibit 8) It is obvious that the greatest number of "New members to the workforce" will be younger workers. A preference for "new members of the workforce," over persons who have been in the workforce for a long period, is age discrimination.

Lead Grants Management Specialist, Daphne Weeden collected the list of eligible applicants, convened an interview panel, and directed the selection. She also submitted an Affidavit explaining Silver's non-selection. (ROI, Exhibit 7) Her first explanation shows age bias. Weeden states, "We started interviews at the GS-9 level, because the number of candidates were more numerous and **we were interested in longevity for the positions**." Interest in candidates who will have "longevity" over candidates who will have less longevity is a preference for candidates who are younger. It is age discrimination.

Where the decision makers provide direct evidence of age discrimination in their primary reasons for non-selection, Plaintiff can readily prove her case.

## Actions by Management Handling the ACF-03-008 Opening are Suspect

Defendant's very restriction of the selection process to GS-9's works a disparate impact upon older candidates and is both intentional and unintentional age discrimination. (ROI, Exhibits 7 and 8) It is axiomatic that in the main, GS-9's are apt to be less experienced, and therefore to be younger candidates than GS-11's or 12's. Although Defendant has stated that it was motivated by cost, the articulated legitimate non-discriminatory reason is suspect. Defendant cannot be motivated by cost where informal observation reveals that it routinely

promotes new and younger GSM GS-9's promptly, to the higher paying GS-11 level.

Waltzman and Richards were quickly promoted to GS-11, and the cost saving articulated by Defendant as its motive is illusory. Defendant's pattern, promoting younger GS-9's to GS-11 or higher, although they perform the same job functions as Plaintiff, provides evidence of age discrimination by Defendant, and supports Plaintiff's claim.

## **CONCLUSION**

_____In this claim, Plaintiff can prove age discrimination with direct evidence of bias by the decision makers. Defendant's restriction of candidates to the GS-9 level is further evidence of age discrimination, and motivation to save costs is pretextual as promotions are readily given to the GS-9 selectees. Questions of material fact exist regarding Defendant's intent, and the Motion for Summary Judgment should be denied.

Respectfully submitted,

HENRICHSEN SIEGEL, PLLC


_____/s/_____
Josh N. Burton, D.C. Bar No. 473332
Eric L. Siegel, D.C. Bar No. 427350
Nancy S. Brewer
Henrichsen Siegel, P.L.L.C.
5301 Wisconsin Avenue, Suite 570
Washington, D.C. 20015
Telephone: (202) 966-6500
Facsimile: (202) 966-7464
*Attorneys for Plaintiff*

18

## <u>CERTIFICATE OF SERVICE</u>

_____I hereby certify that the foregoing Plaintiff's Response to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment was served by first-class mail, postage prepaid, on this  _19th_  day of August, 2005 on the following:

Benton G. Peterson
Assistant U.S. Attorney
Judiciary Center Building
Civil Division
555 4th Street, NW
Washington D.C. 20530
Phone: (202) 514-7238
Fax: (202) 514-8780


_____/s/_____
Josh N. Burton

19