UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHERINE SILVER<br>6001 Lucente Avenue<br>Suitland, MD 20746<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL O. LEAVITT,<br>SECRETARY OF THE UNITED STATES<br>DEPARTMENT OF HEALTH AND HUMAN<br>SERVICES<br>330 Independence Avenue<br>Washington, DC 20201<br><br>    Defendant. | Case No.: 1:05cv0968 JDB<br><br>**JURY TRIAL DEMANDED** |

## AMENDED VERIFIED COMPLAINT

1. This action is for injunctive, declaratory, and monetary relief against Defendant for violations of the Age Discrimination in Employment Act of 1967, Section 7(b), 29 U.S.C. § 626(b), including § 633a, as amended, 29 U.S.C. § 621 *et seq.* ("ADEA").

### JURISDICTION AND VENUE

2. Jurisdiction is proper pursuant to Section 7(b) of the ADEA, 29 U.S.C. § 626(b) and § 633a, and 28 U.S.C. § 1337 and therein.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b). The unlawful employment practices, including the facts that form the basis of this complaint, were committed in the District of Columbia.

### PARTIES

4. Plaintiff Catherine Silver, resides in Suitland, Maryland and serves as an employee of the Defendants. Plaintiff was born on October 20, 1940, and is sixty-four years old.

5.      Defendant, Michael O. Leavitt, Secretary of the United States Department of Health and Human Services ("DHHS"), are engaged in an industry affecting commerce, as defined in Section 11(h) of the ADEA, 29 U.S.C. § 630(h). Defendant employs twenty (20) or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. Defendant is "an employer" within the meaning of Section 11(b) of the ADEA, 29 U.S.C. § 630(b).

6.      Plaintiff-then-Complainant exhausted all applicable administrative remedies regarding Counts I and II. Prior to filing this civil action, on August 19, 2003, Plaintiff-then-Complainant timely contacted the relevant counselor at the DHHS, the agency's office of Equal Employment and Civil Rights, to complain regarding Count I. Because attempts to effect Alternative Dispute Resolution were unsuccessful, Plaintiff-then-Complainant proceeded to file a formal discrimination complaint asserting age discrimination, as instructed, with her employing agency. The Agency issued a Report of Investigation ("ROI") on April 13, 2004.

7.      To date there has been no final agency decision regarding Plaintiff's complaint,[1] and more than 180 days have passed.

8.      Plaintiff has complied with 29 U.S.C. § 626(d), 29 C.F.R § 1614.407(b), and 29 C.F.R. §1614.201(c)(1), regarding Counts I and II, filing this action 180 days after the acceptance by the agency of her formal complaint of age discrimination, where no final action had been taken, and 30 days after service of her Intent to Sue.

9.      Plaintiff has complied with 29 U.S.C. § 633a (c) and (d), and 29 C.F.R § 1614.201(a)

---

[1] Although on June 30, 2004 Plaintiff timely sought a hearing, on May 2, 2005 she withdrew her request.

regarding Count III, filing her notice of Intent to Sue with the EEOC within 180 days of the acts complained of, and filing her Complaint at least 30 days after such notice. .

## FACTUAL ALLEGATIONS

10. Plaintiff, now 64 years of age, has served as a federal employee for 34 ½ years. She joined the Department of Health and Human Services in about 1979 as a Secretary in the Administration for Children and Families ("ACF").

11. From 1998-2001, Plaintiff, having been promoted to Program Analyst, served as a GS-9 at ACF in the Office of Child Support Enforcement. Plaintiff was always ranked "fully successful" GS-9.

12. In the year 2000, the Director of the Division of Discretionary Grants ("the Division") at ACF, then Maiso Bryant, suggested to Plaintiff that she come to the Division as a Discretionary Grants Specialist through a Career Opportunities Training Program ("COTA"), by which she could be fully qualified for a Grants Management Specialist position, and advance to a GS-11.

13. Grants Management Specialists ("GMS") are ranked GS-9,11,12,13, or 14.

14. The COTA training is a systematic learning experience by which a government employee trains to qualify for a targeted position by taking courses and receiving other systematic mentoring pursuant to a Career Opportunities Training Agreement.

15. Bryant offered Plaintiff a Grants Management Specialist (COTA trainee) position in February, 2001. Plaintiff accepted, and began work as a Grants Management Specialist, ("GMS"), GS-9, at the Division under the COTA, designed to fully qualify her for the targeted GMS position, at GS-11.

16. By February, 2002, Plaintiff had successfully completed the program, and had been

3

performing as a Grants Management Specialist (GMS, COTA trainee) for a period of a year, with a ranking of "fully successful" in that position.

17. By 2002, Plaintiff had performed as a fully successful GS-9 for a period of four years.

18. In or about May, 2002, Plaintiff, seeking to obtain a GS-11 position, applied for a GMS job posting, (Vacancy Announcement Number ACF-02-037), which was the job she was already performing successfully.

19. The COTA agreement entered into by Plaintiff and the agency, upon information and belief, appears to state that Plaintiff upon completion could become a GS-11.

20. Initially Plaintiff was judged to be highly qualified, but management subsequently reversed, telling Plaintiff that she could only qualify for the Grants Management Specialist position by completing another 52 weeks of employment in the position.

21. Between February 2002 and about May 2003, Management at the Division refused to complete the paperwork to show that Plaintiff had ever completed her COTA training to become a full performance Grants Management Specialist.

22. Plaintiff sought repeatedly to meet with management and resorted to union assistance in order to obtain documentation that she had ever completed the Grants Management Specialist COTA training.

23. Not until May, 2003, when Plaintiff had been performing as a Grants Management Specialist for 2 ½ years, did Plaintiff get her paperwork finally corrected to show she was a full performance Grants Management Specialist.

24. Younger applicants were selected for the ACF-02-037 posted GMS positions.

25. Plaintiff was told by ACF Director, Carol Carter Walker that she could not be promoted

4

to a Grants Management Specialist GS-11 non-competitively at all.

26. The Division has hired or employs a number of other Grants Management Specialists ("GMS") who are considerably younger than Plaintiff.

27. Upon information and belief all other younger GMS have been promoted to GS-11 or higher non-competitively.

28. Division of Discretionary Grants Director, Daphne Weeden has stated that GMS Catherine Silver is not in a "career ladder position."

29. Younger GMS's at the Division are considered to be in "career ladder positions."

30. The work which Plaintiff performs is identical to the work performed by the other GMS's who are considered to be in "career ladder positions" and who have been promoted.

31. Since 2000, numerous younger GMS GS-9's have been hired in the Division, and upon information and belief, have been promoted "non-competitively."

32. Plaintiff has been a fully successful GS-9 at the Division for seven years.

33. Plaintiff although a GS-9, performs GS-11 work with a ranking of fully successful, and is assigned a heavier work load than the younger GMS's.

34. In 2003, another Vacancy Announcement Number ACF-03-008, for a Grants Management Specialist, GS-9/11/12, was posted from February 26, 2003 until March 28, 2003.

35. Plaintiff, then a GS-9 fully successful employee for five years, who had been a fully successful Grants Management Specialist for two years, applied for the job, and wanted to be hired as a GS 11, or as a GS-9 with the possibility of promotion to GS-11.

36. Although management at the Division posted the ACF-03-008 job at GS-9/11/12, they restricted the position to GS-9's, revealing the restriction only after the closing of the posting.

5

37. Although management now claims they restricted the search for economic reasons, evidence reveals that management seeks to obtain and promote younger workers.

38. New members of the work force are likely to be younger workers who have less experience, and are more likely to be classified as GS-9's than GS-11's.

39. Restriction of candidates to GS-9 has a discriminatory disparate impact upon older workers who have more experience and are therefore more likely to be eligible for GS-11 classification.

40. The undisclosed restriction of candidates to GS-9 was veiled age discrimination.

41. Various employees at Division of Discretionary Grants have heard management express an interest in staffing the division with more young employees.

42. At the time that the ACF-03-008 was posted, Plaintiff had been performing successfully in the position for two years and was well acquainted with the job functions, but she was not selected.

43. On July 25, 2003, Plaintiff learned that Jennifer Richards (age 36) and Beth Waltzman (age 42) had been selected for the GMS positions, ACF-3-008.

44. Selectees Waltzman and Richards required extensive training to learn the job which Plaintiff had been doing successfully for several years.

45. Silver learned she had not been selected for the Vacancy Announcement ACF-03-008 on July 25, 2003, and after contacting the agency's Office of Equal Opportunity and Civil Rights on August 19, 2003, she filed a formal charge of age discrimination on November 19, 2003.

46. The investigation following the charge provided evidence that the intent of management, in the handling of the ACF-03-008 vacancy, was an effort to hired younger workers.

47.     Carol Carter Walker, Acting Director of the Office of Grants Management and Deputy Director of the Office Administration, was the highest ranked official involved in approving the selection.

48.     In Response to the Charge, Carter Walker submitted an Affidavit explaining the failure to select Plaintiff.

49.     In her Affidavit, Carter Walker's first stated explanation is, "The demographics of ACF indicate that **more than half of its employees are eligible for retirement within five years.**"

50.     Carter Walker's statement shows that she prefers not to have so many employees at the worksite who may "retire within five years."

51.     Carter Walker's remark indicates that she would prefer to hire workers who will not "retire within five years," which would be meant younger workers.

52.     Preference for younger workers who will not "retire within five years" is age discrimination.

53.     Although she invokes the cost issue, in her Affidavit Carter Walker also states that management wanted to **"attract new members to the workforce."**

54.     "New members to the workforce" will tend to be younger applicants.

55.     A preference for "new members of the workforce" over persons who have been in the workforce for a long period, is age discrimination.

56.     Division Director, Daphne Weeden, then Lead Grants Management Specialist, collected the list of eligible applicants for the vacancies, ACF 03-008, convened an interview panel, and directed the selection.

57.     Weeden also submitted an Affidavit explaining Silver's non-selection.

7

58. Weeden's first explanation is, "We started interviews at the GS-9 level, because the number of candidates were more numerous and **we were interested in longevity for the positions.**"

59. Greater interest in candidates who will have "longevity" is a preference for candidates who are younger.

60. Preference for candidates who will have more "longevity" in the position is a preference for younger workers and is age discrimination.

61. Although GS-9's were selected, selectees Richards and Walzman were promptly promoted non-competitively to the GS-11 level.

62. The selectees required training and mentoring to be able to perform the job functions which Plaintiff was already successfully performing.

63. Although management had invoked cost as a reason to eliminate Silver from consideration, there was little cost saving since the GS-9's were promptly promoted.

64. Management's reason for rejecting Plaintiff for the job is pretextual.

65. After the 2003 vacancy announcement had closed, Plaintiff continued to perform GS-11 work.

66. Plaintiff continued to ask management for a promotion.

67. In about April, 2004, when Catherine Silver was on leave caring for her husband who was terminally ill, Carter Walker called her suggesting that she leave the house briefly to come in and apply for yet another GS-11 GMS posting.

68. Plaintiff applied for the opening posted in April, 2004, and on June 23, 2004, she was rejected again in favor of younger hires.

69.  Plaintiff consulted the agency's EEO counselor about this selection, but the office took no action.

70.  Plaintiff, a GS-9 for eight years, has consistently sought a promotion to GS-11, but has been refused.

71.  All the new GMS hires since 2001, all of whom are younger, were promoted to GS-11 or above.

72.  Plaintiff continues to do GS-11 work and shoulder a heavier work load than do the younger workers, who are GS-11 and above, but Defendant refuses to promote her.

73.  Each paycheck which Plaintiff receives, which is lower because she is a GS-9 and not a GS-11, is a new and separate instance of age discrimination.

74.  Treatment of Plaintiff by management creates a hostile work environment on the basis of age.

## COUNT I
### (VIOLATION OF THE ADEA, DISPARATE TREATMENT)

75.  Plaintiff realleges each and every factual allegation contained in paragraphs 1 through 74.

76.  Plaintiff Silver's non-selection in 2002, 2003, and 2004 when she was 62, 63, and 64 respectively at the time of the denials, was impermissible age discrimination.

77.  Defendant intentionally treated Plaintiff Silver differently than younger job applicants, and its reasons are pretextual.

78.  Plaintiff endures a hostile work environment on the basis of her age, through the continuous unfair treatment regarding non-selection and non-promotion.

79.  Defendant's age discrimination against Plaintiff Silver was done willfully, intentionally, maliciously and with a reckless disregard for Plaintiff's rights under the Age Discrimination in

Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.*

80. As a direct and proximate result of Defendant's discrimination, Plaintiff has suffered loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, loss of dignity, and loss of enjoyment of life.

## COUNT II
### (VIOLATION OF THE ADEA, DISPARATE TREATMENT)

81. Plaintiff realleges each and every factual allegation contained in paragraphs 1 through 74.

82. Defendant's refusal to promote Plaintiff Silver continuously between 2002 and the present is impermissible age discrimination.

83. Defendant treats Plaintiff Silver differently than younger GMS employees.

84. Plaintiff endures a hostile work environment on the basis of her age, through the continuous unfair treatment regarding non-promotion.

85. Defendant age discrimination against Plaintiff Silver was done willfully, intentionally, maliciously and with a reckless disregard for Plaintiff's rights under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.*

86. As a direct and proximate result of Defendant's discrimination, Plaintiff has suffered loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, loss of dignity, and loss of enjoyment of life.

## COUNT III
### (VIOLATION OF THE ADEA, DISPARATE IMPACT)

87. Plaintiff realleges each and every factual allegation contained in paragraphs 1 through 74.

88. Management's restriction, in selection for Grants Management Specialist openings at the

Division, to GS-9 applicants works an impermissibly discriminatory disparate impact upon older more experienced workers.

89. Plaintiff Silver was harmed by such discriminatory action in each instance where she could not be selected for a GMS position because she was eligible for selection as a GS-11.

90. Plaintiff endures a hostile work environment on the basis of her age, through the continuous unfair treatment regarding non-selection and non-promotion.

91. Defendant's age discrimination against Plaintiff Silver was done willfully, intentionally, maliciously and with a reckless disregard for Plaintiff's rights under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.*

92. As a direct and proximate result of Defendant's discrimination, Plaintiff has suffered loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, loss of dignity, and loss of enjoyment of life.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays for judgment against the Defendant as follows:

- (a) For an Order directing the Defendant to promote the Plaintiff to the position of Grants Management Specialist within Defendant, Department of Health and Human Services, Administration for Children and Families, Office of Grants Management;

- (b) For a monetary judgment representing backpay for Defendant's willful violations of the Age Discrimination in Employment Act due to its unlawful failure to promote;

- (c) For a money judgment representing prejudgment interest

- (d) That the Court retain jurisdiction over this action until the Defendant has fully complied with the Orders of this Court;

- (e) For the costs of suit, including an award of reasonable attorneys' fees pursuant to

        the Equal Access to Justice Act, 28 U.S.C.A. §2412(D)(1)(A); and

(f)      For such other and further relief as may be just and proper.

## Demand for Jury Trial

Plaintiff demands a trial by jury to the extent jury trial may be available.

Respectfully submitted,

HENRICHSEN SIEGEL, PLLC

_____
Josh N. Burton, D.C. Bar No. 473332
Eric L. Siegel, D.C. Bar No. 427350
Nancy S. Brewer
Henrichsen Siegel, P.L.L.C.
5301 Wisconsin Avenue, Suite 570
Washington, D.C. 20015
Telephone: (202) 966-6500
Facsimile: (202) 966-7464
*Attorneys for Plaintiff*

RECEIVED

## VERIFICATION

I, Catherine Silver, declare under penalty of perjury that the foregoing Verified Complaint is true and correct to the best of my knowledge, information and belief.

*Catherine Silver*
Catherine Silver

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Amended Verified Complaint was served by first-class mail, postage prepaid, and facsimile on this 18th day of August, 2005 on the following:

Benton G. Peterson
Assistant U.S. Attorney
Judiciary Center Building
Civil Division
555 4th Street, NW
Washington D.C. 20530
Phone: (202) 514-7238
Fax: (202) 514-8780


_____
Josh N. Burton