# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHERINE SILVER, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No: 1:05CV0968(JDB) |
| | ) |
| | ) |
| U.S. DEPARTMENT OF HEALTH | ) |
| AND HUMAN SERVICES, | ) |
| | ) |
|     Defendant. | ) |

## DEFENDANT'S MOTION TO DISMISS OR,
## IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant respectfully moves, pursuant to Fed. R. Civ. P. 12(b) (1), and (6) to dismiss this action.  In the alternative, this Court should enter summary judgment in favor of Defendant, pursuant to Fed. R. Civ. P. 56, because there is no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law.

In support of this motion, the Court is respectfully referred to the accompanying memorandum of points and authorities.  A proposed Order consistent with this motion is attached hereto.

Respectfully submitted,

_____

KENNETH L. WAINSTEIN, D.C. Bar #451058

United States Attorney

_____
R. CRAIG LAWRENCE, D.C. Bar #171538
Assistant United States Attorney

_____
BENTON G. PETERSON, WI. Bar #1029849
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. B Civil Division
Washington, D.C. 20530
(202) 514-7238;(202) 514-8780 (Facsimile)

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHERINE SILVER, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Case Number:  1:05CV0968 |
| | ) |
| | ) |
| U.S. DEPARTMENT OF HEALTH | ) |
| AND HUMAN SERVICES, | ) |
| | ) |
|     Defendant. | ) |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS, OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

Defendant Michael O. Leavitt, Secretary, Department of Health and Human Services ("HHS"),pursuant to LcvR 7(a) and by undersigned counsel, hereby submits the following memorandum of points and authorities in support of its motions to dismiss the Plaintiff's Amended Complaint, or in the alternative, for Summary Judgment.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Catherine Silver asserts that she was discriminated against based on her age when was not selected for any of three vacancies for the position of Grants Management Specialist, GS-1101-9/11/12 announced under the Vacancy Announcement Number ACF-03-008.  Report of Investigation ("ROI"), Exhibit

("Ex.") 9.[1]  This vacancy was posted from February 26, 2003 until March 28, 2003 and was located in the Division of Discretionary Grants, Office of Grants Management ("OGM"), Office of Administration ("OA"), Administration for Children and Families ("ACF"), HHS.  Plaintiff maintains that around the time of the 2003 announcement's closing on March 28, 2003, Ms. Carol Walker, Deputy Director, OA, informed her that the two (2) vacancies had been filled at the GS-9 level and that Plaintiff had not been selected.  ROI, Ex. 5.4.  On August 19, 2003, Plaintiff sent an email to the Agency Equal Employment Opportunity ("EEO") office informing them of her request to meet with an EEO counselor.[2]  See Exhibit 1 attached hereto.  Thereafter on November 19, 2003, Plaintiff filed a formal complaint with HHS, alleging that she was discriminated against on the basis of age (63 yrs. old) when she was not selected for the ACF-03-008 position.  ROI, Ex. 2; Ex. 3.

    Subsequently, the claim was investigated and an ROI was issued to

_____

[1] The ROI shows that only two positions were filled.  See ROI, Ex. 9.

[2] In her correspondence with the EEO office, Plaintiff alleged that she was notified of her non-selection on July 25, 2003, however, she has provided no documentation or support for this date in the ROI, and this July date conflicts with her sworn Affidavit statement which identifies late March 2003 as her notice date. In this regard, the EEO office conducted a search of its records and found no support for Plaintiff's July 25, 2003 date.

HHS and Plaintiff on April 13, 2004.[3]  While the EEOC case was in the discovery

phase, Plaintiff then filed a Notice of Intent to Sue in the United States District

Court for the District of Columbia on March 29, 2005.  <u>See</u> Exhibit 2 attached

hereto.  After issuing this notice, Plaintiff withdrew her request for a hearing before

the Equal Employment Opportunity Commission ("EEOC") on May 2, 2005.  <u>See</u>

Exhibit 3 attached hereto.  Consequently, the EEOC administrative judge dismissed

the case on May 13, 2005.  <u>See</u> Exhibit 4 attached hereto.  A final Agency decision

has not yet been issued.

      Plaintiff filed her Amended Complaint under the Age Discrimination in

Employment Act ("ADEA") to remedy alleged acts of discrimination by HHS.  <u>See</u>

Amended Complaint.  Specifically, Plaintiff asserts that she was discriminated against

on the basis of her age when the two (2) ACF-03-008 positions and one  ACF-2004-

0090 were filled by "two younger applicants."  <u>Id.</u>


    III.    <u>MOTION TO DISMISS</u>

       A.    <u>STANDARD OF REVIEW</u>

      For a plaintiff to survive a Rule 12 (b)(6) motion to dismiss, she need

---

[3] The ROI specifically stipulated that Plaintiff should request a hearing within thirty (30) calendar days after receiving the certified-return receipt package. However, Plaintiff requested a hearing on June 30, 2004, approximately one (1) month past the deadline.  <u>See</u> Exhibit 5.

only provide a short and plain statement of the claim and the grounds on which it rests.  Lipsman v. Secretary of the Army, 257 F. Supp.2d 3, 6 (D.C. Cir. 2003); FED. R. CIV. P. 8 (a)(2); Conley v. Gibson, 355 U.S. 41, 47 (1957).  A motion to dismiss under Rule 12 (b)(6) tests not whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim.  FED. R. CIV. P. 12 (b)(6); Lipsman, 257 F.Supp.2d at 6-7.  Thus, the court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.  Cooper v. First Government Mortgage and Investors Corp., 206 F.Supp.2d 33, 35 (D.C. Cir. 2002);  Atchinson v. District of Columbia, 73 F.3d 418, 422 (D.C. Cir. 1996).

### B.    PLAINTIFF FAILED TO COMPLY WITH EEOC FILING REQUIREMENTS.

### a.    Plaintiff's Initiation of Counselor Contact Transpired Later than the Required 45-day Time Limit.

The threshold prerequisite for any administrative claim of discrimination is the 45-day time limit set forth in EEOC regulations, which provides that an aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory, or in the case of a personnel action, within 45 days of the effective date of the action.  29 C.F.R. § 1614.105(a)(1); Koch v. Donaldson, 260 F.Supp. 2d 86, 89 (D.C. Cir. 2003).  The Court's power to equitably toll these filing periods may be exercised "only in extraordinary and

carefully circumscribed instances." <u>Mondy v. Sec'y of the Army</u>, 845 F. 2d 1051, 1057 (D.C. Cir. 1988).

Furthermore, the Supreme Court recently held that a party raising claims of discrete acts of discrimination must file his or her charge within the applicable time limits or lose the ability to recover for it. <u>National Railroad Passenger Corp., v. Morgan</u>, 536 U.S. 101 (2002). In <u>Morgan</u>, the Court held that "discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" <u>Morgan</u>, 536 U.S. at 114. Thus, a plaintiff may only file a charge to cover discrete acts that transpired during the appropriate time period.

In Plaintiff's sworn Affidavit, she maintains that around March 28, 2003, she was told by Ms. Walker, Deputy Director, OA, that the vacancies for the Grants Management Specialist position had been filled at the GS 9 level. ROI, Ex. 5.4. However, in filing her claim with the EEO office, Plaintiff asserts that she was discriminated against on July 25, 2003, a date that is approximately three (3) months after the March 28, 2003 date she identified in her Affidavit. ROI, Ex. 3. In this regard, neither the ROI nor the EEO records identified any relevant documents that support Plaintiff's alleged notice on this later July date. The record does show that Plaintiff failed to initiate contact with an EEO counselor until August 19, 2003,

7

which is approximately five (5) months after she was put on notice of her non-selection by Ms. Walker in late March 2003.  See Exhibit 1 attached hereto.  Thus, because Plaintiff failed to initiate contact with an EEO counselor within the required 45 day time period, her claim should be dismissed.

> **b.    Plaintiff's Request for a Hearing Was Also Untimely.**

In addition, on April 13, 2004, when the EEO office sent Plaintiff a copy of the ROI, the package included a notice that a hearing should be requested within thirty (30) calendar days of receipt.  See Exhibit 5, attached hereto; 29 C.F.R. § 1614.108(f).[4]  Id.  Thus, Plaintiff's request for a hearing should have been postmarked by May 18, 2004.  However, Plaintiff's request was instead received on June 30, 2004, which is more than one (1) month late.  Id.;  See Speiser v. U.S. Dept. of Health and Human Services, 670 F.Supp. 380, 383 (D. D.C. 1986) (Discharged federal employee's claim of mental illness and circumstances surrounding her five and one-half-month delay in filing administrative complaint alleging discrimination did not warrant equitable tolling of 30-day period for filing complaint.)  Because Plaintiff's request for a hearing was initiated past the required date, Plaintiff's claim should be dismissed for her repeated failure to comply with the EEO guidelines and regulations.

---

[4] Subsequently, the office received the certified-return receipt on April 23, 2004 and the receipt was unsigned and undated.  See Exhibit 5.

C.      **Plaintiff's Notice of Intent to File in District Court Was**

**Untimely Filed.**    A federal employee who does not exhaust her administrative

remedies may file a judicial complaint alleging age discrimination if she gives the

EEOC "not less than thirty days' notice of an intent to file such action" and if such

notice is "filed within one hundred and eighty days after the alleged unlawful practice

occurred."  29 U.S.C.  633a(d); Thorne v. Cavazos, 744 F. Supp. 348, 350-51

(D.D.C. 1990).  Here, Plaintiff filed her Notice of Intent to File in District Court on

March 29, 2005.  See Exhibit 2.  In this regard, while Plaintiff properly gave the

EEOC thirty (30) days' notice of her intent to file in district court, the notice she

gave was not within the 180 day period following the alleged discriminatory event.

Simply, in her Affidavit Plaintiff alleges that she was notified of her non-selection by

Ms. Walker around the time of the vacancy's closing date, late March 2003.  ROI,

Ex. 5.  Therefore, Plaintiff's Notice of Intent to File in District Court should have

been filed by late September 2003.  However, Plaintiff's notice, filed on March 29,

2005,  was not filed until approximately twenty-four (24) months after the alleged

discriminatory event.  As such, because Plaintiff was approximately eighteen (18)

months late in filing such a notice and because she failed to abide by temporal

guidelines, her claim should be dismissed.


IV.      **MOTION FOR SUMMARY JUDGMENT**

A.    STANDARD OF REVIEW

FED. R. CIV. P. 56(c) provides that summary judgment may be granted if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law."  The Supreme Court has held that there is no genuine issue for trial "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The policy behind summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (citing FED. R. CIV. P. 1).

The summary judgment burden may be met by consideration of affidavits, exhibits, depositions, and other discovery materials. Barwick v. Celotex Corp., 736 F.2d 946, 958 (4th Cir. 1984).  A moving party, however, is not required to support its motion with affidavits or other similar materials negating the opponent's claim. Celotex Corp. v. Catrett, 477 U.S. 318 (1986).  Rather, a moving party will be granted summary judgment if, with or without these accompanying materials, it demonstrates that summary judgment is appropriate. Id. at 324.

As to the Plaintiff's burden, all justifiable inferences are to be drawn in favor of the nonmovant. Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986).

Nonetheless, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48.  See also, Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).  ("Unsupported speculation is not sufficient to defeat a summary judgment motion.")

In ruling on a summary judgment motion, a judge must determine whether there is a dispute "over facts that might affect the outcome of the suit under the governing law."  Anderson, 477 U.S. at 248.

## B.    LEGAL DISCUSSION

Where, as here, a plaintiff offers no direct evidence of discrimination, employment discrimination claims are governed by the familiar framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 803-805 (1973).  See also Cones v. Shalala, 199 F.3d 512, 516 (D.C. Cir. 2000); Duncan v. Washington Metropolitan Area Transit Authority, 240 F.3d 1110, 1114 (D.C. Cir. 2001) (employing McDonnell-Douglas test for ADA claim).  Under this test, Plaintiff has the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination.  Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).  If the Plaintiff is able to establish a prima facie case, then given Defendant's legitimate, nondiscriminatory reason, Plaintiff must present evidence that the stated reason merely was a pretext for discrimination.  Id.  Of course, at all times, the

Plaintiff retains the ultimate burden of persuasion to demonstrate that she was in fact the victim of intentional discrimination. Burdine, 450 U.S. at 252-53. In this context, in Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000), Justice O'Connor recognized occasions where summary judgment would be appropriate:

> Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact finder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason
> for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence
> that no discrimination had occurred.

This case is one of those instances.

Specifically under the ADEA, an employer is prohibited from failing or refusing to hire or discharge, or otherwise discriminate against, any individual with respect of age. 29 U.S.C. § 626(a). The ADEA provides that, for Federal agencies, "all personnel . . . actions affecting employees or applicants for employment who are at least 40 years of age . . . in Executive agencies . . . shall be free from any discrimination based on age." 29 U.S.C. § 633a(a).

1.    **Plaintiff Has Failed To Establish a *Prima Facie* Case of Age Discrimination.**

In essence, as the Supreme Court has explained, a discrimination claim is properly based upon an employer "treating some people less favorably than others because of their race, color, religion, sex, or national origin." Teamsters v. United States, 431 U.S. 324, 335, n. 15 (1977).  Plaintiff has not met her burden for establishing a prima facie case of discrimination.  Although Plaintiff is a member of a protected class based on her age, she cannot demonstrate that she has been treated "less favorably than others" because of her age.

Plaintiff has not produced any evidence that shows that age discrimination was a determining factor in her non-selection, or that any of Defendant's actions in not selecting her  were discriminatory in any way.  Indeed the record clearly demonstrates not only that the selected applicants were more qualified than Plaintiff , but also that applicants were treated the same regardless of their age. See Exhibit 8, Interview Notes for Ms. Richards and Ms. Watzman, attached hereto. In light of the foregoing, the Court should grant Defendant's motion for summary judgment because Plaintiff has not established a prima facie case of discrimination on the basis of age.

Moreover, even if  Plaintiff were deemed to have established a prima facie case of discrimination, the record clearly demonstrates that Defendant had legitimate, non-discriminatory reasons for not selecting her.  Plaintiff must show "a

set of facts which would enable the fact-finder to conclude with reasonable probability that in the absence of any further explanation, the adverse employment action was the product of age discrimination." Mitchell v. Data General Corp., 12 F.3d 1310, 1315 (4th Cir. 1993); See Duke v. Uniroyal, Inc., 928 F.2d 1413, 1418 (4th Cir. 1991). In this case, Plaintiff will be able to show that her age, 63 years old, enables her to be a member of a protected group. However, in her Affidavit, Plaintiff does not present any evidence that her age is the 'but-for' reason for her non-promotion, as such, Plaintiff fails to meet her burden of proof. See Ware v. Howard University, Inc., 816 F. Supp. 737, 750 (D.D.C. 1993).

Simply, the Agency sought to fill the 2003 vacancy at the lowest GS level as possible; when the Agency deemed applicants at the GS-9 level as appropriate individuals, the interview process halted and did not progress to the GS-11 or GS-12 level. ROI, Ex. 8. The Agency only interviewed candidates whom applied at the GS-9 level. Exhibit 6; See Exhibit 7, Interview Documents, attached hereto. Thus, Plaintiff has failed to show that age was the reason that she was not selected for the position of Grants Management Specialist, GS-1101-9/11/12 announced under Vacancy Announcement Number ACF-03-008, as she so asserts.

The only evidence of age discrimination that Plaintiff submitted was her own opinion. More specifically, Plaintiff stated that she believes that she was not chosen for the above mentioned vacancy because of her age (63) and because

14

management allegedly "indicated they wanted younger women." ROI, Ex. 5. Yet,

Plaintiff has offered no evidence to illustrate her allegation. Moreover, Plaintiff did

not submit a rebuttal statement to the Agency's affidavits, even though she was given

an extended time in which to do so. ROI, Ex. 6.

> 2. **The Agency Can Articulate Nondiscriminatory Reasons for Its Actions.**

First, in regard to Plaintiff's 2001 reassignment into the COTA program,

it is important to note that the reassignment was non-competitive, rather than

competitive, and as such, Plaintiff was not eligible for a non-competitive promotion

to higher levels of the position. ROI, Ex. 8. Specifically, the COTA Agreement itself

identifies its "Target Position" as a Grants Management Specialist (COTA Trainee)

GS-1101-9. See ROI, Ex. 17.1. Moreover, the "Training" section of the Agreement

further confirms that the trainees "will perform assignments that are designed to

provide the knowledge, skills, and abilities required to successfully perform as a

Grants Management Specialists, GS-1101-9." Id. Simply, Plaintiff's COTA

Agreement, which she signed on March 2, 2001, in no place purports to suggest that

the trainee will be considered or trained for a GS-11 position. ROI, Ex. 17. In this

regard, apparently Plaintiff was under the mis-impression that once she completed

the COTA agreement, she was eligible for non-competitive promotion to the GS-11

level of the grants management specialist position, but in asserting this alleged

notion, Plaintiff has failed to cite to any written record which would support such a

basis.  ROI, Ex.5.  <u>See</u> Plaintiff's Amended Complaint.

   In regard to Vacancy ACF-03-008, ACF's recent hiring strategy has been to recruit staff at the lowest possible grade level to provide career opportunities that would attract new members to the workforce and to use its limited budget wisely. ROI, Ex. 8.  In this case, the decision was made to recruit at all grade levels, but to interview first all of the GS-9 candidates and to move to the GS-11 and GS-12 levels for consideration only if there were not enough qualified candidates for selection at the GS-9 level.  <u>Id.</u>;  <u>See</u> Exhibit 6.  In fact, when candidates who had applied for more than one level for the position were called to be scheduled for an interview, they were told that ACF was only interviewing at the GS-9 level and that they should schedule their interview only if they would accept the position at the GS-9 level, even if they were eligible for consideration at the higher grade level.  ROI, Ex. 8; <u>See</u> ROI, Ex. 13 at 5.

   Simply, because management interviewed, evaluated and selected two well-qualified applicants at the GS-9 level, neither Plaintiff nor any other candidate on the GS-11 or GS-12 selection certificate was considered.  ROI, Ex. 8; Ex. 13; <u>See</u> Exhibit 6.  Furthermore, when the panel interviewed candidates at the GS-9 level, it found selectees with "superior educational credentials and experience at the state and/or federal levels as grants management specialists."  <u>Id.</u>;  <u>See</u> Exhibit 8, Interview Notes for Ms. Richards and Ms. Watzman, attached hereto.  Unlike Plaintiff who

noted no college education in her application, the two selectees, Jennifer Richards (37 yrs. old) and Beth Watzman (43 yrs. old) both noted that they had degrees in higher education.  ROI, Ex. 10; Ex. 11; Ex. 12; Investigator's Statement at 7.

Specifically, Ms. Richards's educational accomplishments included a 1989 Bachelor of Science Degree in Economics and History from Nebraska Wesleyan University and a 1992 Masters Degree in Economics and Sociology from the University of Nebraska-Lincoln.  ROI, Ex. 11.[5]  Also, from March 2002 until the time she applied for the Grants Management Specialist position in ACF, Ms. Jennifer Richards served as the Fiscal Officer for the Colorado Department of Public Health and Environment in Denver, Colorado.  Id.  In this role, Ms. Richards tracked all division appropriations including general funds, cash funds, cash funds exempt, and federal funds, as well as established and monitored the division's budget and implemented budget related policies.  Id.

Ms. Watzman's educational background was significant for a 1983 Business Management Degree from the University of Maryland and a 1989 Master of

---

[5] In addition, Ms. Richards noted that she had also completed the following job-related courses: "Contracts Management Training" (2002); "Procurement Training" (2002); "Introduction to Governmental Accounting" (2001); "Applying for Federal Grants and Cooperative Agreements" (2000); "Managing Federal Grants and Cooperative Agreements for Recipients" (2000); "In-Depth Review of Head Start Fiscal and Administrative Requirements" (2000); and "Public Financial Management Training" (1997).

Science degree in Speech Language Pathology from Loyola College.  ROI, Ex. 12.[6]  In

addition, earlier in her career, from July 1995 until July 1997, Ms. Watzman served

as a receptionist/administrative assistant for the Council of Jewish Organizations

("COJO") of Flatbush in Brooklyn, New York.  ROI, Ex. 12.  During her time at that

organization, Ms. Watzman accumulated data and developed grant applications in

accordance with funding requirements.

        Thus, the record shows that these vacancies were filled by two (2)

highly qualified applicants, both of whom had grants work experience and higher

educational backgrounds.  Moreover, the vacancies were filled according to budgetary

constraints and management directives and in no way discriminated against Plaintiff

based on her age.

        In her Amended Complaint, Plaintiff also identifies a position for which

she applied "[i]n about April, 2004."  The apparent Vacancy Announcement Number

to which Plaintiff likely alludes is No. ACF-2004-0090, Grants Management

Specialist, GS 9/11/12.  See Exhibit 6. Though Plaintiff was out of the office on leave

during this time, in an act of good faith, Ms. Walker informed Plaintiff of the

announcement via phone and even had the vacancy announcement sent to her via

---

        [6] In addition, Ms. Watzman noted that in 1993 she took the following courses
at the National Institutes of Health ("NIH") Training Center: "Grants Management
Responsibilities and the Grants Process"; "The Legal Underpinnings of Grants"; and
"Cost Principles in Grants Administration."

Federal Express, on April 23, 2004.  <u>See</u> Exhibit 9.  Thereafter, Plaintiff was invited to come for an interview, but declined to do so.  <u>Id.</u>  As such, the panel considered her application based on the records on hand.  <u>Id.</u>  A panel conducted interviews for this 2004 position, rated applicants, and selected two (2) individuals, Mr. Darryl Ingram and Mr. David Kadan, both of whom personally interviewed for the vacancy. <u>See</u> Exhibit 10, Interview Notes and Ratings; <u>See</u> also Exhibit 6.  All standard procedures were followed in regard to filling this vacancy.  Exhibit 6.

Specifically, from 2001 until 2004, Mr. Ingram served as a Management Analyst for the District of Columbia Office of the Inspector General.  <u>See</u> Exhibit 11, Resume of Mr. Darryl Ingram.  While in that role, Mr. Ingram, among other things, ensured grantee compliance with the laws and regulations of the local government and the applicable Office of Management and Budget Circulars.  <u>Id.</u>  In addition, Mr. Ingram identified fraudulent, abusive and wasteful practices of the D.C. government by analyzing a large range of qualitative and quantitative data.  <u>Id.</u>  Before his time with the D.C. Office of Inspector General, Mr. Ingram worked as an Information Analyst for the National Criminal Justice Reference System and provided technical assistance to those interested in applying for Federal grants.  <u>Id.</u>  In this regard, he conducted research to recommend Federal funding opportunities to local, state, and Federal law enforcement officials.  <u>Id.</u>

The other selectee, Mr. David Kadan, has a 1990 Bachelor of Science

Degree from the University of the District of Columbia. <u>See</u> Exhibit 11, Resume of Mr. David Kadan. In addition, Mr. Kadan has an accounting certificate from the London Chamber of Commerce, London, England. <u>Id.</u> From 2001 until 2004, Mr. Kadan served as a Project Manager at Haynes and Associates administering grant awards for Indian and Migrant Head Start and Early Head Start programs. <u>Id.</u> In this role, Mr. Kadan reviewed and evaluated grant application for accuracy and compliance with laws, standards and rules. <u>Id.</u> Mr. Kadan also advised program staff in matters such as technical assistance, indirect cost claims, and procedures for grant close outs. <u>Id.</u> Thus, both selectees, Mr. Darryl Ingram and Mr. David Kadan, had substantial grant experience, were well qualified, and took advantage of the invitation to interview for the position. <u>See</u> Exhibit 10, Exhibit 11.

### 3.    <u>Plaintiff Has Not Shown Any Evidence of Pretext</u>.

Assuming that Plaintiff could establish a *prima facie* case of discrimination on any ground, she is unable to show that the Agency's reasons for not selecting her for Vacancy Announcement Number ACF-03-008 was a pretext for discrimination. As noted above, ACF management sought to fill the said positions in the GS-9 level and alerted all applicants who applied for more than one level for the position of this fact. ROI, Ex. 8.

Plaintiff offers no evidence to rebut the Agency's reasons.[7]  She simply disagrees with the Affidavits of Agency witnesses.  The non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts.  Matsushita, 475 U.S. at 596.  Here, Plaintiff has failed to make the required showing.

### 4.    Plaintiff Fails to Establish a Hostile Work Environment.

In determining that a working environment is hostile, factors to consider are the frequency of the alleged discriminatory conduct, its severity, whether it is physically threatening or humiliating, and if it unreasonably interferes with an employee's work performance.  Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993) (defining hostile work environment as when a "workplace is permeated with discriminatory intimidation, ridicule, and insult which is sufficiently severe or pervasive").  Age-based hostile work environment claims are analyzed under the same standard as hostile work environment Title VII claims based on racial harassment.  Gustave-Schmidt v. Chao 360 F.Supp.2d 105 (D.D.C.,2004).  An environment that a reasonable person would not find hostile or abusive is beyond Title VII's purview.  Harris, 510 U.S. at 21.

For the first time in the course of this case, Plaintiff, in her Amended

---

[7] During the ROI investigation, Plaintiff was given the opportunity to issue a Rebuttal Statement and given an extension of time, but chose not to respond.  ROI, Ex. 6.

Complaint, alleges that she "endures a hostile work environment on the basis of her age, through the continuous unfair treatment regarding non-selection and non-promotion." See Amended Complaint. However, the law is very well-established that a plaintiff bringing suit against the federal government in federal court must exhaust all available administrative remedies. Brown v. General Services Administration, 425 U.S. 820 (1976). Failure by a federal employee to exhaust administrative remedies as to an alleged ADEA violation bars the initiation of a civil action as to that allegation. Irwin v. Veterans Administration, 498 U.S. 89 (1990); Taylor v. Virginia Union Univ., 193 F.3d 219, 239 (4th Cir. 1999) (en banc) (the district court properly dismissed a claim relating to a retaliatory negative job reference because it was not mentioned in the charge presented to the EEOC, and therefore, not properly exhausted). Thus, because Plaintiff has failed to exhaust her administrative remedies in regard to her hostile work environment claim, this claim should be dismissed accordingly.

       Moreover, Plaintiff fails to illustrate any alleged hostile events which would be so severe and threatening as to cause a reasonable person to identify the environment as being a hostile one. Plaintiff has also failed to show how any alleged hostile events have interfered with her work performance. In fact, the record reflects that rather than being humiliating and severe, the OGM was quite the opposite. For when Plaintiff was out of the office on leave, Ms. Walker personally contacted her in

regard to the 2004 vacancy.  <u>See</u> Exhibit 9.  Moreover, Ms. Walker sent  via Federal Express the application materials to Plaintiff.  <u>Id.</u>  Finally, when invited by the Agency to interview for the vacancy, Plaintiff chose not to, and thus, she refused to take full advantage of the vacancy announcement and new position.  Thus, the record reflects that rather than being severe and  threatening, the OGM was amenable to Plaintiff and attempted to work with her and encourage her to advance.  For these reasons, this claim should be dismissed.

## V.    <u>CONCLUSION</u>

Viewing the facts most favorable to Plaintiff, her claim of age discrimination is unsupported by the record and must be dismissed.  The Agency has offered legitimate, non-discriminatory reasons for Plaintiff's current non-selection for the position of Grants Management Specialist, GS-1101-9/11/12 announced under the Vacancy Announcement Number s ACF-03-008 and ACF-2004-0090.  The record, considered as a whole, precludes a rational trier of fact from finding that Plaintiff was discriminated against, and consequently, the Agency is entitled to judgment as a matter of law, and there is no need for a trial.

Respectfully submitted,

_____

KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney

_____
R. CRAIG LAWRENCE, D.C. Bar #171538
Assistant United States Attorney




_____
BENTON G. PETERSON, WI. Bar #1029849
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. – Civil Division
Washington, D.C. 20530
(202) 514-7238;(202) 514-8780 (Facsimile)
 **Benton.Peterson@usdoj.gov**




Of Counsel:

ALEX M. AZAR II
General Counsel
JEFFREY DAVIS
Associate General Counsel
ALEXANDRA MEIGHAN
Agency Representative
U.S. Department of Health and Human Services