## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CATHERINE  SILVER | ) | |
| 6001 Lucente Avenue | ) | |
| Suitland, MD 20746 | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No.:  1:05cv0968** |
| | ) | |
| MICHAEL O. LEAVITT, | ) | **JURY TRIAL DEMANDED** |
| SECRETARY OF THE UNITED STATES | ) | |
| DEPARTMENT OF HEALTH AND HUMAN | ) | |
| SERVICES | ) | |
| 330 Independence Avenue | ) | |
| Washington, DC 20201 | ) | |
| | ) | |
|     Defendant. | ) | |
| _____ | ) | |

## PLAINTIFF'S RESPONSE
## TO DEFENDANT'S MOTION TO DISMISS
## OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT
## AND PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY
## JUDGMENT

# TABLE OF CONTENTS

I.    DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE
      FOR SUMMARY JUDGMENT (ON TIMELINESS ISSUES)

Procedural Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 5

A.    Defendant Erroneously Alleges That Plaintiff's
      Complaint in this Action Is Untimely . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 6

B.    Defendant's Argument as to Plaintiff's Request for Administrative Hearing . . . . . Page 7

C.    Defendant Fails to Address That Claim Brought by Plaintiff Which Need Not Be
      Administratively Exhausted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 7

D.    Defendant's Claim That Plaintiff's Contact with the Agency Was Untimely . . . . . Page 8

      Background Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 8

      Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 10

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 13

II.    PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 14

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 20

      Direct Evidence of Age Discrimination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 20

      Direct Evidence and the Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 22

      Defendant's Rationales Are Pretext . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 24

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 27

III.    RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
        (ON THE MERITS) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 27

PLAINTIFF DISPUTES DEFENDANT'S "FACTS NOT IN DISPUTE" . . . . . . . . . . . Page 30

PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS . . . . . . . . . . . . Page 31

1

## TABLE OF AUTHORITIES

I. CASES                                                                 PAGE

*Acosta v. UDC*, 528 F. Supp. 1215 (D.D.C. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Anderson v. Liberty Lobby, Inc.*, 77 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Bowden v. United States*, 106 F. 3d 433 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Carter v. George Washington University*, 387 F. 3d 872 (C.A.D.C. 2004) . . . . . . . . . . . . . . . 23

*Carter v. Pena*, 14 F. Supp. 2d 1 (D.D.C. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23-24

*Celotex Corp. V. Catrett*, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Contreras v. Ridge,* 305 F. Supp. 2d 126 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Desert Place v. Costa*, 539 U.S. 90 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Doe v. United States,* 821 F. 2d 694 (D.C. Cir 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*EEOC v. Warfield-Rohr Casket Co., Inc.,* 364 F. Ed 160 (4th Cir. 2004) . . . . . . . . . . . . . . . . . 25

*Hall v. Giant Food, Inc.,* 175 F. 3d 1074 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21-23

*Irwin v. V.A.*, 498 U.S. 89 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Kalekiristos v. CTF Hotel Management Corp.*, 958 F. Supp. 641 (D.D.C. 1997) . . . . . . . . 21-23

*Koger v. Reno*, 98 F. 3d 631 (C.A.D.C. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Loeb v. Textron, Inc.,* 600 F. 2d 1003 (1st Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Lutes v. Goldin*, 62 F. Supp. 2d 118 (D.D.C. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Machinchick v. PB Power, Inc.*, 398 F. 3d 345  (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . 24, 27

*McDonnell Douglas v. Green,* 411 U.S. 792 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 27-28

*Miller v. Cigna Corp.,* 47 F. 3d 586 (3rd Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

2

*Nat'l R.R.Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*\*Porter v. Natsio*, 414 F. 3d 13 (C.A.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*\*Price v. Waterhouse,* 490 U.S. 228 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-24

*Rachid v. Jack in the Box, Inc.,* 376 F. 3d 305 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . 25

*\*Reeves  v. Sanderson*, 530 U.S. 133, 147 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25, 26

*Taylor v. Virginia Union Univ.*, 193  F.3d  219 (4th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Thomas v. NFL Players Ass'n,* 131 F. 3d 198 (C.A.D.C. 1997) . . . . . . . . . . . . . . . . . . . . . . . . 23

*Timmons v. White*, 314 F. 3d 1229 (10th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*\*Velikonja v. Mueller*, 315 F. Supp. 2d 66 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*\*Ware v. Howard University, Inc.*, 816 F. Supp. 733 (D.D.C. 1993) . . . . . . . . . . . . . . . . . . . . . 28

*\*Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## II. STATUTES

29 U.S.C. §633a. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

29 U.S.C. §633a(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14

29 CFR 1614.105(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

29 CFR 1614.107(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

29 C.F.R. 1614.201( c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

42 U.S.C. §2000e-2(m) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

42 U.S.C. §2000e-5(g)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**EXHIBITS**

Exhibit A

      Affidavit of Catherine Silver

Exhibit B

      Interview Schedule for ACF-03-008 Vacancy

Exhibit C

      Investigator Summary from ROI report regarding Plaintiff's complaint to the Agency

Exhibit D

      Affidavit of Lillian Cash

Report of Investigation ("ROI")

      ROI: Exhibit 1: Notice of Right to File
      Exhibit 2: Letter
      Exhibit 3: Acknowledgment
      Exhibit 4: Organizational Chart
      Exhibit 5: Affidavit of Catherine Silver
      Exhibit 7: Affidavit of Daphne Weeden
      Exhibit 8: Affidavit of Carol Carter Walker
      Exhibit 10.1-6 Application of Catherine Silver
      Exhibit 10.9, 10.10: Emails from Human Resources and Carol Carter Walker
      Exhibit 13: Certificate of Eligibles
      Exhibit 17: COTA Program
      Exhibit 18: Communication from investigator

**Introduction**

Defendant seeks to dismiss based upon a claim that Plaintiff's Amended Complaint was untimely, also claiming, based upon the investigative file, that Plaintiff failed to exhaust administrative remedies. Plaintiff addresses Defendant's Motion to Dismiss and his arguments for summary judgment based upon timeliness issues below.

Separately Plaintiff responds to Defendant's arguments for summary judgment on the merits, and sets out her claim for Partial Summary Judgment to Plaintiff.

## I. DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT (ON TIMELINESS ISSUES)

**Procedural Facts**

Plaintiff, Catherine Silver learned she had not been selected for a vacancy at the Department of Health and Human Services on July 25, 2003. Twenty-five days later, on August 19, 2003, Plaintiff contacted the agency Office of Equal Opportunity and Civil Rights claiming age discrimination, filing her formal complaint on November 19, 2003, as directed by that office. When the agency had taken no final action sixteen months after accepting the claim, Plaintiff served her Intent to Sue timely on the EEOC, on March 29, 2005, filing her Complaint in this Court more than 30 days later, on May 16, 2005.

On August 18, 2003, Plaintiff filed an Amended Complaint, adding her claim that Defendant also failed to select her for an opening in 2004 (as in 2002) on account of her age, and her claim that Defendant engaged in ongoing and repeated discriminatory refusal to promote her, after, as well as before, the 2003 failure to hire. Defendant thereby created a hostile work environment on the basis of age. Plaintiff also claims that Defendant's decision to hire only GS-

5

9's for the 2003 opening worked a disparate impact upon older workers.

**A.    DEFENDANT ERRONEOUSLY ALLEGES THAT
       PLAINTIFF'S COMPLAINT  IN THIS ACTION IS UNTIMELY**

Defendant claims in his Motion to Dismiss that Plaintiff's Amended Complaint was not timely filed, confusing the two alternative procedures available to a victim of age discrimination. 29 U.S.C. §633a provides two distinct paths to relief under the ADEA: a Plaintiff may elect to pursue administrative procedures, or proceed directly to federal court.  The time requirements embodied in the direct filing procedure cannot be imposed upon a Plaintiff who has invoked administrative remedies.

Defendant cites portions of the statute which pertain to a federal employee who alleges age discrimination, but does **not** elect to proceed administratively.  Section 633a(d) of 29 U.S.C. is deceptively set by Defendant, at page 9 of his Memorandum, deleting the introductory phrase, which specifies that §633a(d) pertains to an *"individual who has **not** filed a complaint concerning age discrimination with the Commission...."  Id.* (Emphasis added).  Such individual must file a notice of intent to sue *"within one hundred and eighty days after the alleged unlawful practice occurred." Id.*   But Plaintiff Silver **did** file her complaint of non-selection in 2003 administratively.  The provision does not apply to Plaintiff Catherine Silver.[1]

Plaintiff complied with all administrative procedures set out at 29 CFR 1614.105(a) and

---

[1]  Law purportedly set out at page 22 of Defendant's Memorandum is simply false ("Failure by a federal employee to exhaust administrative remedies as to an alleged ADEA violation bars the initiation of a civil action*"*).  Defendant's citations are a  misrepresentation, as follows: *Irwin v. V.A.*, 498 U.S. 89 (1990) addresses a  Title VII plaintiff who could not ignore time limits in  EEOC  "right to sue."  *Taylor v. Virginia Union Univ.*, 193  F.3d  219, 239 (4th Cir. 1999) states, "*In order to assert a Title VII claim in federal court, a plaintiff must exhaust administrative remedies.*"

29 C.F.R. 1614.201( c)(1).  As required, she contacted the agency's office of EEO twenty-five

days after notice of the non-selection, filing a formal complaint on November 19, 2003.  When

no final action had been taken sixteen months after the complaint had been accepted, having

waited the required 180 days, Plaintiff filed her Notice of Intent to Sue on the EEOC on  March

29, 2005.  She filed this civil action, as required, more than 30 days later.

     The requirement for a Plaintiff like Catherine Silver, who has first filed administratively,

is that she  <u>wait</u> 180 days before filing a civil action, not that she file <u>within</u> 180 days.  Defendant

confounds the separate avenues of relief.  Clearly a plaintiff pursuing administrative remedies

cannot be  required to both file **<u>within</u>** 180 days of the discriminatory, and also wait until  **<u>after</u>**

180 days have passed.  Defendant's argument is not only unavailing, but is also frivolous.

## B.    DEFENDANT'S ARGUMENT AS TO PLAINTIFF'S REQUEST FOR ADMINISTRATIVE HEARING

     Discussion in Defendant's Motion of  Silver's June 30, 2004 request for a hearing, (later

withdrawn)  is relevant neither to any issues raised in this case, nor to any issues which could be

raised.  The EEOC saw fit to schedule Silver's hearing for reasons unknown to us at this

juncture. [2]   Plaintiff withdrew the request,  electing, as is her right,  to proceed to federal court.

29 C.F.R. 1614.201(c)(1).   The scheduling of a hearing date is of no consequence in this matter.

## C.    DEFENDANT FAILS TO ADDRESS THAT CLAIM BROUGHT BY PLAINTIFF WHICH NEED NOT BE ADMINISTRATIVELY EXHAUSTED

     Defendant seeks general dismissal of Plaintiff's Amended Complaint for alleged  failure

to exhaust administrative remedies.  But Defendant takes no notice of the claim in Plaintiff's

---

[2] Where a request for hearing is not timely filed, hearing can be denied, and the agency
may proceed to take final action.

Amended Complaint, the recent discriminatory refusal to promote, which occurred in November, 2004, within 180 days of Plaintiff's Intent to Sue and Complaint to this Court.   Plaintiff's claims are all timely, but even if the  2003 non-selection were not timely, Plaintiff's claim of a recent refusal to promote, and the accompanying hostile environment claim,  would remain.  Plaintiff's Complaint cannot be dismissed where much of her claim is  unaffected by any argument in Defendant's Motion. [3]

**D.    DEFENDANT'S CLAIM THAT
        PLAINTIFF'S CONTACT WITH THE AGENCY WAS UNTIMELY**

Not properly a Rule 12(b)(6) motion, Defendant's argument, that based on the investigative file Plaintiff failed to exhaust administrative remedies on her 2003 non-selection claim, is addressed below in the manner of a Motion for Summary Judgment.

Defendant states, without substantiation, that Plaintiff's Affidavit contains a statement that she learned of the non-selection on the day the vacancy posting closed.  (Defendant's Memorandum, page 7)   There is no such statement in the Affidavit.  Where no such statement is identified, and where there is no claim in a Statement of Undisputed Facts that such a statement exists, Defendant's argument is unsubstantiated, and the Motion must be denied.

**BACKGROUND FACTS
(REGARDING ISSUES OF TIMELINESS)**

**Silver's Career at the Administration of Children and Families**

Plaintiff Catherine Silver, age 64 years, a Grants Management Specialist ("GMS") in the

---

[3]  Plaintiff's claims of subsequent failure to promote are similar, related and inextricably connected to the exhausted 2003 claim of non-selection. Plaintiff's recent claims may be brought directly, or, according to the law of this Circuit, they are also administratively exhausted based upon their relation to the previous claim. *Velikonja v. Mueller*, 315 F. Supp. 2d 66 (D.D.C. 2004) (*citing Nat'l R.R.Passenger Corp. V. Morgan*, 536 U.S. 101 (2002).

Division of Discretionary Grants ("the Division"), Administration of Children and Families,

U.S. Department of Health and Human Services, has been continually thwarted in her efforts to

obtain promotion. (See Exhibit A, Affidavit of Plaintiff Catherine Silver) In February, 2003, a

posting for three Grants Management Specialists, GS-9/11/12 positions, appeared, closing on

March 28, 2003. Silver applied. During the period after the posting, Plaintiff had numerous

unavoidable absences from work as her husband became terminally ill in spring of 2003. On a

day when she was back at work, on July 25, 2003, Plaintiff learned in a conversation with

another employee that selections for the position had been made, and that she had been rejected.

(See Exhibit A)

     Aware that management was impermissibly favoring younger and more inexperienced

workers, Silver contacted the office of EEO on August, 19, 2003, 25 days after learning of her

non-selection. In her contact with the counselor, Silver gave July 25, 2003 as the date of notice,

and the agency has consistently used July 25, 2003 as the operative notice date. The agency has

never produced any evidence, in the form of announcements, or letters of non-selection, which

would challenge that notice date.

     The *Report of Investigation* (hereinafter "ROI") contains documentation of events which

occurred between the March 28, 2003 closing and the July 25, 2003 notice of non-selection. The

events, which are part of the selection process, occurring after the March 28, 2003 closing, show

that no decision had been made, or could have been made, on or close to March 28, 2003.

     For example, as late as May 20, 2003 Director Carol Carter Walker emailed Plaintiff that

a long standing error in her file was finally being corrected to show that she was eligible for the

position. (See ROI: Exhibit 10.10) Where Carter Walker, two months after the March 28, 2003

closing, was informing Plaintiff by email that her application would be considered, Defendant

cannot claim that on March 28, 2003, Plaintiff was already rejected and knew that she was

rejected.

The file also shows that interviews for the position occurred in May, 2003, long after the

close of the posting, as one would expect. (See Exhibit B)  It is not known when offers were

made and when the positions were finally filled, but the file also shows contacts still occurring

between Defendant and candidates in late July, 2003.  (ROI: Exhibit 13)

Following Plaintiff's August 19, 2003 contact with the office of EEO, dispute resolution

failed, and the agency's Office of Equal Opportunity and Civil Rights notified Silver that she had

the right to file her formal complaint of discrimination.  She did so on November 19, 2003. (ROI:

Exhibits 1 and 2)   The complaint was accepted, and the issue  identified was: "*On July 25, 2003,*

*you learned that you were not selected for either of three vacancies for the position of Grants*

*Management Specialist...*" (ROI: Exhibit 3) After the investigation, the ROI was issued,

including the investigator's Summary of the Investigation. (Exhibit C)

Illogically, Defendant argues in his Motion  that Silver knew of her non-selection on the

day the posting closed, March 28, 2003, where no selection had yet been made on March 28,

2003.

## **ARGUMENT**

Under Section 633a of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et*

*seq.,* as a federal employee invoking administrative remedies, Plaintiff Silver was obliged to

initiate administrative contact within 45 days of learning of the discriminatory conduct. 29 CFR

1614.105(a).   The 45 day time limit operates in the manner of a statute of limitations defense

according to the District of Columbia Circuit. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385,

393 (1982). Defendant, putting forth this affirmative defense, bears the burden not only to plead

it, but also to prove it. *Bowden v. United States,* 106 F. 3d 433, 437-438 (D.C. Cir. 1997). He

fails to do so.

**Agency Acceptance of the July 25, 2003 Notice Date**

During spring of 2003, Plaintiff's husband was terminally ill, and she had to be gone

from work to care for him. She describes that on July 25, 2003, a day when she was back at

work: "*I learned in a conversation with another employee that selections for the position had*

*been made and that I had been rejected.*" (Exhibit A)

The agency's acceptance in 2003 of the operative notice date is relevant. Although

review of EEOC or agency proceedings is "de novo," *Doe v. United States,* 821 F. 2d 694, 697-

98 (D.C. Cir 1987), the court in *Contreras v. Ridge* condoned reliance upon agency fact findings,

stating that administrative decisions on timeliness are not "rendered irrelevant" by the fact that

deference by the Court is not required. *Contreras v. Ridge,* 305 F. Supp. 2d 126 (D.C.D.C. 2004)

(citing *Timmons v. White*, 314 F. 3d 1229, 1233 (10th Cir. 2003).

Accepting the August 19, 2003 formal complaint, the agency identified the issue to be

investigated: "*On July 25, 2003, you learned that you were not selected for either of three*

*vacancies for the position of Grants Management Specialist...*" (ROI, Exhibit 3). At that time,

the agency either knew when the selections had been announced, or could have easily obtained

the information. The agency, in the best position to know, took no exception to the July 25, 2003

notice date, and has produced no contradictory evidence, no posted announcement, or letters of

non-selection to the contrary. [4]  A federal agency has the right and the responsibility to assess

timeliness.  Under 29 CFR 1614.107(a)(2), an agency **shall** dismiss an entire complaint that fails

to comply with the applicable time limits. It did not.

_____Defendant's claim is unsupported by any evidence.  The record is clear that around March

28, 2003 Silver **had** **not** been eliminated, because **no** **one** had been eliminated.  To the contrary,

Affidavits in the ROI by the selecting officials describe that the selection process was only just

getting underway.

**The Selection Process after the posting closed on March 28, 2003**

A multi-phase selection process began when the posting closed on March 28, 2003.  As

late as May 20, 2003, Director Carter Walker updated Plaintiff by email, informing her that her

application would be processed.  (ROI: Exhibit 10.10) Carter Walker  informed Plaintiff that she

had sent  "*written  attestation*" to Human Resources,  correcting a long standing error in

Plaintiff's file, so that Plaintiff  would be included in the pool for the vacancy.[5]

Carter Walker describes the sequence of events beginning on about March 28, 2003.

(ROI, Exhibit 8, page 1)  "S*election certificates were generated by the Program Support*

*Center's Human Resource Service,*" and in the next step, the certificates  "*were sent to the OA*

*Executive Officer, and subsequently to me."*  Carter Walker continues that she then  "*in turn,*

*turned them over to the then Acting Director, Division of Discretionary Grants [Daphne J.*

---

[4] The Counselor's Report of Silver's contact was never produced by the agency in response to the investigator's request, as noted in the summary.(Exhibit C, page 6, footnote 5)

[5] Albeit Walker also ensured that Plaintiff  would be eliminated, stating that she sought only a GS-11 position.

Weeden], *to form a panel of OA managers*."  The managers were to "*interview, evaluate and make recommendations*."

Ms. Weeden, relates  that upon receiving the certificates from Carter Walker, she "*convened a panel of four grants management officers in the district...and started interviews....*" (ROI, Exhibit 7, page 1) Silver could not have known that she had not been selected at the close of the March 28, 2003 posting period, as the panel had not yet even convened to begin its work.

 Exhibit B shows that interviews took place during the month of May, 2003, and after the process described above, the agency had to make offers to candidates, and receive acceptances, before making any announcements.  Notations by the selecting panel reflect contacts with candidates in July, 2003.  (ROI, Exhibit 13)  It is clear from the record and the agency's own chronology,  that no decisions could have been made and conveyed to Silver on March 28, 2003. She could not have known the results "*around the time the vacancy posting expired"* because there were no result to know.

## CONCLUSION

Plaintiff's Complaint to this Court was  timely, as she proceeded administratively on her 2003 non-selection claims before filing this civil action.

As to the claim of failure to exhaust, Defendant has failed to prove that Plaintiff knew of the 2003 non-selection before July 25, 2003, which is his burden.  Defendant offers no evidence, no announcement, no letter of non-selection, to show when the agency  **did** inform Plaintiff,  if it was not on July 25, 2003.   Defendant's theory is specifically contradicted by the details of  the selection process described in the investigative file.  The affirmative defense is not proved.

 Defendant also ignores Plaintiff's recent claims (November, 2004 refusal to promote,

13

and creation of a hostile work environment), which she may bring directly pursuant to 29 U.S.C.

§633a(d), and which are unaffected by any arguments in the Motion. The Motion to Dismiss or

in the Alternative for Summary Judgment, on issues of timeliness, must be dismissed.

## II. PLAINTIFF'S CROSS MOTION
## FOR PARTIAL SUMMARY JUDGMENT
## AND
## RESPONSE TO DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT (ON THE MERITS)

Plaintiff seeks Partial Summary Judgment, based upon the direct evidence of age

discrimination in this case, or in the alternative, seeks a finding of direct evidence by the Court so

that the case may proceed to trial where Defendant may raise his limited affirmative defense, as

the law set out below allows.

## FACTUAL BACKGROUND
## (ON THE MERITS)

### Silver's Successful Career as a Government Employee, and her Efforts to Advance

Plaintiff Catherine Silver, age 64 years, a seven year GS-9, has been a Grants

Management Specialist ("GMS") at the Division of Discretionary Grants (the "division") for the

last four and a half years of her 32 year "fully successful" government service. Upon the

suggestion of then-Director, Maiso Bryant, in 2001, Plaintiff transferred to the Division. The

purpose of the transfer was to enable Silver to advance in her career, and toward that end she was

enrolled in a Career Opportunities Training Program, assuming a Grants Management Specialist

position, COTA trainee. The Grants Management Specialist position is generally a GS-1101-

9/11/12 job series. (See Exhibit A)

**The Grants Management Specialist Job Series and the COTA Program**

The 52 week COTA program is a "*career development tool*," formal classroom training, on the job training, and self development activities, designed, according to policy statements, to give an employee access to "*careers in different ...job series.*" (See ROI: Exhibit 17, "COTA: The Role of the Training Team"). The COTA training agreement set in place for Silver listed her target position as Grants Management Specialist ("GMS"), GS-1101-9. Upon completion of the program in February, 2002, she became a fully qualified GMS, GS-1101-9. The Division employs numerous other Grants Management Specialists in the GS-1101 series. The GMS position is a job series with the potential for promotion to GS-11 and GS-12 or higher.

Nowhere in the agreement, or in the COTA explanatory policy statements, in the COTA overview, or in the qualifications analysis, is there any indication that Silver's "target GMS position" is any different than the GMS positions held by all other GMS's at the Division. (See ROI: Exhibit 17) Nowhere is there any indication that Plaintiff's position was specially designed as some kind of dead-end variant of the position held by numerous other GMS employees at the Division. [6] In fact an email from Human Resources ( ROI: Exhibit 10.9, 10.10) specifically states that Plaintiff is qualified for other positions in her job series upon satisfactory completion of the prescribed COTA training.[7]

In February, 2002, Silver had performed the GMS, GS-1101-9 job for a year, with a

---

[6] Therefore, Plaintiff contests Defendant's statements No. 4 and 5 of his "Material Facts Not in Dispute."

[7] The May 8, 2003 email also erroneously stated that Plaintiff had not completed the training, a repetition of the error which Carter Walker specifically corrected as reported in her responsive email, on May 20, 2003.  (ROI: Exhibit 10.9, 10.10)

ranking of fully successful, and had completed all required course work and training.  Entitled to

have her COTA paperwork signed to verify that she was no longer a GMS trainee, Plaintiff, the

oldest GMS at the Division,  asked repeatedly but unsuccessfully, for many months, to have that

done.  Management could not seem to get around to meeting with her, and she sought union

assistance.  Not until May, 2003, thirteen months after Plaintiff had completed the program,

when she had been in the position for almost 2 ½ years, did Director Carter Walker complete the

paperwork verifying that Silver was no longer a "trainee." (Walker states, *I apologize for the

long delay in setting this matter aright.*") (See ROI: Exhibit 10.10)

**Plaintiff's Efforts to Obtain Promotion, and Other GMS's at the Division**

The Division employs, and has recently hired, numerous other young workers in the GMS

position.  Upon information and belief, every young GMS in the Division has been promptly

promoted from GS-9 to GS-11 or higher, non-competitively. (See Exhibit A)  Plaintiff, has been

performing exactly the same job fully successfully since 2001, alone, but she is told she is

ineligible.

Plaintiff has consistently inquired about promotion.  (See Exhibit A) The responses are

suspiciously ambiguous. In her Affidavit in the ROI, without further explanation, Director of

Grants Management, Carter Walker cites  "...further *inconsistencies* in some of the COTA

paperwork," stating that she informed Plaintiff in 2002, that she, unlike all other GMS's in the

Division, will not ever be eligible for promotion to higher levels of the position.  (ROI: Exhibit

8.2.  Emphasis added).

Director of the Division of Discretionary Grants, Daphne Weeden, states without

explanation in her Affidavit, that Silver, unlike every other GMS's in the Division,  is not in a

"*career ladder position*."  (See ROI: Exhibit 7.1)  Director Weeden also confirms that young 2001

hires,  Brooks and Weatherspoon, GS-7's, were immediately given GMS work when they came

into the Division as new clerical assistants.  Although as GS-7's  they were ranked below Silver,

management designated them as "career ladder" GMS's, and they were soon promoted non-

competitively.  (See ROI: Exhibit 7.1)

Complete information is not yet available, and Counsel for Plaintiff expects through

discovery to compare treatment of the young GMS's with treatment of Plaintiff. [8]  Supervisor,

Lillian Cash, testifies that the job tasks which Plaintiff performs, and has performed since 2001, is

the same work performed by other younger GMS's who have been promoted to GS-11 or above.[9]

Cash states that Silver's job functions are at the same or higher level of difficulty as the GS-11

GMS's, while she alone is denied promotion. (See Exhibit D )

### Non-Selection for GMS Openings

Plaintiff has been told by management that she can only obtain a promotion competitively,

by applying for vacancies posted for GMS's, although she is already a GMS.   In about May,

2002, Plaintiff applied for a GMS job, which she already had and was performing,  in response to

Vacancy Announcement Number ACF-02-037.  Initially certified as  highly qualified for the

position,  management reversed, explaining to Plaintiff that she was not qualified at all, and could

only qualify  for the Grants Management Specialist position by serving in the position she was

---

[8] The agency declined to respond to the investigator's request for information on the ages
and promotion history of all other GMS's at the Division. (See ROI: Exhibit 18, item 5, and
Exhibit C, page 6, footnote 4)

[9] Plaintiff therefore contests Defendant's Statement No. 3 in his "Material Facts Not in
Dispute."

applying for yet another 52 weeks.  (ROI: Exhibit 5.3) Younger candidates were chosen, about

whom Plaintiff does not yet have complete information.

 **Evidence  of Age Bias and the 2003 Vacancy Posting**

In February, 2003, Plaintiff applied again, for Vacancy Announcement Number ACF-03-

008, Grants Management Specialist, GS-1101-9/11/12.  The posting was for GS-9/11/12, and

after it had closed management decided to hire at the GS-9 level,  unbeknownst to the applicants.

(See *Report of Investigation, ROI: Exhibit 8*)   Selection for the ACF-03-008 position at any level

would have been advantageous to Plaintiff, as management well knew.  Nothing on Plaintiff's

application in the ROI indicates that she asked only to be considered at the GS-11 level.  (ROI:

Exhibit 10.1-6) According to her email, Carter Walker took affirmative steps to see that Human

Resources classified Plaintiff as a GS-11 applicant, although also according to her testimony, she

had already decided to eliminate any GS-11 applications from consideration. (See ROI: Exhibit

10.10 and Exhibit 8.1).

Younger candidates were chosen who required extensive training for the job which Plaintiff

already knew. (See Exhibit A) The younger candidates were given "career ladder" positions,

which were in all other respects the same job Plaintiff was performing and continued to perform

"fully successfully." They could be promoted, and she could not.

Various employees at Division of Discretionary Grants have heard management express an

interest in staffing the division with more young employees.  Silver filed a charge of age

discrimination the investigation of which yielded evidence that the management's intent was,

indeed, to hire younger workers.

**Direct Evidence of Age Discrimination by the Decision Makers Regarding the Decision**

Carol Carter Walker, the highest ranked official involved in the selection, states in her Affidavit why Plaintiff was not selected. "*The demographics of ACF indicate that **more than half of its employees are eligible for retirement within five years,***" she states. (ROI, Exhibit 8) In another admission that age was considered, Carter Walker also states that management wanted to "***attract new members to the workforce,***" (ROI, Exhibit 8). New members to the workforce will in the main be younger workers, in contrast to Silver, a 32 year government employee.

Then-Lead Grants Management Specialist, Daphne Weeden directed the selection process. Asked to explain why Plaintiff was rejected, Weeden also admits consideration of the age factor: "*We started interviews at the GS-9 level, because the number of candidates were more numerous and **we were interested in longevity for the positions**.*" (ROI: Exhibit 7)

**Continued Non-Selection and Non-Promotion**

Plaintiff sought, and continues to seek promotion. She was most recently refused in about mid November, 2004, when she unsuccessfully approached Director Daphne Weeded during her annual evaluation. (Exhibit A)

A Vacancy Announcement for GMS positions, ACF-2004-0090, was again posted in spring of 2004, while Plaintiff was at home in the final days of her husband's long illness. Alerted by Carter Walker to the posting, she was able to file her application for the posting. She was never offered an interview, contrary to Defendant's assertion. (See Exhibit A) No other reason has been given for Plaintiff's non-selection.[10]

---

[10] Plaintiff vigorously contests Defendant's Statement No. 12 in "Material Facts Not in Dispute" which is false.

## ARGUMENT

The purpose of summary judgment is to isolate, and then terminate defenses that cannot be supported. *Celotex Corp. V. Catrett*, 477 U.S. 317, 323-24 (1986)  The only issue in this case is whether decision makers at the Division of Discretionary Grants were motivated by an impermissible age bias.  The decision makers have admitted their intent to avoid  older workers under oath.  Sworn statements show that Plaintiff was disfavored for any hiring selections and for promotions, because management, according to their own statements, wanted to staff the Division with younger workers.  Plaintiff is entitled to partial summary judgment as to liability,  Defendant retaining the opportunity to raise the limited affirmative defense set out below.  _____

## DIRECT EVIDENCE OF AGE DISCRIMINATION

### Preference for Candidates Not "*Eligible for Retirement within Five Years*"

Acting Director of the Office of Grants Management, Carol Carter Walker, and Director of Discretionary Grants, Daphne Weeden, are the primary decision makers regarding Plaintiff's applications for positions and for promotion. ( ROI: Exhibit 4)  Carter Walker,  the highest ranked official involved in the 2003 selection, when asked why Plaintiff was not selected for the posting, replied: "*The demographics of ACF indicate that **more than half of its employees are eligible for retirement within five years***." (ROI, Exhibit 8)  Carter Walker expresses a preference not to have so many employees who are eligible to " *retire within five years*"  at the work site.  She doesn't want to hire any more of them.

Workers eligible for "*retirement within five years*" are older workers.  The likelihood of "*retirement within five years*" reasonably correlates to no other factor than age.  It is a  "*factor inextricably linked to age.*" *Hazen Paper Co. v. Biggins* 507 U.S. 604, 611 (1993).  A "*factor*

*inextricably linked to age,"* according to *Hazen Paper*, is one where no other "*independent factor*

*other than age that correlates with the result*." Only older workers as a group can be eligible for

retirement within five years. Defendant's rationale is direct evidence of age discrimination

according to the standard set out in *Hazen.* An employer who targets older employees with a

particular status, engages in age discrimination. *Id. at 608.*

## Preference for Candidates with "*Longevity*"

Director of Discretionary Grants, Daphne Weeden collected the list of eligible applicants,

convened an interview panel, and directed the selection. Asked why Plaintiff was not selected in

2003, and she expressed the same sentiment, stating, *"We started interviews at the GS-9 level,*

*because the number of candidates were more numerous and **we were interested in longevity for***

***the positions**."* (ROI, Exhibit 7) Weeden's interest in candidates who will have *"longevity,"* over

candidates who will have less longevity is a clear preference for candidates who are younger. This

is also a "*factor inextricably linked to age,"* Intent to avoid older candidates who will have less

longevity in the position is an expression of discriminatory bias. The statement, like Carter

Walker's explanation above, is by a primary decision maker, is indisputably related to the

decision, and under *Kalekiristos v. CTF Hotel Management Corp*., 958 F. Supp. 641, 665 (D.D.C.

1997), the statements are direct evidence.

## Preference for "*New Members to the Workforce*"

In her Affidavit Carter Walker also states that management wanted to "***attract new***

***members to the workforce***." (ROI, Exhibit 8) It cannot be disputed that the greatest number of

"*new members to the workforce*" will be younger workers, in marked contrast to Plaintiff who had

been in the government's work force for 32 years. A preference for *"new members of the*

21

*workforce*," over a person who has been in the workforce for 32 years is a preference for a young candidate. "Newness" to the work force reasonably correlates in the main with age, and the decision to prefer such candidates over more seasoned employees, is decision making motivated by an impermissible bias, and age discrimination.

Rejection of a candidate because she may be "*eligible for retirement within five years*," because she will have less "*longevity*" in the position, or because "*new members of the workforce*" are sought, is discrimination against older workers. The statements above, "*inextricably linked to age*," and correlating with no other independent factor, are direct evidence. *Hazen Paper Co. v. Biggins*, *supra; Kalekiristos v. CTF Hotel Management Corp*., *supra*. They are ageist factors which indisputably made a difference in the decision. *Loeb v. Textron, Inc.,* 600 F. 2d 1003 (1st Cir. 1979); *Miller v. Cigna Corp.,* 47 F. 3d 586, 595 (3rd Cir. 1995). 958 F. Supp. 641, 665 (D.D.C. 1997).

## DIRECT EVIDENCE AND THE LAW

### Direct Evidence and Employer Liability

_____Plaintiff has produced evidence which meets the description of direct evidence found in *Price v. Waterhouse,* 490 U.S. 228, 276 (1989). Using the language of *Price Waterhouse,* "*She has proved discriminatory input into the decisional process.*" *Id. at 272.* Direct evidence is found where, as here, decision makers place "*negative reliance on an illegitimate criterion.*" *Price Waterhouse, at 277.* The explanations by Carter Walker and Weeden are by the decision makers, about the decision, a discriminatory "*attitude [which] was more likely than not a motivating factor in the employer's decision.*" *Hazen Paper Co. v. Biggins* 507 U.S. 604 (1993); *Lutes v. Goldin,* 62 F. Supp. 2d 118, 123 (D.D.C. 1999); *Kalekiristos v. CTF Hotel Management*

22

*Corp.*, 958 F. Supp. 641, 665 (D.D.C. 1997).

Where the plaintiff has produced direct evidence of employment, she is entitled to proceed under the *Price v. Waterhouse* mixed motive analysis (as modified by the Civil Rights Act of 1991). *Porter v. Natsio*, 414 F. 3d 13, 18 (C.A.D.C. 2005). [11] According to the D.C. Circuit, *"Where a plaintiff has made this type of strong showing of illicit motivation,"* one may *"presume that the employer's discriminatory animus made a difference in the outcome,"* and the burden of persuasion shifts to the employer. *Thomas v. NFL Players Ass'n,* 131 F. 3d 198, 202-03 (C.A.D.C. 1997)(*citing Price Waterhouse v. Hopkins*, 490 U.S. 228, 276 (1989). The D.C. Circuit specifically applies the mixed motive analysis in the context of an ADEA claim. *Carter v. George Washington University,* 387 F. 3d 872 (C.A.D.C. 2004); *Hall v. Giant Food, Inc.,* 175 F. 3d 1074, 1077 (D.C. Cir. 1999).

The Court explained the analysis in *Carter v. Pena*, 14 F. Supp. 2d 1, 9 (D.D.C. 1997), in the context of an ADEA claim. Where the plaintiff shows that *"a discriminatory factor played a motivating part in the employer's decision....the employer has the opportunity to show that he would have made the same decision in the absence of the discrimination.*" *Id. at 9.* Such a showing however is only a limited affirmative defense. The employer can in no wise avoid all liability for the violation, which has already been proved. *Carter, at 9.* A showing by the employer by a preponderance of the evidence that he would have made the same decision absent the discrimination, "*will only limit the scope of relief available to the plaintiff."* *Id. at 9.* [12]

---

[11] Under this analysis, the *McDonnell Douglas v. Green,* 411 U.S. 792 (1973) formulation does not apply.

[12] *Carter v. Pena,* states, at page 9: *"The portion of the [Price Waterhouse] holding that an employer could avoid all liability by proving that it would have made the same decision*

In *Desert Place v. Costa*, 539 U.S. 90 (2003), the U.S. Supreme Court repeated  that in the employment discrimination context, "*a plaintiff need only demonstrate that an employer used a forbidden consideration.*"  *Id. at 91.*  The mixed motive analysis applies if the impermissible factor *" was a motivating factor, even though other factors also motivated the practice.*" *Desert Palace, at 94. (emphasis added)*  The employer's proof that it would have made the same decision is a "*limited affirmative defense that does not absolve it of liability, but restricts the remedies available to a plaintiff.*"  *Id.*  Desert Place has been widely applied in other Circuits.[13]

## DEFENDANT'S RATIONALES ARE PRETEXTUAL

Plaintiff can demonstrate that Defendant's reasons for non-selection for vacancy announcements are pretextual.

### Management's Rationale for the 2003 Selection is Pretextual

Defendant's reliance upon Plaintiff's COTA agreement is suspect.  Management arbitrarily reads into the COTA documents a permanent bar against promotion, which is not there. The email to Plaintiff from  Human Resources on May 8, 2003, ( ROI: Exhibit 10.10), specifically

---

*despite the illegitimate fact*" has been overruled.

[13] Courts in the Fifth and Fourth, Eighth, Ninth, Seventh and Fourth Circuits  have applied *Desert Palace* to ADEA cases, *Machinchick v. PB Power, Inc., 398 F. 3d 345, 352* (5th Cir. 2005)*, Rachid v. Jack in the Box, Inc.,* 376 F. 3d 305, *312* (5th Cir. 2004), and *EEOC v. Warfield-Rohr Casket Co., Inc.,* 364 F. Ed 160, 163-164 (4th Cir. 2004), although *Desert Palace* was decided in the context of 42 U.S.C. §2000e-2(m) and §2000e-5(g)(2)(B).

   In *Desert Palace,* a sex discrimination case, the Court, broadening the application of the analysis,  approved the following language, *"If you find the plaintiff's sex was a motiving factor in the defendant's treatment of the plaintiff, the plaintiff is entitled to your verdict....if you find the defendant's treatment of the plaintiff was motivated by both gender and lawful reasons, you must decide whether the plaintiff is entitled to damages." Id. at 96-97.*

states that Plaintiff is qualified for *"other positions in her job series"* upon satisfactory completion of the prescribed COTA training. The purpose of the COTA, according to published policy statements is *"career development tool,"* designed to give the employee access to *"careers in different ...job series.*" (See ROI: Exhibit 17, "COTA: The Role of the Training Team"). Nowhere in the COTA documents is there any indication that Silver's "target GMS position" is any different than the GMS positions held by all other GMS's at the Division. (See ROI: Exibit 17), or that it was designed to be a "deadend."

Inserting provisions into the COTA agreement which are not there, together with management's unsubstantiated explanations that Plaintiff's GMS position is not in a *"career ladder"* job series, and unexplained statements by management citing *"ambiguities*" in the COTA, suggest pretext. *Reeves v. Sanderson*, 530 U.S. 133, 147 (2000)

It cannot be said that the 2003 selectees were necessarily better qualified, where Plaintiff had significant experience in the very job at issue, and Defendant has hired and promoted other candidates without degrees. Caselaw in this Circuit recognizes the importance of experience as a job qualification. According to *Koger v. Reno*, 98 F. 3d 631, 634-35 (C.A.D.C. 1996), relevant job experience can be the most important factor in determining promotions. ("*experience was most heavily weighted factor"* - more so than education.) The *Acosta v. UDC* court found that where an employer relies upon education inconsistently, such a defense could be pretextual. *Acosta v. UDC*, 528 F. Supp. 1215, 1223 (D.D.C. 1981)(holding that UDC did not meet its burden of establishing a legitimate, nondiscriminatory reason for not promoting Plaintiff on the basis of a lack of a degree, because UDC has promoted others who lack the degree.) In some cases, degrees possessed by selectees, such as a Masters in Speech Pathology, had no relevance to the job tasks.

Defendant argues that they wanted to hire "*new members of the workforce*" for cost savings, but Plaintiff could have been hired as a GS-9. The argument is also pretextual where management's policy is to promptly promote all young GS-9 GMS hires to higher paying positions, so that cost saving is illusory.

Defendant also well knew that Plaintiff was exploring all possible ways of obtaining a promotion, and that it would be greatly to her advantage to be selected for the 2003 vacancy at the GS-9 level. Plaintiff's application in the ROI contains no restrictions. Director Carter Walker, who has testified that she already knew no one seeking GS-11 would be hired, proceeded on May 14, 2003, according to her email, to take affirmative steps to ensure that Human Relations put Plaintiff in the GS-11 pool.

## The Rationale for the 2004 Selection is False

_____Regarding non-selection of Plaintiff in 2004, the only reason ever given by management is the unsubstantiated allegation that Plaintiff turned down an interview. Plaintiff was never offered an interview, and no affiant with personal knowledge has testified that she was. Plaintiff simply returned to work to learn that she had again been rejected. Furthermore, Weeden's statement that Defendant had to assess Plaintiff's candidacy through paper submissions only is not worthy of credence. Defendant had daily contact with Plaintiff and her work, evaluating it as fully successful for a period of over three years. Where the employer puts forth a rationale which is false, under *Reeves v. Sanderson*, 530 U.S. 133, 147 (2000) a discriminatory motive may be inferred by the trier of fact.

## CONCLUSION

The statements of primary decision makers indisputably express intent to avoid older GMS candidates, and to hire younger workers. At best Defendant can argue a mixed motive, and the law is clear that Defendant can raise only a limited affirmative defense. Plaintiff's fully successful performance of the job for four and a half years compares favorably with hires with irrelevant degrees, and no direct experience in these job tasks. Plaintiff has shown pretext where Defendant has arbitrarily defined Plaintiff's position as a dead-end position from which no promotion is possible, because she once utilized the COTA program. Defendant's economic rationale is unconvincing where Plaintiff could have been hired as a GS-9, and the young GS-9's who are chosen are uniformly promoted promptly. Management filled the 2004 opening without allowing Plaintiff to interview.

Plaintiff prays the Court grant partial summary judgment, or in the alternative find Plaintiff to have presented direct evidence, so that discovery and trial will be properly limited to Defendant's effort to prove a limited affirmative defense.

## III.    RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ON THE MERITS)

Plaintiff also asks the Court to deny Defendant's Motion for Summary Judgment. In the ADEA context a plaintiff may defeat summary judgment either by : 1) offering evidence showing age was a motiving factor in the adverse action, or 2) by showing that Defendant's proffered nondiscriminatory reasons are false. *Machinchick v. PB Power, Inc., 398 F. 3d 345, 352* (5th Cir. 2005)

Plaintiff has provided ample evidence above that age was a motivating factor for the

decision makers in this case. Should the *McDonnell Douglas v. Green,* 411 U.S. 792 (1973) analysis be applied, however, it is clear that Plaintiff has set out a *prima facie* case. Under the ADEA, a *prima facie* case requires Plaintiff to show 1) she is a member of the protected class, 2) she was qualified for the position 3) she was rejected for promotion or selection, and  4) a person not of the protected age group was selected. *Ware v. Howard University, Inc.,* 816 F. Supp. 737 (D.D.C. 1993). [14]  Plaintiff, age 64, was clearly qualified for hire or promotion to a Grants Management Specialist 9/11/12 position, because Defendant admits that she had been performing the job successfully for several years.  She was rejected in favor of younger hires.

Contrary to Defendant's argument, Plaintiff, having demonstrated pretext in the discussion above, has provided ample evidence that she was treated differently, at the division, than younger candidates and selectees.  Plaintiff has rebutted Defendant's  "material facts not in dispute," (see attached *"Defendant's 'Material Facts' Which Plaintiff Disputes"*),  raising issues  which must be resolved in Plaintiff's favor in this context. *Anderson v. Liberty Lobby, Inc.* , 77 U.S. 242, 249-50, 255; 106 S. Ct. 2505, 2511, 2513 (1986).   Defendant's Motion for Summary Judgment must be denied.

――――

[14] Defendant's discussion of a prima facie case in an age discrimination case, at page 13 of his Memorandum, is incorrect.

Respectfully submitted,

HENRICHSEN SIEGEL, PLLC


                                    /s/
_____
                          Josh N. Burton, D.C. Bar No. 473332
                          Eric L. Siegel, D.C. Bar No.  427350
                          Nancy S. Brewer
                          Henrichsen Siegel, P.L.L.C.
                          5301 Wisconsin Avenue, Suite 570
                          Washington, D.C. 20015
                          Telephone: (202) 966-6500
                          Facsimile: (202) 966-7464
                          *Attorneys for Plaintiff*

**PLAINTIFF DISPUTES**
**DEFENDANT'S "*MATERIAL FACTS NOT IN DISPUTE*"**

3.      Contrary to Defendant's Statement, although Plaintiff is a Grants Management Specialist, GS-9, Plaintiff does work at the GS-11 and above. (See Exhibit E, Affidavit of supervisor Lillian Cash)

4,5.   Contrary to Defendant's Statement, nothing in the COTA agreement subjects Plaintiff to any permanent bar to the non-competitive promotions which management has given to every other Grants Management Specialist they have hired.  Language in the COTA implies the contrary, defining the COTA as a "*career development tool*"  to give an employee access to "*careers in different ...job series*." (See ROI: Exhibit 17: "COTA: The Role of the Training Team").  Email from ( ROI: Exhibit 10.10) specifically states that Plaintiff is qualified for other positions in her job series upon satisfactory completion of the prescribed COTA training.

9.      Contrary to Defendant's Statement, management routinely promoted the GS-9's they hire at the earliest opportunity,  eliminating any savings, where they consistently bypass only Plaintiff for promotion.  (ROI: Exhibits 5, 10.10)

11.     Although it was known that Plaintiff hoped for eventual promotion, Plaintiff was eager to be hired as a GS-9 or as a GS-11, as management knew, and the ROI does not indicate otherwise.

12.      Plaintiff was never offered an interview for the ACF-2004-0090 position for which she applied. (Exhibit A)

**PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

1.      Primary decision makers, Carter Walker and Weeden, admit in sworn testimony that the reason they rejected Plaintiff, age 64,  was because "*more than half [ACF] employees are eligible for retirement within five years,"* and because "*we were interested in longevity for the positions,"* and because they wanted "*to attract new members to the workforce."*  (ROI: Exhibits 7.1, 8.1)

2.      Although Director Carter Walker indicated that the division wanted to save money regarding the 2003 non-selection, the division routinely hires GS-9's and promotes them to higher paying levels promptly, so that savings are illusory.  Carter Walker made sure Plaintiff would not be considered, ensuring that she would be classified as a GS-11, although Plaintiff would have glad to have the position at any level.

3.      Plaintiff has been performing as a fully successful Grants Management Specialist GS-9 for four and a half years.  The position involves the same job functions, including GS-11 functions,  which numerous other younger Grants Management Specialists perform, but the younger Grants Management Specialists have all been promoted to GS-11 and higher.

4.      Nothing in the COTA agreement subjects Plaintiff to any permanent bar to the non-competitive promotions which management has given to every other young Grants Management Specialist they have hired.  Language in the COTA implies the contrary, defining the COTA as a "*career development tool*"  to give an employee access to  "*careers in different ...job series*." (See ROI: Exhibit 17: "COTA: The Role of the Training Team").

5.      Email from Human Resources to Plaintiff ( ROI: Exhibit 10.10) specifically states that Plaintiff is qualified for other positions in her job series upon satisfactory completion of the prescribed COTA training.

31

6.      Defendant gives no credible reason why Plaintiff cannot be promoted where younger

Grants Management Specialists are routinely promoted.

7.      No credible reason has been given by Defendant for Plaintiff's non-selection in 2004,

where the allegation that she was offered an interview is false.

## <u>CERTIFICATE OF SERVICE</u>

_____I hereby certify that the foregoing Plaintiff's Response to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment and Motion for Partial Summary Judgment was served electronically on this 19th day of September, 2005 on the following:


Benton G. Peterson
Assistant U.S. Attorney
Judiciary Center Building
Civil Division
555 4th Street, NW
Washington D.C. 20530
Phone: (202) 514-7238
Fax: (202) 514-8780


_____/s/_____
Josh N. Burton