UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

CATHERINE SILVER,                    )
                                     )
        Plaintiff,                   )
                                     )
v.                                   ) Civ. Action No: 1:05CV0968(JDB)
                                     )
                                     )
U.S. DEPARTMENT OF HEALTH            )
AND HUMAN SERVICES,                  )
                                     )
        Defendant.                   )


**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY
JUDGMENT, AND DEFENDANT'S OPPOSITION TO PLAINTIFF'S
CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I.   INTRODUCTION

Plaintiff Catherine Silver asserts that she was discriminated against based on

her age when was not selected for any of three vacancies for the position of Grants

Management Specialist, GS-1101-9/11/12 announced under the Vacancy

Announcement Number ACF-03-008.  Report of Investigation ("ROI"), Exhibit

("Ex.") 9.[1]

On August 19, 2005, Plaintiff filed her Amended Complaint under the Age

Discrimination in Employment Act ("ADEA") to remedy alleged acts of

discrimination by HHS.  See Amended Complaint.  Specifically, Plaintiff asserts that

---

[1] The ROI shows that only two positions were filled.  See ROI, Ex. 9.

she was discriminated against on the basis of her age when the two (2) ACF-03-008

positions and one ACF-2004-0090 were filled by "two younger applicants" and that

Management's restriction, in selection for Grants Management Specialist openings at

the Division, to GS-9 applicants works an impermissible "discriminatory disperate

impact upon older more experienced workers. Id. at ¶ 87.

## II.   ARGUMENT AND AUTHORITIES

## A.  PLAINTIFF FAILED TO EXHAUST ADMINISTRATIVE REMEDIES,

### 1.    Plaintiff's Initiation of Counselor Contact Transpired Later than the Required 45-day Time Limit.

The threshold prerequisite for any administrative claim of discrimination is the

45-day time limit set forth in EEOC regulations, which provides that an aggrieved

person must initiate contact with a Counselor within 45 days of the date of the

matter alleged to be discriminatory, or in the case of a personnel action, within 45

days of the effective date of the action.  29 C.F.R. § 1614.105(a)(1); Koch v.

Donaldson, 260 F.Supp. 2d 86, 89 (D.C. Cir. 2003).  The Court's power to equitably

toll these filing periods may be exercised "only in extraordinary and carefully

circumscribed instances." Mondy v. Sec'y of the Army, 845 F. 2d 1051, 1057 (D.C.

Cir. 1988).

Furthermore, the Supreme Court recently held that a party raising claims of

discrete acts of discrimination must file his or her charge within the applicable time

limits or lose the ability to recover for it.  National Railroad Passenger Corp., v. Morgan, 536 U.S. 101 (2002).  In Morgan, the Court held that "discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.  Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"  Morgan, 536 U.S. at 114.  Thus, a plaintiff may only file a charge to cover discrete acts that transpired during the appropriate time period.

In Plaintiff's sworn Affidavit, she maintains that around March 28, 2003, the closing date for the vacancy, she was told by Ms. Walker, Deputy Director, OA,  that the vacancies for the Grants Management Specialist position had been filled at the GS 9 level.  ROI, Ex. 5.4.  Though the Plaintiff, in her latest filing, asserts that the Defendant comes to this temporal conclusion "[i]llogically", the Defendant is merely citing Plaintiff's own statements from her sworn ROI Affidavit.  Id; See Plaintiff's Response To Defendant's Motion to Dismiss, Or In the Alternative, Motion for Summary Judgment And Plaintiff's Cross Motion for Partial Summary Judgment (Pl. Mem).  Moreover, it is quite possible that Plaintiff would be informed by Agency management, Ms. Walker, that the Agency had decided to fill the vacancy at the GS-9 level, yet, the Agency had not decided on the specific selectees to fill said vacancy at the GS-9 level yet.  As Plaintiff applied at the GS-11 level, clearly she was on notice of her non-selection when she was informed that the Agency had decided to

3

fill the vacancy at the GS-9 level.  ROI, Ex. 5.4; Ex. 10.8.  Again, though the Plaintiff

asserts that there "were no results to know" at this time in regard to the vacancy,

Plaintiff did know that the selectees would be at the GS-9 level, and Plaintiff

specifically offered this information in her sworn Affidavit.  ROI, Ex. 5.4; See Pl's.

Mem.  However, in filing her claim with the EEO office, Plaintiff asserts that she was

discriminated against on July 25, 2003, a date that is approximately three (3) months

after the March 28, 2003 date she identified in her Affidavit. ROI, Ex. 3.  In this

regard, neither the ROI nor the EEO records identified any relevant documents that

support Plaintiff's alleged notice on this later July date.  The record does show that

Plaintiff failed to initiate contact with an EEO counselor until August 19, 2003,

which is approximately five (5) months after she was put on notice of her non-

selection by Ms. Walker in late March 2003.  See Exhibit 1 attached hereto.  Thus,

because Plaintiff failed to initiate contact with an EEO counselor within the required

45 day time period, her claim should be dismissed.

    **2. Plaintiff's Request for a Hearing Was Also Untimely.**

    In addition, on April 13, 2004, when the EEO office sent Plaintiff a copy of

the ROI, the package included a notice that a hearing should be requested within

thirty (30) calendar days of receipt.  See Exhibit 5, attached hereto; 29 C.F.R. §

1614.108(f).[2]  Id.  Thus, Plaintiff's request for a hearing should have been postmarked by May 18, 2004.  However, Plaintiff's request was instead received on June 30, 2004, which is more than one (1) month late.  Id.;  See Speiser v. U.S. Dept. of Health and Human Services, 670 F.Supp. 380, 383 (D. D.C. 1986) (Discharged federal employee's claim of mental illness and circumstances surrounding her five and one-half-month delay in filing administrative complaint alleging discrimination did not warrant equitable tolling of 30-day period for filing complaint.)  Because Plaintiff's request for a hearing was initiated past the required date, Plaintiff's claim should be dismissed for her repeated failure to comply with the EEO guidelines and regulations.  Though the Plaintiff now asserts that this issue "is relevant neither to any issues raised in this case, not to any issues which could be raised", in fact, the issue of filing requirements is central to this case in that the Plaintiff continuously has failed to meet temporal requirements in regard to contacting an EEO counselor and requesting a hearing.  See Pl's. Mem.; ROI, Ex. 5.4 In this regard, Plaintiff's present claim should be dismissed for her repeated pattern of failing to adhere to EEO guidelines and regulations, of which she was aware.  ROI, Ex. 3.; Exhibit 5.

---

[2] Subsequently, the office received the certified-return receipt on April 23, 2004 and the receipt was unsigned and undated.  See Exhibit 5.

**3. Plaintiff's Notice of Intent to File in District Court Was Untimely Filed.**

A federal employee who does not exhaust her administrative remedies may file a judicial complaint alleging age discrimination if she gives the EEOC "not less than thirty days' notice of an intent to file such action" and if such notice is "filed within one hundred and eighty days after the alleged unlawful practice occurred." 29 U.S.C. 633a(d); Thorne v. Cavazos, 744 F. Supp. 348, 350-51 (D.D.C. 1990). Here, Plaintiff filed her Notice of Intent to File in District Court on March 29, 2005. See Exhibit 2. In this regard, while Plaintiff properly gave the EEOC thirty (30) days' notice of her intent to file in district court, the notice she gave was not within the 180 day period following the alleged discriminatory event. Simply, in her Affidavit Plaintiff alleges that she was notified of her non-selection by Ms. Walker around the time of the vacancy's closing date, late March 2003. ROI, Ex. 5. Therefore, Plaintiff's Notice of Intent to File in District Court should have been filed by late September 2003. However, Plaintiff's notice, filed on March 29, 2005, was not filed until approximately twenty-four (24) months after the alleged discriminatory event. As such, because Plaintiff was approximately eighteen (18) months late in filing such a notice and because she failed to abide by temporal guidelines, her claim should be dismissed.

**B.  THE CONTINUING VIOLATION DOCTRINE DOES NOT SAVE PLAINTIFF'S CLAIMS.**

In <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S.101 (2002), the Supreme Court unanimously rejected the applicability of the continuing violation doctrine in circumstances similar to this case.  Specifically, Morgan held that discrete acts of discrimination or retaliation that occur outside the statutory time period are not actionable if time barred, even when they are related to acts alleged in a timely filed suit.  <u>Id</u>. at 105, 113.

In <u>Morgan</u>, the plaintiff alleged that during the time period of his employment he was "consistently harassed and disciplined more harshly than other employees on account of his race."  <u>Id</u>. at 105.  Some of the alleged discriminatory acts occurred within the statutorily prescribed time period, and many took place prior to that time period.  <u>Id</u>.  The Court held that the statute precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory period.  <u>Id</u>. at 105, 113. The Court reasoned that Congress clearly intended to encourage the prompt processing of all charges of employment discrimination by choosing what are obviously short deadlines.  <u>Id</u>. at 109.  Further, the Court, <u>citing</u> <u>Mohasco Corp. v. Silver</u>, 447 U.S. 807, 826 (1980), noted that "strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law."  <u>Id</u>.  Applying the standard set out in Morgan to the instant case, the entirety of this complaint must be dismissed as untimely and

unexhausted.

## C.  PLAINTIFF'S ALLEGATION OF HOSTILE WORK ENVIRONMENT DOES NOT STATE A TIMELY CLAIM.

Morgan also addressed whether untimely complaints could be introduced when a hostile work environment claim is made:  "[h]ostile work environment claims are different in kind from discrete acts."  Id. at 115.  In the case of hostile environment claims "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."  Id. at 117.  In the instant case, Plaintiff has alleged a claim of hostile work environment as part of her complaint.  Amended Compl. ¶ 78.  Not one of the events which allegedly comprise the hostile work environment claim, however, occurred during the 45-day EEO Counselor contact period since the Plaintiff never  actually made a timely EEO contact as required.  See ROI, Ex. 5.4; Ex. 10.8.

## D.  DISPARATE IMPACT UNDER ADEA IS NOT A COGNIZABLE CLAIM.

Plaintiffs claim that Defendant unlawfully subjected Plaintiffs and the putative class to age discrimination in violation of the ADEA,  as amended, 29 U.S.C. § 621 et seq., under a disparate impact theory.  Amended Compl. ¶ 87.  Specifically, Plaintiffs contend that the Defendant's alleged discrimination had a disparate impact on "older more experienced  workers." Id.  Since this Court has held that the disparate impact theory is not cognizable under the ADEA, dismissal of this claim pursuant to Federal

Rules of Civil Procedure, Rule 12(b)(6) is appropriate.  <u>Hyman v. First Union Corp.</u>,

980 F.Supp. 38, 46 (D.D.C. 1997), <u>Evans v. Atwood</u>, 38 F.Supp.2d 25 (D.D.C.

1999); <u>see</u> <u>also</u> <u>Labor Pool v. NLRB</u> , 323 F.3d 1051, 1060 (D.C. Cir. 2003).[3]


## E.    PLAINTIFF FAILS TO ARTICULATE A DISPARATE IMPACT CLAIM.

To the extent that Plaintiff attempts to raise a "disparate impact" theory of

discrimination in Count III, Plaintiff has failed to identify any specific agency policy,

rule or procedure, whose application results in a discriminatory impact on a worker

over 40.  The D.C. Circuit has previously explained the difference between disparate

impact and disparate treatment claims.

Disparate treatment occurs when "the employer simply treats

 some people less favorably than others because of their race, color, religion, sex or

national origin." ... Disparate impact claims, on the other hand, "involve employment

practices that are facially neutral in their treatment of different groups but that in

fact fall more harshly on one group than another and cannot be justified by business

necessity." <u>Anderson v. Zubieta</u>, 180 F.3d 329, 338 (D.C. Cir. 1999) (internal

---

[3]To date, the portion of the ADEA enacted specifically to apply to federal employers, 28 U.S.C. § 633a(a), has been interpreted to provide a cause of action for disparate treatment only, and not for disparate impact. <u>See</u> <u>Hazen</u>, 507 U.S. at 610 ("[W]e have never decided whether a disparate impact theory of liability is available under the ADEA[.]"); <u>cf.</u> <u>Smith v. City of Jackson</u>, 125 S. Ct. 1536, 1540 (2005) (plurality) (holding for the first time that the section of the ADEA that applies only to private, not federal, employers authorizes recovery in disparate impact cases). Plaintiffs offer no basis on which to conclude that the federal sovereign has waived its immunity from such suits, which must be express, not implied and inferred through interpretation. <u>See</u> <u>Irwin v. Dep't of Veterans Affairs</u>, 498 U.S. 89, 95 (1990).

citation omitted).

The record, however, is devoid of evidence of the quality or quantity necessary to support a disparate impact theory of discrimination.  The substance of Plaintiff's allegation is that Defendant's restriction for General Management Specialist openings to GS-9 applicants, an act neutral on its face, had a significant adverse effect on 'older more experienced workers.'

There is no evidence that the restriction itself was a policy or practice. The restriction was an isolated act that, with evidence of discriminatory motive, could be the basis for a disparate treatment claim, rather than a claim that an otherwise facially-neutral agency policy has a disparate effect on workers over 40 years of age.

Moreover, Plaintiff points to no evidence of any attempt by Defendant to keep workers over 40 years of age from being selected due to the temporary changing of restrictions.  The same restriction was applied to all applicants, regardless of age, who were eligible candidates.   The record clearly shows that the selectees were chosen based on their application, experience, and interview.  Defendant should be granted summary judgment on Count III and it should be dismissed.

## F.  PLAINTIFF FAILS TO MEET HER BURDENS OF PROOF WITH REGARD TO HER CLAIMS OF AGE DISCRIMINATION

Plaintiff cannot satisfy her burden under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Even if Plaintiff establishes a prima facie claim of age discrimination for Count I (Discrimination based on Age) and Count II (Disparate Treatment based on Age), Defendant through declarations and exhibits has established legitimate non-discriminatory reasons for its actions.  Plaintiff meanwhile has offered no evidence of pretext, merely speculation and conclusion.

Plaintiff  has failed to meet her burden to support her allegation that she was not determined to be 'best qualified' based upon age discrimination.  The evidentiary framework developed in the context of Title VII cases, as set forth in McDonnell Douglas, supra, has been found to be applicable to proceedings under the ADEA. Elwood v. Pina, 815 F.2d 173, 176 (1st Cir. 1987); Coburn v. Pan American World Airways, Inc., 711 F.2d 339, 342-3 (D.C. Cir. 1983) cert. denied 464 U.S. 994 (1983); Loeb v. Textron, Inc., 600 F.2d 1003, 1014-16 (1st Cir. 1979).  With respect to her allegation of age discrimination, the Plaintiff must also demonstrate that age was a causative factor in the adverse employment action in the sense that, but for the employer's motive to discriminate on the basis of age, the adverse employment action would not have occurred.  Loeb v. Textron, Inc., 600 F.2d 1003 (1st Cir. 1979).

Defendant has articulated legitimate non-discriminatory reasons for its actions and Plaintiff offers no evidence to support a finding that Defendant 's articulated

non-discriminatory reasons were mere pretext to cover for intentional age discrimination.  Again, there is no genuine issue of material fact with regard to the regularity of Defendant's rating and ranking of the applications of Plaintiff and the selectees, and there is no evidence of pretext.  Therefore, even assuming jurisdiction, Plaintiff's claim of age discrimination must fail, and Defendant should be granted summary judgment on Counts I and II and they should be dismissed.

**1.  Plaintiff Has Failed To Establish a *Prima Facie* Case of Age Discrimination.**

Plaintiff does not present any evidence that her age is the 'but-for' reason for her non-promotion, and as such, Plaintiff fails to meet her burden of proof.  See Ware v. Howard University, Inc., 816 F. Supp. 737, 750 (D.D.C. 1993)."Clarifying the standards for liability" in a disparate treatment case under the ADEA, Hazen Paper Co. v. Biggins, 507 U.S. 604, 606 (1993), the Supreme Court concluded that "there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other  than the employee's age." Id. at 609. It is the very essence of age discrimination for an older employee to be fired because the employer believes that productivity and competence decline with old age. . . . Congress' promulgation of the ADEA was prompted by its concern that older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes. . . . Thus, the ADEA commands that employers are to evaluate older workers on their merits and not their age. The employer cannot rely on age as a proxy

12

for an employee's characteristics, such as productivity, but must instead

focus on those factors directly. Id. at 610. When an employer's decision is wholly

motivated by factors other than age, the ADEA is not violated even if the

motivating factor is correlated with age. Id. at 611-12. "The law requires the employer

to ignore an employee's age . . .; it does not specify further characteristics that an

employer must also ignore." Id. at 612 (emphasis in the original). A plaintiff may

offer proof of his employer's discriminatory intent either by direct or circumstantial

evidence. See Dunaway v. Int'l Bhd. of Teamsters, 310 F.3d 758, 763 (D.C. Cir.

2002). In the absence of direct evidence, a plaintiff may advance a disparate

treatment claim using the burden shifting framework adopted in McDonnell Douglas

Corp. v. Green, 411 U.S. 792 (1973), the first step of which is presenting a prima

facie case.

     Plaintiffs have not offered any evidence that supports a reasonable inference

that the Defendant made its decision based on inaccurate stereotypical presumptions

of reduced  productivity and competence of an older workforce.  In an effort

to bolster their argument that age animus played at least some part in the

Defendant's decision, Plaintiff highlight, completely out of context, three statements,

two made by Ms. Carol Walker and one made by Ms. Weeden.  Plaintiff states that

when asked why Plaintiff was not selected for the posting, Ms. Walker replied: "The

demographics of ACF indicate that more than half of its employees are eligible for

retirement within five years" and that she "wanted to attract new members to the

workforce" Pl.'s Mem. at 20-21. Plaintiff further states that Ms. Weeden, Director of

Discretionary Grants, when asked why Plaintiff was not selected in 2003, she

expressed "We started interviews at the GS-9 level, because the number of candidates

were more numerous and we were interested in longevity for the positions." <u>Id</u>.   In

fact, neither Ms. Weeden's nor Walker's statement  yield the age-discriminatory

interpretation urged by Plaintiff.  What the Acting Director of the Office of Grants

Management, Carol Carter Walker, said, and what Plaintiff left out is that:

> "...Further, ACF has had a **very strained administrative budget**, most of
> which is used to pay salaries and benefits.  Accordingly, ACF's **recent strategy**
> has been to recruit staff at the lowest possible grade level to provide career
> opportunities that would attract new members **to the workforce** and to use its
> limited administrative budget wisely." ROI, Ex. 8. (emphasis added).

Ms. Carol Walker's statements cannot be read to say she wanted new members

of the workforce, but instead only talked of adding new members (of any age) to the

Agency's workforce.  Additionally, Ms. Weeden's statement, in context, simply

indicates why the agency used GS-9 as the initial cut-off point.  It was not the

explanation for why "Plaintiff was not selected in 2003" as Plaintiff states. (Pl. Mem.

at 21).  On their face, the statements only identify (i) excessive costs associated with

salaries and (ii) the probability of attrition of large numbers of experienced personnel

in the foreseeable future.  Nothing in these statements reveal inaccurate and

denigrating generalizations about age.  Plaintiff's attempts to interpret these

14

statement as references reflecting age discrimination are unreasonably strained and

not capable of establishing a prima facie case of discriminatory intent.  Plaintiff

mistakenly conflates mere correlation with age with discriminatory animus based on

age.  Budget constraints concerning salaries and workforce demographics are often

correlated with age, but the Supreme Court has determined that an employer

motivated by a factor that correlates with age does not, without more, violate the

ADEA. <u>Hazen</u>, 507 U.S. at 612-13.[4]

In regard to the 2003 vacancy, which was accepted for investigation,[5] the

Agency sought to fill the 2003 vacancy at the lowest GS level as possible; when the

Agency deemed applicants at the GS-9 level as appropriate individuals, the interview

process halted and did not progress to the GS-11 or GS-12 level.  ROI, Ex. 8.; Ex. 3.

The Agency only interviewed candidates whom applied at the GS-9 level.  Exhibit 6;

---

[4]"Clarifying the standards for liability" in a disparate treatment case under the ADEA, <u>Hazen</u> <u>at</u> 606 (1993), the Supreme Court concluded that "there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age." <u>Id</u>. at 609. . . . Thus, the ADEA commands that employers are to evaluate older workers on their merits and not their age. The employer cannot rely on age as a proxy for an employee's characteristics, such as productivity, but must instead focus on those factors directly.  <u>Id</u>. at 610. When an employer's decision is wholly motivated by factors other than age, the ADEA is not violated even if the motivating factor is correlated with age. <u>Id</u>. at 611-12. "The law requires the employer to ignore an employee's age . . .; it does not specify further characteristics that an employer must also ignore." <u>Id</u>. at 612 (emphasis in the original).

[5]**Is it important to note in the discussion of Plaintiff's contention that "[i]n about May, 2002" she claims she was discriminated against based on her non-selection for several positions, Plaintiff's non-selection for a Vacancy Announcement Number ACF-02-037 which she discusses in her most recent filing was not accepted for investigation in the ROI.  <u>See</u> ROI, Ex. 3; <u>See also</u> Pl's Mem.  As such, Plaintiff's discussion in this regard, discussions which were not included for investigation in the administrative process, are improperly presented in her latest Motion for her failure to exhaust administrative remedies.  ROI, Ex. 3.**

See Exhibit 7, Interview Documents, attached to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment.  Thus, Plaintiff still has failed to show that age was the reason that she was not selected for the position of Grants Management Specialist, GS-1101-9/11/12 announced under Vacancy Announcement Number ACF-03-008, as she so asserts.

     2. **The Agency Articulated Nondiscriminatory Reasons for Its Actions.**

     In her most recent filing, Plaintiff purports to shift her argument from asserting that the COTA agreement purported to indicate advancement potential to the GS-11 level, to the fact that Plaintiff's COTA agreement differed from the COTA agreements of her co-workers, and as such, "was specially designed as some kind of dead-end variant of the position held by numerous other GMS employees at the Division."  See Plf's Mem.  However, at the time that Plaintiff signed her COTA agreement, she signed it of her own free will and in the Plaintiff's own words, "[i]nserting provisions into the COTA agreement which are not there" is suspect, though suspect on the part of Plaintiff, not the Defendant.  Id.  Moreover, Plaintiff unsuccessfully attempts to now shift her argument by comparing her COTA agreement to other COTA agreements, for each such agreement is a unique agreement formulated to "train employees for careers in different occupations and/or job series."  Is it important to note in the discussion of Plaintiff's contention that "[i]n about May, 2002" she claims she was discriminated against based on her non-selection for several positions,

16

Plaintiff's non-selection for a Vacancy Announcement Number ACF-02-037 which she

discusses in her most recent filing was not accepted for investigation in the ROI.  See

ROI, Ex. 3; See also Defendant's Motion to Dismiss, Or In the Alternative, Motion

for Summary at 15-16.  As such, Plaintiff's discussion in this regard, discussions which

were not included for investigation in the administrative process, are improperly

presented in her latest Motion for her failure to exhaust administrative remedies.

ROI, Ex. 3. ROI, Ex. 17.6. (Emphasis added).

        In regard to Vacancy ACF-03-008, ACF's recent hiring strategy has been to

recruit staff at the lowest possible grade level to provide career opportunities that

would attract new members to the workforce and to use its limited budget wisely.

ROI, Ex. 8.  In this case, the decision was made to recruit at all grade levels, but to

interview first all of the GS-9 candidates and to move to the GS-11 and GS-12 levels

for consideration only if there were not enough qualified candidates for selection at

the GS-9 level.  Id.; See Exhibit 6.  In fact, when candidates who had applied for more

than one level for the position were called to be scheduled for an interview, they were

told that ACF was only interviewing at the GS-9 level and that they should schedule

their interview only if they would accept the position at the GS-9 level, even if they

were eligible for consideration at the higher grade level.  ROI, Ex. 8; See ROI, Ex. 13

at 5.

        Simply, because management interviewed, evaluated and selected well-qualified

17

applicants at the GS-9 level, neither Plaintiff nor any other candidate on the GS-11 or

GS-12 selection certificate was considered.  ROI, Ex. 8; Ex. 13; <u>See</u> Exhibit 6.   In this

regard, though the Plaintiff, in her latest filing, asserts that "[n]othing on Plaintiff's

application in the ROI indicates that she asked only to be considered at the GS-11

level", the record shows, however, that Plaintiff, on her own,  limited her answers to

the Grade 11 question on her education and experiences.  <u>See</u> ROI, Ex. 10.8.

Furthermore, even if Plaintiff would have applied at the Grade 9 level, when the panel

interviewed candidates at the GS-9 level, it found selectees with "superior educational

credentials and experience at the state and/or federal levels as grants management

specialists."  <u>Id</u>.; <u>See</u> Exhibit 8, Interview Notes for Ms. Richards and Ms. Watzman,

attached to Defendant's Motion to Dismiss or in the Alternative for Summary

Judgment.  Unlike Plaintiff who noted no college education in her application, the two

selectees, Jennifer Richards (37 yrs. old) and Beth Watzman (43 yrs. old) both noted

that they had degrees in higher education.  ROI, Ex. 10; Ex. 11; Ex. 12; Investigator's

Statement at 7.

    In her Amended Complaint, Plaintiff also identifies a position for which she

applied "[i]n about April, 2004."  The apparent Vacancy Announcement Number to

which Plaintiff likely alludes is No. ACF-2004-0090, Grants Management Specialist,

GS 9/11/12.  <u>See</u> Exhibit 6.  Though Plaintiff was out of the office on leave during this

time, in an act of good faith, Ms. Walker informed Plaintiff of the announcement via

phone and even had the vacancy announcement sent to her via Federal Express, on

April 23, 2004.  See Exhibit 9 attached to Defendant's Motion to Dismiss or in the

Alternative for Summary Judgment.  Thereafter, Plaintiff was invited to come for an

interview, but declined to do so.[6]  Id.  As such, the panel considered her application

based on the records on hand.  Id.  In evaluating applicants, the panel also conducted

interviews for this 2004 position, rated applicants, and selected two (2) individuals,

Mr. Darryl Ingram and Mr. David Kadan, both of whom personally interviewed for

the vacancy.  See Exhibit 10, Interview Notes and Ratings; See also Exhibit 6 attached

to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment.  All

standard procedures were followed in regard to filling this vacancy.  Exhibit 6 attached

to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment.

Though Plaintiff attempts to amend her complaint to include this 2004 non-

selection, this claim is not properly presented.  For only those discrimination claims

stated in the initial charge, those reasonably related to the original complaint, and

those developed by reasonable investigation of the original complaint may be

maintained in a subsequent Title VII lawsuit.  Evans v. Technologies Applications &

Service Company, 80 F.3d 954, 963 (4th Cir. 1996).  Though Plaintiff asserts that this

2004 non-selection is like or related to the 2003 non-selection, the facts in this case

---

[6] Though Plaintiff, in her most recent Motion, states that "no affiant with personal knowledge has testified"
that she was offered an interview for the 2004 vacancy, the Agency has provided such support and refers Plaintiff to
Exhibit 6, Declaration of Daphne Weeden, and Exhibit 9, Emails of Carol Carter Walker attached to Defendant's
Motion to Dismiss or in the Alternative for Summary Judgment.

show that Plaintiff in fact, chose not to interview for the 2004 position and in doing so, hindered her overall application. See Exhibit 9 attached to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment. In this regard, Plaintiff made the decision not to interview for the 2004 vacancy, and this action which negatively impacted her overall application, was not the action or decision of the Agency, the party whom Plaintiff incorrectly blames for her non-selection. Id.

Moreover, in regard to being unlike and unrelated to Plaintiff's 2003 non-selection, the 2004 vacancy is also time barred from this claim. In her most recent Motion, Plaintiff fails to identify a specific date on which she learned of the selections for Vacancy Number ACF-2004-0009. However, the closing date for the vacancy was May 3, 2004. See Exhibit 9 attached to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment. This closing date falls just after the date that the ROI was issued for the 2003 non-selection which was April 13, 2004. Id.; See Exhibit 5 attached to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment. In this regard, Plaintiff was apparently aware of her non-selection for Vacancy Number ACF-2004-0009 at the time that her case was still active before the EEOC and before she withdrew her request for an EEOC hearing on May 2, 2005. See Exhibit 3 attached to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment. Yet, while Plaintiff's EEOC case was active, and while she apparently had knowledge of her non-selection for the 2004 vacancy, Plaintiff failed

20

to amend her complaint properly in adherence to EEOC guidelines.  (See Woodard v. Lehman, 717 F.2d 909, 913 (4th Cir. 1983) (where two federal employees stated simply that discrimination against them within 30 days prior to filing employment discrimination complaint was no based on any incident or set of incidents, but rather was based on continuing discrimination against them, and employees refused to supply any specific information or details of discriminatory actions suffered by them within 30 days of their charges, employees prevented the agency from investigating the charges and consequently failed to exhaust administrative remedies, a jurisdictional prerequisite to maintenance of judicial action.  Civil Rights Act of 1964, § 717, 42 U.S.C.A. § 2000e-16. ("Title VII"))  In fact, the Supreme Court in American Tobacco Co. v. Patterson maintained that "[a] discriminatory act which is not the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute [Title VII] was passed."  American Tobacco, 456 U.S. 63, 75, 102 S. Ct. 1534, 1540 (1982); cited in Woodard, 717 F.2d at 915.  Nevertheless, Plaintiff raises the 2004 non-selection now, more than one year after the closing of said announcement, in an effort to distract the court from her only properly raised claim, that of her 2003 non-selection.

In any event, the selectees were superior to Plaintiff, and Plaintiff has made not made a showing to the contrary.  See Defendant's Motion to Dismiss or in the Alternative for Summary Judgment at 19-20.

21

**3.    Plaintiff Has Not Shown Any Evidence of Pretext**.

Assuming that Plaintiff could establish a *prima facie* case of discrimination on any ground, she is still unable to show that the Agency's reasons for not selecting her for any Vacancy Announcement at issue  was a pretext for discrimination.  As noted above, ACF management sought to fill the said positions in the GS-9 level and alerted all applicants who applied for a different level for the position of this fact.  ROI, Ex. 8.

Plaintiff offers no evidence to rebut the Agency's reasons.[7]  She simply disagrees with the Affidavit's of Agency witnesses.  The non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts.  Matsushita, 475 U.S. at 596.  Here, Plaintiff has failed to make the required showing.

**IV.    CONCLUSION**

All claims made by Plaintiff in her Amended Complaint are  appropriate for dismissal or for summary judgment.  For Counts I and II (disparate treatment based on age), there is no genuine issue of material fact with regard to Defendant's non-discriminatory rating and ranking of the applications of Plaintiff and the selectees, and there is no evidence of pretext to rebut Defendant's articulated legitimate non-discriminatory reasons.  Consequently, Defendant should be granted summary judgment on Counts I and II. On Count III (Disparate impact based on

---

[7] During the ROI investigation, Plaintiff was given the opportunity to issue a Rebuttal Statement and given an extension of time, but chose not to respond.  ROI, Ex. 6.

22

age),this Circuit does not recognize such a claim and furthermore, Plaintiff has failed to state a claim, therefore Count III should also be dismissed.

Wherefore, Defendant submits that Plaintiff's Amended Complaint should be dismissed with prejudice and that the Court deny Plaintiff's cross-motion for summary judgment and enter judgment in favor of defendant.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney


_____
R. CRAIG  LAWRENCE, D.C. Bar #171538
Assistant United States Attorney


_____
BENTON G. PETERSON, WI. Bar #1029849
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. B Civil Division
Washington, D.C.  20530
(202) 514-7238;(202) 514-8780 (Facsimile) _____
_____ Benton.Peterson@usdoj.gov


Of Counsel:

23

ALEX M. AZAR II
General Counsel
JEFFREY DAVIS
Associate General Counsel
ALEXANDRA MEIGHAN

Agency Representative
U.S. Department of Health and Human Services