**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**CATHERINE SILVER,**

      **Plaintiff,**

      **v.**

**MICHAEL O. LEAVITT, SECRETARY OF THE U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES,**

      **Defendant.**

**Civil Action No.  05-0968 (JDB)**

---

## MEMORANDUM OPINION

Plaintiff Catherine Silver brings this action against defendant Michael O. Leavitt, the current Secretary of the U.S. Department of Health & Human Services ("HHS"), seeking injunctive, declaratory and monetary relief for alleged violations of the Age Discrimination in Employment Act of 1967, 29 U.S.C. 621 et seq. ("ADEA").  Defendant has filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), also seeking summary judgment under Fed. R. Civ. P. 56(c) in the alternative.  Plaintiff has cross-moved for partial summary judgment. For the reasons that follow, the Court will grant defendant's motion to dismiss in part, grant defendant's motion for summary judgment in part, and deny plaintiff's cross-motion.

## BACKGROUND

From 1998 to 2001, plaintiff, currently a sixty-four-year-old female, was employed by HHS in the Administration for Children and Families ("ACF") as a Program Analyst.[1]  In 2000,

---

[1]Plaintiff began her career with HHS as a secretary in 1979.

plaintiff was approached by Maiso Bryant, the then-Director of the Division of Discretionary Grants at ACF, and encouraged to participate in a Career Opportunities Training Program ("COTA") in order to attain the level of skill required for employment as a Grants Management Specialist.  See Amend. Compl. at 3 ¶¶ 12, 14, 15.  Grants Management Specialists are rated at the GS-9, GS-11, GS-12, GS-13, and GS-14 levels.  Id. at ¶ 13.  In February 2001, plaintiff accepted an offer of employment as a Grants Management Specialist COTA Trainee at the GS-9 level, with the hope of attaining additional qualifications for eventual employment at the GS-11 level.  Id. at ¶ 15.  By the time plaintiff completed the COTA program in February 2002, she had been rated "fully successful" as a Grants Management Specialist at the GS-9 level for one year.  Id. at 3-4 ¶ 16.  Three months later, in May 2002, plaintiff applied for a Grants Management Specialist position at the GS-11 level, responding to vacancy announcement number ACF-02-037.  Id. at 4 ¶ 18.  She was not selected for the position and was told that she required another fifty-two weeks of employment at the GS-9 level before she would be eligible for the GS-11 position.  See id. at 4 ¶ 20.  The record reflects, however, that there was a misunderstanding due to an administrative error in plaintiff's personnel file, which did not reflect her completion of the COTA program.  See id. at 4 ¶¶ 21-23.  The error was finally corrected in May 2003.  Id. at 4 ¶ 23.  In the interim, however, vacancy announcement number ACF-02-037 was filled by younger applicants.  Id. at 4 ¶ 24.

Around the time that she had been rejected for the ACF-02-037 position, plaintiff was also informed that her employment position (Grants Management Specialist COTA Trainee at the GS-9 level) was not a "career ladder position," and she therefore was not eligible for non-competitive promotion to higher levels of the Grants Management Specialist position.  Amend. Compl. at 5 ¶

28.  Plaintiff claims that defendant's failure to promote her to higher levels of the Grants Management Specialist position on a non-competitive basis constitutes discrimination because younger Grants Management Specialists have been hired and automatically promoted -- non-competitively -- to the GS-11 level or above since 2000.  Amend. Compl. at 5 ¶ 31.  Defendant maintains that plaintiff's ineligibility for non-competitive promotion was not based upon her age, but rather upon the fact that her acceptance to the COTA program was non-competitive.  As a result, the COTA position cannot provide the basis for a non-competitive promotion to higher levels of the position.  See Def.'s Stmt. of Facts as to Which There is No Genuine Issue ("Def.'s Stmt.") at 2; see also EEO Report of Investigation ("ROI") Exh. 8; EEO ROI Exh. 7; EEO ROI Exh. 17 at 4.  The terms of the COTA agreement that plaintiff signed represent only that the program will train her for the target position and help her to attain the skills required to perform that position successfully.  See EEO ROI Exh. 17 at 1-3, 6-7.  The COTA agreement does not promise non-competitive or automatic promotion upon completion of the program.  See id. Furthermore, the COTA agreement identifies plaintiff's target position as "Grants Management Specialist (COTA Trainee)", not "Grants Management Specialist GS-11."  See EEO ROI Exh. 17.

In 2003, plaintiff applied for a second position, set out in vacancy announcement ACF-03-008.  Amend. Compl. at 5 ¶¶ 34, 35.  This vacancy announcement described an opening for a Grants Management Specialist at the GS-9/11/12 level, and was posted from February 26, 2003 until March 28, 2003.  Id. at 5 ¶ 34.  Basic qualifications for the position were described as follows:  "a master's or equivalent degree, or two years of higher education leading to such a degree or LL.B. or J.D., if related, or one year of specialized experience in the field or related to the field that equipped the applicant with the necessary knowledge, skills and abilities to perform

the position successfully." See Def.'s Stmt. at 3; see also EEO ROI Exh. 9 at 2.  Although

plaintiff now claims that she would have accepted the position at the GS-9 level, she actually

applied for the position only at the GS-11 level.  See Def.'s Stmt. at 3-4; Amend. Compl. at 5 ¶ 35.

Plaintiff's application did not reflect any higher education, noting only her COTA training and a

few occasional skills-training courses.  See Def.'s Stmt. at 3; see also EEO ROI Exh. 10.

After the vacancy announcement was posted, defendant decided only to interview those

individuals who had applied at the GS-9 level, a restriction of which plaintiff claims she was

unaware.  Amend. Compl. at 5 ¶ 36.  Carol Carter Walker, Acting Director of the Office of Grants

Management and Deputy Director of the Office of Administration, has stated that the GS-9

interview policy was based upon the fact that "the demographics of ACF indicate that more than

half of its employees are eligible for retirement within five years," and the agency has a strained

administrative budget that is largely consumed by the cost of salary and benefits.  EEO ROI Exh.

8.  According to Carter Walker, management sought to maximize the available funding by

attracting newer applicants to the laborforce.  EEO ROI Exh. 8.  Daphne Weeden, the Lead Grants

Management Specialist at the time (who collected the list of eligible applicants for the vacancy

announcement, convened the interview panels, and directed the selection process) has stated that

interviews were started at the GS-9 level because the candidate pool was broader and management

was interested in hiring employees who could provide stability and longevity.  See EEO ROI

Exh. 7.  The strategy was thus to attempt first to fill the vacancies at the lowest possible level

(GS-9), interviewing at the higher levels only if the positions remained vacant.  See Def.'s Stmt. at

3; see also EEO ROI Exh. 8.  The GS-9 applicants who were selected for interviews were told that

the position was, at that time, available only at the GS-9 level, and that they should not interview

for the position unless they intended to accept as a GS-9.  Def.'s Stmt. at 3; EEO ROI Exh. 8.

Ultimately, the vacancies announced in ACF-03-008 were successfully filled at the GS-9 level by two GS-9 candidates, Ms. Beth Waltzmann (age 42) and Ms. Jennifer Richards (age 36).  Amend. Compl. at 6 ¶ 43.  Neither plaintiff nor any other candidate who applied solely at the GS-11 level was chosen for an interview.  Plaintiff claims that she learned that she had not been sselected for the position on July 25, 2003, through a conversation with a fellow employee; defendant argues that plaintiff learned of her rejection in late March 2003, when the vacancy announcement closed.  See Def.'s Mot. Summ. J. at 4 & n.2.  Plaintiff contacted the agency's Office of Equal Opportunity and Civil Rights ("EEO office") on August 19, 2003, and filed a formal charge of age discrimination on November 19, 2003.  Amend. Compl. at 2 ¶ 6.  The agency accepted for investigation plaintiff's complaint of discrimination (articulated as "non-selection for competitive promotion") in connection with the 2003 vacancy announcement.  See EEO ROI Exh. 3.  No other claims of discrimination are mentioned in the letter of acceptance, the Report of Investigation ("ROI") issued on April 13, 2004, or plaintiff's notice of intent to sue.  Following the issuance of the ROI, plaintiff sought a hearing, but later withdrew that request on May 2, 2005, after filing a Notice of Intent to Sue in the United States District Court for the District of Columbia on March 29, 2005.  See Def.'s Mot. Summ. J. at 5.  The EEO administrative judge dismissed the case on May 13, 2005, and no final agency decision has been issued to date.  See id.; see also Amend. Compl. at 2 ¶ 6.

Plaintiff asserts that she was the best qualified candidate for the 2003 position, because she had been performing the duties of a Grants Management Specialist at the GS-9 level with reviews of "fully successful" for approximately two years, frequently handling the workload of a GS-11.

Amend. Compl. at 5 ¶¶ 35, 42.   Defendant counters that although plaintiff met the basic

qualifications listed on the vacancy announcement, Ms. Waltzmann and Ms. Richards were better

candidates.  Both Ms. Waltzmann and Ms. Richards possessed superior higher education

credentials, which plaintiff wholly lacks.  Def.'s Response to Pl.'s Stmt. of Material Facts at 1 ¶ 1.

Moreover, plaintiff had previously been deemed a poor interviewer, see EEO ROI Exh. 7, and

plaintiff's 2002 Performance Management Plan stated that she needed "to demonstrate more

confidence in working independently and not depend on co-workers but instead to get her

guidance from the Grants Management Officers," EEO ROI Exh. 16.  Plaintiff asserts that

Richards and Waltzman were both subsequently promoted non-competitively to the GS-11 level

within a short time and required extensive training when initially hired.  Amend. Compl. at 6 ¶ 43,

8 ¶¶ 61, 62.

        In April of 2004, plaintiff was on leave caring for her terminally ill husband.  Amend.

Compl. at 8 ¶ 67.  Carter Walker proactively contacted plaintiff and solicited her application

regarding vacancy announcement ACF-04-0090, a GS-11 Grants Management Specialist position.

See id; see also Def.'s Stmt. at 4.  Plaintiff was ultimately selected for an interview, but declined.

Def.'s Stmt. at 4.  On June 23, 2004, plaintiff learned that she had not been selected for the

position.  Amend. Compl. at 8 ¶ 68.  The two candidates chosen to fill the vacancies were Mr.

Darryl Ingram and Mr. David Kadan, both of whom are significantly younger than plaintiff, but

personally interviewed for the position and, according to defendant, "were superior candidates."

Def.'s Response to Pl.'s Stmt. of Material Facts at 4 ¶ 7.  Plaintiff claims that she contacted the

agency's EEO counselor in relation to this third vacancy announcement, but the office took no

action.  Amend. Compl. at 9 ¶ 69.  Plaintiff never identifies the date on which she allegedly

attempted to contact the EEO counselor regarding the 2004 vacancy announcement. Because the circumstances surrounding the 2004 vacancy announcement arose after the ROI was issued, no claim of discrimination in connection with the 2004 vacancy announcement was presented or investigated at the administrative level.

On May 16, 2005, plaintiff filed this action, amending her complaint on August 19, 2005. Count I alleges that defendant has violated the ADEA by treating plaintiff less favorably than younger candidates when defendant decided not to hire plaintiff as a GS-11 Grants Management Specialist in connection with: (1) the 2002 application for non-competitive promotion based upon plaintiff's COTA training; (2) the 2003 vacancy announcement; and (3) the 2004 vacancy announcement. See Amend. Compl. at 9-10. Count II asserts that defendant treated plaintiff less favorably than younger employees because plaintiff repeatedly requested and was denied promotions from 2002 onward, while younger employees were consistently promoted. See id. at 10. Count III challenges the GS-9 interview policy employed by defendant in connection with the 2003 vacancy announcement as violative of the ADEA because it results in an adverse impact upon applicants who, like plaintiff, are over the age of forty. See id. at 11. All three counts also allege that defendant has engaged in "continuous unfair treatment" that has subjected plaintiff to a hostile work environment. See id. at 9-11.

## APPLICABLE LEGAL STANDARDS

I.      *Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1)*

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Haynesworth

v. Miller, 820 F.2d 1245, 1254 (D.C. Cir. 1987).  A complaint need only contain " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley, 355 U.S. at 47.  "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

Under Rules 12(b)(6) and 12(b)(1), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor.  See Leatherman v. Tarrant Cty. Narcotics and Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979); see also Sierra Club v. Mainella, 2005 WL 3276264 at *5 (D.D.C. Sep. 1, 2005) (unpublished disposition).  The plaintiff must be given every favorable inference that may be drawn from the allegations of fact.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).  Conclusory legal and factual allegations, however, need not be considered by the court.  Domen v. Nat'l Rehab. Hosp., 925 F. Supp. 830, 837 (D.D.C. 1996) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

II.    *Summary Judgment Pursuant to Fed. R. Civ. P. 56(c)*

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial responsibility of demonstrating that no genuine dispute of material fact exists.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party may successfully support its motion by

"informing the district court of the basis for its motion, and identifying those portions of 'the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

Id. (quoting Fed. R. Civ. P. 56(c)).

To determine whether there is a genuine issue of material fact sufficient to preclude

summary judgment, the court must regard the non-moving party's statements as true, and accept

all evidence and make all inferences in the non-moving party's favor. See Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 255 (1986). Nevertheless, a non-moving party must establish more

than the "mere existence of a scintilla of evidence" in support of its position, id. at 252, although

the moving party need only point to the absence of evidence proffered by the non-moving party,

Celotex, 477 U.S. at 322. Summary judgment is appropriate if the non-moving party fails to offer

"evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477

U.S. at 252; see also Holbrook v. Reno, 196 F.3d 255, 259-60 (D.C. Cir. 1999).

III.    *Substantive Legal Framework*

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), establishes the burden of proof

for Title VII employment discrimination cases. The familiar McDonnell Douglas framework has

been extended to govern ADEA claims in which the plaintiff lacks direct evidence of

discrimination. See Carter v. George Washington Univ., 387 F.3d 872, 878 (D.C. Cir. 2004)

(citing Hall v. Giant Food, Inc., 175 F.3d 1074, 1077 (D.C. Cir. 1999)); see also O'Connor v.

Consol. Coin Caterers Corp., 517 U.S. 308 (1996). Under this framework, the plaintiff has the

burden of establishing a prima facie case of discrimination or retaliation by a preponderance of the

evidence. McDonnell Douglas, 411 U.S. at 802; see also Tex. Dep't of Cmty. Affairs v. Burdine,

450 U.S. 248, 252-53 (1981).  If the plaintiff establishes a prima facie case, the burden then shifts

to the employer to articulate a legitimate, nondiscriminatory or non-retaliatory reason for its

actions.  McDonnell Douglas, 411 U.S. at 802.  The employer's burden, however, is merely one of

production.  Burdine, 450 U.S. at 254-55.  The employer "need not persuade the court that it was

actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a

genuine issue of fact as to whether it discriminated against the plaintiff."  Id.

      If the employer successfully articulates a nondiscriminatory or non-retaliatory basis for its

actions, the burden shifts back to the plaintiff to show that the employer's stated reason was a

pretext for discrimination or retaliation.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S.

133, 143 (2000).  The plaintiff may attempt to establish that she was the victim of intentional

discrimination "by showing that the employer's proffered explanation is unworthy of credence."

Id. (quoting Burdine, 450 U.S. at 256).  But "[p]roof that the defendant's explanation is unworthy

of credence is simply one form of circumstantial evidence that is probative of intentional

discrimination."  Id. at 147.  Thus, the trier of fact may also "consider the evidence establishing

the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of

whether the defendant's explanation is pretextual.'"  Id.  (quoting Burdine, 450 U.S. at 255 n.10).

As the Reeves Court explained:

>      Whether judgment as a matter of law is appropriate in any particular
> case will depend on a number of factors . . . includ[ing] the strength
> of the plaintiff's prima facie case, the probative value of the proof
> that the employer's explanation is false, and any other evidence that
> supports the employer's case and that properly may be considered on
> a motion for judgment as a matter of law.

Id. at 148-49.

      Thus, if the employer meets its burden of proffering a nondiscriminatory impetus for its

actions, then trial or summary judgment proceedings will center on whether a jury could infer

discrimination from the following mix of evidence:  (1) the plaintiff's prima facie case; (2) any

evidence presented by the plaintiff to undercut the employer's proffered non-discriminatory

impetus; (3) any other evidence of discrimination available to the plaintiff, including independent

evidence of the employer's discriminatory statements or attitudes; and (4) any contrary evidence

available to the employer, including evidence that the employer has a pattern of taking seriously

its responsibilities of equal opportunity employment. Aka v. Washington Hosp. Ctr., 156 F.3d

1284, 1289 (D.C. Cir. 1998) (en banc); see also Waterhouse v. District of Columbia, 298 F.3d

989, 992-93 (D.C. Cir. 2002).

Although the "intermediate evidentiary burdens shift back and forth" under the McDonnell

Douglas framework, "'[t]he ultimate burden of persuading the trier of fact that the defendant

intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Reeves,

530 U.S. at 143 (quoting Burdine, 450 U.S. at 253).  Once the defendant has proffered a legitimate

nondiscriminatory reason for its action, the question then becomes whether that proffered reason

is a pretext for discrimination.  At this point, the McDonnell Douglas burden-shifting framework

is dissolved.  The sole remaining issue is discrimination vel non, and "to survive summary

judgment the plaintiff must show that a reasonable jury could conclude from all of the evidence

that the adverse employment decision was made for a discriminatory reason." Lathram v. Snow,

336 F.3d 1085, 1088 (D.C. Cir. 2003); see Reeves, 530 U.S. at 142-43.  Examination of that issue

in this setting therefore requires consideration of all the relevant circumstances in evidence,

including the strength of the prima facie case, any direct evidence of discrimination, any

circumstantial evidence that defendant's proffered explanation is false (which, in conjunction with

the prima facie case, may be sufficient to infer unlawful discrimination), and any properly-considered evidence supporting the employer's case. Reeves, 530 U.S. at 147-48; see also Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1151 (D.C. Cir. 2004); Lathram, 336 F.3d at 1089; Waterhouse, 298 F.3d at 993; Aka, 156 F.3d at 1290.

## ANALYSIS

I.    *Plaintiff's Claims Relating to the 2003 Vacancy Announcement are Not Untimely.*

The procedures governing discrimination complaints brought by employees of the federal government under the ADEA are set forth in 29 C.F.R. Part 1614 (Federal Sector Equal Employment Opportunity). Robinson v. Chao, 403 F. Supp. 2d 24, 28 (D.D.C. 2005); see 29 C.F.R. § 1614.103. An employee may not file a formal discrimination complaint without first consulting an EEO counselor and working toward informal resolution of the matter. Robinson, 403 F. Supp. 2d at 28; see 29 C.F.R. § 1614.105(a). The counselor must be contacted no later than "45 days from the alleged discriminatory act or, in the case of a personnel action, within 45 days of its effective date." 29 C.F.R. § 1614.105(a)(1). If the matter is not resolved informally, then the employee may file a formal complaint of age discrimination against the agency, following which the agency is obligated to investigate the matter within 180 days. Robinson, 403 F. Supp. 2d at 28; see 29 C.F.R. §§ 1614.105(d), (e)(2). After the agency's investigation has concluded, the employee may either request a hearing and decision from an administrative judge, or seek to obtain an immediate final decision from the agency. Robinson, 403 F. Supp. 2d at 28; see 29 C.F.R. § 1614.108(f). Any decision on the matter may be appealed to the EEOC, or challenged through the filing of a civil action in federal district court. Robinson, 403 F. Supp. 2d at 28; see also 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407. Exhaustion of administrative remedies is an

indispensable requirement for ADEA claims.  See Washington v. Washington Metro. Area Transit Auth., 160 F.3d 750, 752 (D.C. Cir. 1998); see also Rann v. Chao, 346 F.3d 192, 196 (D.C. Cir.), cert. denied, 125 S. Ct. 35 (2004); Robinson, 403 F. Supp. 2d at 28.

Defendant contends that this Court lacks subject matter jurisdiction to hear plaintiff's claims of discrimination arising before June 29, 2003 (45 days prior to the date on which plaintiff initiated contact with the EEO counselor) under the applicable EEOC regulations.  An aggrieved individual seeking to pursue relief at the administrative level must comply with the requirements of the EEOC regulations, including the statute of limitations.  See Williams v. Chertoff, 2005 WL 3200794 at *2 (D.D.C. Nov. 1, 2005) (unpublished disposition) (finding that plaintiff was barred from pursuing any age discrimination claims in federal court that preceded plaintiff's contact with the EEO counselor by more than 45 days) (citing Price v. Greenspan, 374 F. Supp. 2d 177, 186 (D.D.C. 2005)).  Specifically, defendant submits that plaintiff did not contact an EEO counselor within 45 days of the effective date of the personnel action.  See Def.'s Mot. Summ. J. at 6; see also 29 C.F.R. § 1614.105(a)(1).

According to defendant, plaintiff learned that she was not selected for the 2003 vacancy on March 28, 2003 -- the date on which the vacancy posting closed -- but did not contact an EEO counselor until August 19, 2003, well beyond the 45-day period.  See Def.'s Mot. Summ. J. at 7; see also EEO ROI Exh. 5 at 4.  Plaintiff, on the other hand, argues that she was not informed that she had been rejected until July 25, 2003, the date on which she returned from a leave of absence and was told by another employee that the position had been filled.  See Pl.'s Mem. Opp'n at 5, 9. Hence, by plaintiff's count, only 25 days had elapsed when she contacted the EEO counselor on August 19, 2003, bringing her within the 45 day time limit imposed by § 1614.105(a)(1).  See Pl.'s

Mem. Opp'n at 6-7.  To be sure, plaintiff's sworn affidavit from the administrative proceedings does state that she was informed of her non-selection "around the time that [the posting] expired" (March 28, 2003).  See Def.'s Mot. Summ. J. at 7; see also EEO ROI Exh. 5 at 4; Pl.'s Reply at 8 n.8.  Her EEO claim, however, lists July 25, 2003 as the date of discrimination.  See EEO ROI Exh. 3.  Throughout the administrative proceedings, the July 25, 2003 date was used as the relevant date of discrimination, and nothing in the record suggests that the agency ever contested the accuracy of that fact.  See Pl.'s Mem. Opp'n at 9.

Although the parties have spilled much ink arguing over when exactly plaintiff learned that she had not been selected for the position, that is not necessarily the proper point of focus. The EEOC regulations state that the relevant date is the date on which the personnel action (here, the decision not to hire plaintiff) became effective, not the date on which plaintiff learned of the personnel action.  See 29 CFR § 1614.105(a)(1); see also James v. England, 332 F. Supp. 2d 239, 244-46 (D.D.C. 2004) (finding that operative date for purposes of § 1614.105(a)(1) is the effective date of the personnel action, not the date on which plaintiff received notice of the personnel action); see also Scarborough v. Natsios, 190 F. Supp. 2d 5, 15 (D.D.C. 2002).  Here, the record does not clearly reflect the effective date of the agency's action on vacancy announcement ACF-03-008.  Normally, the effective date of a personnel action involving hiring would be the date on which a selection was made -- i.e., the date on which Ms. Waltzman and Ms. Richards were hired.[2]  But that date has not been provided to the Court, or at least the parties have not referenced

---

[2]It is rarely the case that the effective date of a personnel action corresponds with the date on which a vacancy announcement closes.  The date on which the vacancy announcement closes merely identifies the deadline for applications to be submitted -- it does not, as defendant suggests, identify the date on which the position has been filled.  Hence, logic supports the conclusion that March 28, 2003 is not the relevant date.

it.[3]

It is defendant's burden to show that plaintiff did not timely contact an EEO counselor.

See Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997); see also Tyler v. Henderson,

2001 WL 194930 at *4 (D.D.C. Feb. 22, 2001) (unpublished disposition) (describing untimeliness

as "an affirmative defense that must be [pleaded] by the defendant").  Thus, in order to support its

argument that March 28, 2003 is the relevant date, defendant was required to produce evidence

that Ms. Waltzman and Ms. Richards were hired on March 28, 2003, or at least that plaintiff was

told of her non-selection then.  The record, however, contains no such evidence.  Defendant

merely points to plaintiff's affidavit, which says that plaintiff was notified of the GS-9 interview

policy "around the time that [the posting] expired."  Even if defendant did notify plaintiff on

March 28, 2003 that only GS-9 candidates would be interviewed initially, this would be

insufficient because the possibility that the position would not be filled at the GS-9 level, thereby

necessitating interviews at the GS-11 level, still remained.  It is also noteworthy that defendant

bases its argument solely upon plaintiff's statement, rather than producing any proof -- in the form

of a notification letter, a declaration by Carter Walker or Weeden, or the relevant paperwork for

the selection of Ms. Richards or Ms. Waltzman (all of which are within defendant's custody or

control) -- to support its contention.  At this stage, without any genuine evidence to support the

use of an alternative date, the Court is not inclined to alter the operative date to something other

than July 25, 2003, the date that defendant consistently identified as the date of the alleged

discrimination.  See, e.g., EEO ROI at 1.

---

[3]The record reflects only that several certificates of eligibles were annotated and signed by a "selecting official" on June 4, 2003, see EEO ROI Exh. 13, but that, too, is obviously not the effective date of the hiring action.

This conclusion is consistent with  29 CFR § 1614.105(a)(2), which provides for equitable tolling of the 45 day deadline if the plaintiff "did not know and reasonably should not have known" that the discriminatory personnel action had occurred.  See Stewart v. Ashcroft, 352 F.3d 422, 425 (D.C. Cir. 2003); see also Robinson, 403 F. Supp. 2d at 29; Duckett v. Martinez, 2005 WL 327113 at *3 (D.D.C. Feb. 10, 2005) (unpublished disposition).  Plaintiff had no way of knowing that the GS-9 interview policy even existed -- nor could she know the date on which the policy was developed, or the date on which Ms. Waltzman and Ms. Richards were hired -- unless and until defendant made such information public.  This is especially so under the circumstances of this case, in which plaintiff was out of the office for an extended period of time.  To be sure, there is a threshold of time beyond which it may be viewed as unreasonable for a plaintiff not to have inquired as to the status of a pending employment application.  But here, less than four months elapsed between the date on which the vacancy posting closed and the date on which plaintiff learned of her non-selection.  During this time, plaintiff was out of the office, caring for her terminally ill husband.  Under such circumstances, it is not unreasonable for plaintiff to have failed to inquire about her application, or for plaintiff to suppose that defendant would advise her promptly of her selection or non-selection.[4]

II.    *Plaintiff's Discrimination Claims Relating to the 2002 Vacancy Announcement and the Refusal to Promote Her Non-Competitively Based Upon the COTA Agreement Are Untimely and Were Not Exhausted.*

---

[4]Defendant also submits that plaintiff's request for an EEO hearing at the administrative level -- which was later withdrawn -- was untimely.  The argument appears to be that the Court should dismiss plaintiff's current action on the basis of her alleged pattern of failing to comply with EEO requirements at the administrative level.  The Court will not do so here, however, as the timeliness of a later-withdrawn request for an administrative hearing is not relevant to any issue currently before the Court.

Although the administrative record does contain some facts relating to plaintiff's claims of discrimination in connection with the 2002 vacancy announcement and COTA agreement, those claims were not accepted for investigation at the administrative level -- only the claims relating to the 2003 vacancy announcement were accepted.  See Def.'s Mot. Dismiss Exh. 11 (EEO ROI) at 4-10; EEO ROI Exh. 3.  Thus, plaintiff has failed to exhaust her administrative remedies with respect to all claims of discrimination that precede the 2003 vacancy announcement, and she cannot pursue them in federal court.  See Robinson, 403 F. Supp. 2d at 31 (dismissing plaintiff's claims for failure to exhaust because the claims were not presented and accepted for investigation at the administrative level).  "Exhaustion is required in order to give federal agencies an opportunity to handle matters internally whenever possible and to ensure that the federal courts are burdened only when reasonably necessary."  Brown v. Marsh, 777 F.2d 8, 14 (D.C. Cir. 1985).  The exhaustion requirement is not a mere legal pleasantry -- rather, it is a natural outgrowth of fidelity to the principle of separation of powers, and it constitutes an indispensable prerequisite to a lawsuit in federal court.  See Tyler, 2001 WL 194930 at * 3 (citing Kizas v. Webster, 707 F.2d 524, 544 (D.C. Cir. 1983)).

These claims are also untimely.  The record contains no indication that plaintiff ever contacted an EEO counselor before August 19, 2003.  Any claims of discrimination arising prior to June 29, 2003 (45 days before August 19, 2003) therefore run afoul of the administrative limitations period set forth in 29 U.S.C. § 1614.105(a)(1).  Moreover, the Court will not equitably toll the 45 day deadline:  there is no dispute that plaintiff was aware of her non-selection for the 2002 position, as well as her claims of discrimination in connection with the COTA agreement, long before June 29, 2003.  "The consultation deadline allows an employer to investigate

promptly before evidence becomes stale." Tyler, 2001 WL 194930 at *3 (citing Del. State College v. Ricks, 449 U.S. 250, 256-57 (1980)). It is plaintiff's burden, not defendant's, to supply the basis upon which the Court may find that equitable tolling of the deadline is justified. See Stewart, 352 F.3d at 426; Bowden, 106 F.3d at 437; Tyler, 2001 WL 194930 at *4. Plaintiff has failed to carry this burden. Accordingly, all of plaintiff's discrimination claims arising prior to June 29, 2003 must be dismissed as untimely and not exhausted pursuant to Fed. R. Civ. P. 12(b)(1).[5]

III.     *Plaintiff Failed to Exhaust Administrative Remedies with Respect to the Discrimination Claims Relating to the 2004 Vacancy Announcement.*

Plaintiff has also failed to exhaust her claims of discrimination regarding the 2004 vacancy announcement. Plaintiff learned that she was not selected for the 2004 vacancy on June 23, 2004, and submitted a notice of intent to sue on March 29, 2005. As these claims of discrimination arose after the administrative investigation, they may be properly presented in a lawsuit in federal court as long as they are "reasonably related" to the original complaint. See Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996); cf. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 112-115 (2002) (holding that discrete discriminatory acts that preceded plaintiff's EEO complaint and did not comport with the statutorily-proscribed filing period under Title VII were not actionable despite having a nexus to other acts that plaintiff had timely alleged).

---

[5]The fact that plaintiff has made allegations of a hostile work environment does not, under the circumstances of this case, relieve her of her duty to comply with the limitations period set forth in 29 CFR § 1614.105(a)(1). Although the Supreme Court has held that "[a] charge alleging a hostile work environment claim . . . will not be time-barred so long as all acts constituting the claim are part of the same unlawful employment practice and at least one act falls within the time period." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002), plaintiff has failed to plead facts that would even colorably support a hostile work environment claim. Plaintiff's hostile work environment claims are analyzed in detail in Part IV, infra.

Although both the 2003 and 2004 claims of age discrimination involve allegations of non-selection in connection with vacancy announcements for Grants Management Specialists, the Court concludes that they differ materially.

To begin with, plaintiff has submitted no evidence of any discrimination in the selection process with respect to the 2004 position. The statements of Carter Walker and Weeden pertained only to the investigation of the 2003 selection process -- there is no discernible nexus between those statements, which explained the GS-9 interview policy used in 2003, and the 2004 selection process. Moreover, the factual circumstances of the 2004 selection process differ markedly and do not support an inference that the 2003 GS-9 interview policy was still in place. Defendant (through Carter Walker) proactively identified the 2004 position as one that may interest plaintiff, and took the initiative to solicit plaintiff's application. Plaintiff was then selected from the applicant pool and offered an interview. It was plaintiff, not defendant, who skewed the selection process in 2004 -- by declining an interview, plaintiff placed herself at a disadvantage.[6] The applicants who chose to interview provided defendant with a broader body of material to consider in making such determinations as whether they exhibited the desired level of interest and eagerness for the position, were capable of reacting in a thoughtful and articulate manner under pressure, and interacted with people in a way that would contribute positively to the workplace. By eschewing an important part of the hiring and selection process, plaintiff prejudiced herself. Hence, the circumstances surrounding the 2004 non-selection are not reasonably related to the

---

[6]It is of no consequence that, as plaintiff argues, defendant was already familiar with plaintiff's personality, work ethic, and professional quality. The ADEA functions only to bar employers from placing individuals at a disadvantage because of their age -- it does not require employers to provide older workers with preferential consideration, such as excusing them from interviews that other applicants must endure.

2003 non-selection.

Plaintiff appears to argue that, under 29 U.S.C. § 633a(d), she was not required to exhaust her administrative remedies.  Plaintiff is correct that this provision allows an employee to pursue a claim of age discrimination against the federal government through direct access to the federal courts, rather than through administrative channels.  See 29 U.S.C. § 633a(d).  However, in order to do so, plaintiff was required to provide defendant with notice of her intent to sue no later than 180 days from the date of the allegedly discriminatory act.  See 29 U.S.C. § 633a(d); 29 CFR § 1614.201; Rann, 346 F.3d at 195; Sykes v. James, 2005 WL 3544294 at *4 (D.D.C. Dec. 27, 2005) (unpublished disposition).  Because plaintiff discovered that she had not been selected on June 23, 2004, she was required to provide notice of intent to sue on or before December 20, 2004.  She did not do so -- her notice of intent to sue was not submitted until March 29, 2005.  Hence, plaintiff missed the 180-day deadline by more than four months, and was no longer entitled to proceed directly to federal court.

The 2004 non-selection claim concerns a discrete and easily determinable act that occurred on a specific date, and plaintiff was, accordingly, required to raise it in a timely fashion, see Morgan, 536 U.S. at 112-15.  The Court will not equitably toll the deadline because plaintiff has not argued, and the record does not reflect, that there are any justifications for doing so.  Although "[c]ourts may evaluate whether it is appropriate to apply [equitable doctrines], they are to be applied sparingly."  Morgan, 536 U.S. at 113-14 (citing Baldwin Cty. Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984) (per curiam)).  The Court can conceive of no reason to depart from the well-established legal principle that "filing a timely charge is a prerequisite to having an actionable claim."  Morgan, 536 U.S. at 126.  Either way, then, plaintiff has not complied with the statutory

exhaustion and timeliness requirements.  Accordingly, her claim relating to the 2004 vacancy announcement will be dismissed.[7]

### IV.    *Plaintiff has Not Alleged Facts Sufficient to Support a Hostile Work Environment Claim.*

Plaintiff claims that she endured a hostile work environment during 2002, 2003, and 2004. To establish a prima facie hostile work environment claim based on age, plaintiff must demonstrate that:  (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment occurred because of her age; (4) the harassment affected a term, condition or privilege of her employment; and (5) the employer knew or should have known of the harassment, but failed to take any action to prevent it.  See Jones v. Billington, 12 F. Supp. 2d 1, 11 (D.D.C. 1997).  The workplace environment becomes "hostile" only when the offensive conduct "permeate[s] [the workplace] with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998); accord Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993); see also Pa. State Police v. Suders, 542 U.S. 129, 133-34 (2004); Holbrook, 196 F.3d at 262.

The key terms, then, are "severe," "pervasive," and "abusive," as not just any offensive or discriminatory conduct constitutes an actionable hostile work environment.  Under Faragher v.

---

[7]Even if plaintiff had satisfied the exhaustion requirements, she would ultimately be unable to prevail on a claim of disparate treatment in connection with the 2004 vacancy announcement.  Defendant has legitimate, non-discriminatory reasons for not selecting plaintiff, including the facts that plaintiff refused to interview, had previously been judged to be a poor interviewer, had not performed the duties of her job in a particularly impressive fashion, and the candidates ultimately hired possessed superior credentials.  As explained in Part VI (with respect to the 2003 vacancy announcement), infra, plaintiff would be unable to show that defendant's legitimate, non-discriminatory reasons constitute a pretext for discrimination under McDonnell Douglas.

Boca Raton, 524 U.S. 775, 787-88 (1998), in order to determine whether a work environment is

sufficiently hostile to be actionable, a court should consider: (1) the frequency of the

discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically

threatening or merely offensive; and (4) whether the conduct reasonably interferes with the

employee's performance.  As the Court observed in Faragher, a Title VII case:

> These standards for judging hostility are sufficiently demanding to
> ensure that Title VII does not become a "general civility code."
> Properly applied, this will filter out complaints attacking "the
> ordinary tribulations of the workplace, such as the sporadic use of
> abusive language, gender-related jokes, and occasional teasing."

Id. at 787 (citations omitted).  Moreover, it must be clear that the hostile work environment was

the result of discrimination based on a protected status.  As the Second Circuit has explained:

> Everyone can be characterized by sex, race, ethnicity, or (real or
> perceived) disability; and many bosses are harsh, unjust, and rude.  It
> is therefore important in hostile work environment cases to exclude
> from consideration personnel decisions that lack a linkage or
> correlation to the claimed ground of discrimination.  Otherwise, the
> federal courts will become a court of personnel appeals.

Alfano v. Costello, 294 F.3d 365, 377 (2d Cir. 2002).  Thus, "to sustain a hostile work

environment claim . . . [plaintiff] must produce evidence that she was discriminated against

because of her [protected status]."  Richardson v. New York State Dep't of Corr. Serv., 180 F.3d

426, 440 (2d Cir. 1999).

     In support of her contention that she endured a hostile work environment, plaintiff relies on

the following:  (1) the fact that she requested and was denied a promotion on more than one

occasion from 2002 until 2004; (2) the fact that she was not hired for any of the three discrete

positions that she applied for in 2002, 2003 and 2004, respectively; (3) the fact that she was the

unfortunate victim of an administrative error in her personnel file with respect to her COTA

experience; (4) her conclusory assertions that management articulated a preference for younger workers; and (5) the statements made by Carter Walker and Weeden regarding the GS-9 interview policy in connection with the 2003 vacancy announcement.   This factual composite, however, is insufficient to state a claim for a hostile work environment.

There is no allegation that defendant ever threatened plaintiff, or intimidated, degraded, subordinated, or abused plaintiff.  There is also no indication -- aside, perhaps, from the isolated statements of Carter Walker and Weeden regarding the GS-9 interview policy in connection with the 2003 vacancy announcement -- that defendant ever referred to plaintiff's age in a derogatory fashion or stated that younger workers perform better than older workers.  Nor is there any evidence that defendant ever indicated a belief that older workers are less productive or capable than younger workers, or otherwise conveyed a preference for younger workers.  Hence, the facts of this case, even viewed in the light most favorable to plaintiff, do not establish a pattern of "severe and pervasive" conduct that has affected the terms, conditions, or privileges of plaintiff's employment.[8]

It is well-settled that anti-discrimination statutes are not to be transformed into "general civility code[s]."  See Faragher, 524 U.S. at 788.  The hostile work environment theory of discrimination is not applicable to discrete, identifiable, isolated actions.  See Morgan, 536 U.S. at 114-15.  Failures to promote and failures to hire, such as form the heart of plaintiff's claim, are

---

[8]Quite to the contrary, the record contains some evidence that agency personnel were sensitive and responsive to plaintiff's desires for upward mobility.  For example, Carter Walker -- of her own accord -- proactively identified the 2004 vacancy announcement as a position in which plaintiff might be interested, and solicited plaintiff's application.  Thereafter, defendant actually selected plaintiff for consideration as a potential hire -- it was plaintiff who chose not to interview for the position.

discrete actions that are easy to identify and thus distinguishable from cognizable hostile work environment claims.  See id.  Simply being rejected for positions within an agency cannot be transformed, without more, into the severe, pervasive, abusive conduct necessary to state a hostile work environment claim.

V.    *The Disparate Impact Claim Regarding the GS-9 Interview Policy is Not Legally Cognizable.*

The Supreme Court has created two different species of discrimination actions through which an aggrieved individual may seek redress -- the disparate impact action and the disparate treatment action.  Disparate treatment actions are appropriate when an employer treats an individual differently based upon the presence of a protected characteristic.  See Int'l B'hood of Teamsters v. United States, 431 U.S. 324, 335-36 (1997).  Disparate impact actions are used to redress discrimination that results from an employer's implementation of a facially neutral employment practice that "falls more harshly on one group than another and cannot be justified by business necessity."  Hyman v. First Union Corp., 980 F. Supp. 38, 40 (D.D.C. 1997); see Griggs v. Duke Power Co., 401 U.S. 424, 436 (1971).  Plaintiff claims that the GS-9 interview policy employed by defendant during the selection process for the 2003 vacancy announcement disparately impacted members of her protected class.

It is well-settled that disparate treatment claims are cognizable under the ADEA, see Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 120-25 (1985), as are disparate impact claims alleging discrimination by non-federal employers, see Smith v. City of Jackson, 125 S.Ct. 1536, 1540 (2005) (holding that disparate impact claims brought pursuant to 29 U.S.C. § 623(f)(1), a statutory provision that does not apply to federal employers, are cognizable under the ADEA).

The availability of disparate impact claims against federal employers under the ADEA, however, is unclear.  To date, neither the Supreme Court nor the D.C. Circuit has addressed the issue.  See Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993) (stating that "we have never decided whether a disparate impact theory of liability is available under the ADEA"); Koger v. Reno, 98 F.3d 631, 639 n.2 (D.C. Cir. 1996) (declining to decide whether a disparate impact claim brought against the federal government under the ADEA was legally cognizable because the evidence presented failed to support a prima facie case of disparate impact); Arnold v. United States Postal Serv., 863 F.2d 994, 995-96 (D.C. Cir. 1988) (same).  Since Hazen Paper, several members of this Court have held that the ADEA does not authorize such actions.  See Evans v. Atwood, 38 F. Supp. 2d 25, 28, 29-30 (D.D.C. 1999); Hyman, 980 F. Supp. at 45-46; see also Breen v. Mineta, 2005 WL 3276163 at *7  (D.D.C.  Sept. 30, 2005) (unpublished disposition).  The Court is unaware of any authority in this jurisdiction to the contrary.

The Supreme Court's recent decision in Smith v. City of Jackson does not mandate a departure from that line of precedent.  Smith involved a portion of the ADEA that is explicitly inapplicable to the federal government, and there remains no reason to believe that Congress has waived the federal sovereign's immunity from suit in this regard.  See Breen, 2005 WL 3276163 at *7.  But see Lagerstrom v. Mineta, 408 F. Supp. 2d 1207, 1213 (D.Kan. 2006) (finding that Congress waived sovereign immunity for disparate impact claims because § 633(a) of the ADEA speaks, and was intended to be interpreted, broadly).  In fact, Smith carefully limited its holding as "authoriz[ing] recovery in 'disparate-impact' cases comparable to Griggs[, 401 U.S. 424]."  Smith, 125 S. Ct. at 1540 (emphasis added); see also id. at 1543 (stating that "there is nothing in . . . Hazen Paper that precludes an interpretation of the ADEA that parallels our holding in Griggs").

<u>Griggs</u> involved a private employer, not the federal government.  Given prior precedent in this Court, the ways in which <u>Smith</u> is distinguishable, the significant question of sovereign immunity, and the Supreme Court's acknowledgment that the nature of the ADEA differs markedly from that of Title VII, <u>see</u> <u>Smith</u>, 124 S.Ct. at 1544-45 (stating that "the scope of disparate-impact liability under ADEA is narrower than under Title VII" because "age, unlike race or other classifications protected by Title VII, not uncommonly has relevance to an individual's capacity to engage in certain types of employment"), the Court concludes that plaintiff's disparate impact claim is not legally cognizable.

But even assuming that such a cause of action existed, defendant would still be entitled to summary judgment.  Plaintiff's burden under an ADEA disparate impact claim would be significantly higher than under Title VII -- specifically, plaintiff is required to present evidence of the adverse impact and to show that the adverse impact was not attributable to a reasonable factor unrelated to age.  <u>See</u> <u>Smith</u>, 125 S.Ct. at 1544; <u>see</u> <u>also</u> 29 U.S.C. § 623(f)(1), 81 Stat. 603 (stating that it shall not be unlawful for an employer " to take any action otherwise prohibited under subsectio[n] (a) . . . where the differentiation is based on reasonable factors other than age discrimination").  Here, the record shows that defendant was validly concerned about its strained administrative budget, the costly burden of salaries and benefits, attracting new workers to the laborforce, and the likely possibility of attrition of a large number of employees.  The Court cannot say that it was unreasonable for defendant to maximize its limited fiscal resources by initially recruiting candidates at the lowest level possible.   Lower level employees (and, ordinarily, new employees) are paid less than higher level employees, and are less likely to retire within a short period of time. By recruiting workers who cost less to employ and are less likely to retire in the

near future, defendant was arguably making the most of the money spent on the selection, hiring, and training of employees.

Certainly, longevity of employment is a factor that has a strong correlation with age, and it may well be that lower-level employees are likely to be younger than higher level employees. But mere correlation -- however strong -- is insufficient if the employer's decision was "wholly motivated by factors unrelated to age." Breen, 2005 WL 3276163 at *3; see Hazen Paper Co., 507 U.S. at 611-12. Nothing in the record indicates that the GS-9 interview policy -- or the statements made by Carter Walker or Weeden in support of that policy -- was motivated by "inaccurate and stigmatizing stereotypes" about members of the protected class, such as a lack of productivity or decreased competence. Hazen Paper, 507 U.S. at 610; Breen, 2005 WL 3276163 at ** 4-5 (finding that federal employer's statement that fiscal budget was strained and approximately forty percent of relevant employees were eligible for retirement did not constitute evidence of discrimination because the statement only identified concerns about excessive costs and the "probability of attrition of large numbers of experienced personnel in the foreseeable future" rather than "inaccurate and denigrating generalizations about age"). "Without more, actions designed to save costs do not equate with age discrimination, even when those costs are correlated with age." Breen, 2005 WL 3276163 at *6 (citing Hazen Paper, 507 U.S. at 612-13).

It is noteworthy that plaintiff has submitted no evidence regarding the allegedly adverse impact upon employees over forty years of age. The record is devoid of any evidence -- empirical, statistical, or otherwise -- that there are fewer members of the protected class employed at the GS-9 level than at the GS-11 level. Indeed, plaintiff was actually employed as a GS-9, and hence was in the group that benefitted from the GS-9 interview policy. It was only because plaintiff chose to

apply solely at the GS-11 level that she -- and every other GS-11-only applicant, regardless of age -- was denied an interview.  Moreover, if, as plaintiff claims, younger workers are promptly promoted from the GS-9 level, while older workers are denied lateral promotion and vertical hiring, then there may actually be a higher concentration of older workers at the GS-9 level.  "[I]t is not enough to simply allege that there is a disparate impact on workers."  Smith, 125 S.Ct. at 1545 (citing Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 656 (1989)); see also Breen, 2005 WL 3276163 at *7 (holding that even if disparate impact claims against the federal government were cognizable under the ADEA, plaintiffs had failed to identify the magnitude of the alleged differential impact and did not establish that there was in fact a disparate impact on older workers).  Plaintiff has simply not shown that the GS-9 interview policy adversely impacted members of the protected class.

For all these reasons, plaintiff's disparate impact claim must fail, either for failure to state a legally cognizable claim or for failure to establish a prima facie case.

## VI.    Defendant is Entitled to Summary Judgment on Plaintiff's Disparate Treatment Claim in Connection with the 2003 Vacancy Announcement.

In the absence of direct evidence of discrimination, the McDonnell Douglas burden-shifting framework applies.  See Trans World Airlines, 469 U.S. at 121; Teneyck, 365 F.3d at 1150, 1155; see also Evans, 38 F. Supp. 2d at 31.  Plaintiff claims that the McDonnell Douglas analysis is inappropriate under the circumstances of this case, describing the statements made by Carter Walker and Weeden as direct evidence of age discrimination.  Paradoxically, then, plaintiff argues that the GS-9 interview policy was simultaneously discriminatory on its face (so as to constitute direct evidence of discrimination) and facially neutral (so as to support a claim of

disparate impact).  But plaintiff cannot have it both ways.  The Court has already concluded that

the statements made by Weeden and Carter Walker were not discriminatory on their face because

they only articulated concerns about a strained administrative budget and a preference for filling

the positions with workers who would receive lower salaries and contribute to the workforce for a

longer period of time.  These are factors that correlate with age, but do not evidence age

discrimination.  The policy was not age-specific -- it was grade-level-specific, such that even older

workers who were qualified and applied at the GS-9 level would have been interviewed and

potentially hired.  Indeed, plaintiff had that option.  Although the factors driving the policy may

have an empirical correlation with age, the policy was based on seniority and fiscal concerns --

two factors other than age.  See Evans, 38 F. Supp. 2d at 31; see also Hazen Paper, 507 U.S. at

608-09.  Under these circumstances, the statements do not constitute direct evidence of age

discrimination, and the McDonnell Douglas burden-shifting framework applies.  See Evans, 38 F.

Supp. 2d at 31.

A prima facie case of age discrimination for a failure to hire claim requires plaintiff to

show that:  (1) she is a member of a protected class comprised of individuals over the age of 40;

(2) she applied for and was qualified for a job for which defendant was seeking applicants; (3)

despite her qualifications, she was rejected; and (4) the position was filled by individuals who

were substantially younger in age.  Teneyck, 365 F.3d at 1155.  It is undisputed that plaintiff is a

member of the class of individuals protected under the ADEA, that defendant was seeking

applicants for the Grants Management Specialist position advertised in the 2003 vacancy

announcement, that plaintiff was not selected, and that the position was filled by two individuals

(Ms. Waltzmann and Ms. Richards) who were substantially younger than plaintiff.  There is also

no dispute that plaintiff was qualified for the position, as the vacancy announcement stated that an applicant would satisfy the basic qualifications if she had "one year of specialized experience that has equipped [the applicant] with the particular knowledge, skills, and abilities to perform successfully the duties of the position, and that is typically in or related to the work of the position to be filled" at the GS-7 level or above. EEO ROI Exh. 9 at 2. Thus, plaintiff has established a prima facie case of age discrimination.

The McDonnell Douglas framework then shifts the burden of production to the defendant, requiring that the defendant proffer a legitimate, non-discriminatory basis for its actions. McDonnell Douglas, 411 U.S. at 802. In this regard, defendant submits that its decision to hire Ms. Waltzmann and Ms. Richards, rather than plaintiff, was motivated by their superior qualifications and the GS-9 interview policy. Ms. Waltzmann and Ms. Richards applied for the job at the GS-9 level, while plaintiff applied at the GS-11 level. Defendant decided to begin the interview process at the GS-9 level based upon fiscal concerns and the possibility of significant employee attrition in the near future due to retirement eligibility. In addition, there were more candidates at the GS-9 level. Upon interviewing Ms. Waltzmann and Ms. Richards, defendant determined that both individuals not only could fill the position at the GS-9 level, but they also possessed relevant experience. Moreover, both candidates were deemed to have superior education credentials. Plaintiff, in contrast, indicated no higher education on her application, listing only her COTA training and a few scattered skills courses. Hence, defendant has articulated several legitimate, non-discriminatory reasons for its decision not to hire plaintiff.[9]

---

[9]Although plaintiff claims that she was one of the most qualified applicants and performed impressively in her position, the record reveals that her professional performance was actually mediocre. During her employment prior to the 2003 vacancy announcement, defendant met with

The burden therefore shifts to plaintiff to show that defendant's proffered explanation is illegitimate and constitute a pretext for discrimination. Reeves, 530 U.S. at 143. It is here that, under the circumstances of the present case, the analysis ends. Plaintiff has failed to produce any evidence of pretext. There is simply nothing in the record to undercut the legitimacy of defendant's explanations regarding: (1) defendant's dire fiscal needs; (2) the fact that Ms. Waltzmann and Ms. Richards applied at the GS-9 level; (3) the fact that plaintiff applied at the GS-11 level; (4) the fact that although plaintiff was well qualified, Ms. Waltzmann and Ms. Richards possessed superior qualifications; (5) the fact that defendant was concerned about the impending attrition rates due to retirement eligibility; or (6) the fact that all interviews occurred at the GS-9 level, and no applicants who applied solely at the GS-11 level were interviewed (regardless of their age). Plaintiff has produced no evidence that defendant ever expressed a belief that older workers are less competent or productive, or that they are otherwise inferior to younger workers.

Moreover, the evidence upon which plaintiff relies is scant and unpersuasive. For example, the fact that Ms. Waltzmann and Ms. Richards were new employees and thus required "intensive" or "expensive" training does not, as plaintiff claims, undercut the legitimacy of defendant's fiscal concerns. The record suggests that defendant, in its sound business judgment, determined that the expense of training Ms. Waltzmann and Ms. Richards would constitute an investment that would benefit defendant over time. Nor is the Court persuaded by plaintiff's contention that she was not

---

plaintiff to discuss specific shortfalls and areas for improvement, and plaintiff was referred to a professional development program. Plaintiff appears to have been rated "fully successful" on several of her evaluations, but this hardly suggests that plaintiff performed impressively. At best, such a rating can be described as satisfactory or average. Indeed, each evaluation notes that plaintiff continued to experience difficulty in certain areas and required improvement and/or further professional development.

informed about the GS-9 interview policy until after she had submitted her application at the GS-11 level. There is no indication that younger individuals who applied solely at the GS-11 level were informed of the GS-9 interview policy before plaintiff, that most of the GS-11 applicants were members of the protected class, or that most of the GS-9 applicants were not members of the protected class. The record shows that defendant interviewed qualified GS-11 applicants who had also applied at the GS-9 level, and explicitly told those individuals that the position was only available to GS-9 candidates at that time.

The Court must consider the overall mix of evidence, the strength of plaintiff's prima facie case, and the strength of defendant's legitimate, non-discriminatory rationale. See, e.g., Aka, 156 F.3d at 1289; Waterhouse, 298 F.3d at 992-93. Taking all of this into account, the Court concludes that the record does not support an inference of pretext, and defendant's legitimate non-discriminatory rationale is overwhelming in comparison to the scant evidence upon which plaintiff relies. Hence, defendant's motion for summary judgment will be granted.

VII.    *Defendant is Entitled to Summary Judgment on Plaintiff's Remaining Claims.*

To the extent that any claims for disparate treatment regarding defendant's alleged failure to promote plaintiff since 2002 may remain, the Court concludes that defendant is entitled to summary judgment on such claims. As discussed above, plaintiff lacks direct evidence of promotion discrimination. The statements of Carter Walker and Weeden are not discriminatory on their face and, more importantly, they do not apply outside the context of the 2003 failure to hire claim. There is no evidence to support an inference that the GS-9 interview policy applied in other contexts. Hence, the McDonnell Douglas framework applies.

A prima facie case of promotion discrimination requires plaintiff to show that: (1) she is a

member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was

rejected; and (4) the position remained open and was filled by a similarly situated and qualified

person who was significantly younger in age than plaintiff.  Lutes v. Goldin, 62 F. Supp. 2d 118,

133 (D.D.C. 1999) (citing Evans, 38 F. Supp. 2d at 31).  Plaintiff has failed to carry her prima facie

case burden because she has not sufficiently articulated the contours of the positions to which she

sought to be promoted, and has not established that she was eligible or qualified for those

promotions.  See Lutes, 62 F. Supp. 2d at 133 (finding that plaintiff failed to carry his prima facie

case burden of promotion discrimination because he did not show that he was qualified for

promotion to the GS-15 level).  Plaintiff has also failed to establish that she was similarly situated

in all relevant regards to individuals who were promoted, as the record lacks sufficient evidence

regarding the qualifications, performance evaluations, interview scores, and identities of the

individuals who were promoted.  Even if plaintiff had carried her prima facie case burden,

moreover, she ultimately could not prevail because, as discussed above, there are legitimate

concerns about plaintiff's professional performance and interviewing ability.  Plaintiff has not

offered any evidence to show that these concerns were unwarranted or pretextual.[10]

---

[10]These promotion claims may also be barred by exhaustion and timeliness requirements. For example, it does not appear that these claims were presented or accepted for investigation at the administrative level.  See Robinson, 403 F. Supp. 2d at 31 (dismissing plaintiff's claims for failure to exhaust because the claims were not presented and accepted for investigation at the administrative level).  Hence, plaintiff has failed to establish that she has exhausted her administrative remedies.  The Court is also unable to determine whether such claims are timely under the EEO regulations because plaintiff has not identified specific dates or occasions on which she requested and was denied promotions.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(1) and

12(b)(6) will be granted in part, and defendant's motion for summary judgment under Fed. R. Civ.

P. 56(c) will be granted in part.  Plaintiff's cross-motion for partial summary judgment is denied.  A

separate order has been issued on this date.

/s/      John D. Bates
JOHN D. BATES
United States District Judge

Dated:   March 13, 2006

*Copies to:*

Joshua N. Burton
HENRICHSEN SIEGEL, P.L.L.C.
5301 Wisconsin Avenue
Suite 570
Washington, DC 20015
(202) 966-6500
Fax: (202) 966-7464
Email: jburton@hslawyers.com
Eric Lee Siegel
HENRICHSEN SIEGEL, P.L.L.C.
5301 Wisconsin Avenue,NW
Suite 570
Washington, DC 20036
(202) 966-6500
Fax: (202) 966-7464
Email: esiegel@hslawyers.com
        *Counsel for plaintiff*

Benton Gregory Peterson
ASSISTANT UNITED STATES ATTORNEY
Judiciary Center Building
Civil Division
555 Fourth Street, NW
Room E4905
Washington, DC 20530
(202) 514-7238
Fax: (202) 515-8780
Email: benton.peterson@usdoj.gov
        *Counsel for defendant*

-34-
